IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|   |   |
|---|---|
| In re: | Chapter 11 |
| SURGALIGN HOLDINGS, INC., *et al.*[1] | Case No. 23-90731 (CML) |
| Debtors. | (Jointly Administered) |

**OBJECTION OF SUCCESSFUL BIDDER AUGMEDICS, INC. TO (I) SALE OF DIGITAL ASSETS TO NON-COMPLIANT BIDDER; (II) GOOD FAITH FINDING FOR NON-COMPLIANT BIDDER UNDER 11 U.S.C. § 363(m); AND (III) PURPORTED DEADLINES AND REQUIREMENTS FOR TOPPING NON-COMPLIANT STI BID**

TO THE HONORABLE CHRISTOPHER M. LOPEZ, U.S. BANKRUPTCY JUDGE:

Augmedics, Inc. ("**Augmedics**"), the Successful Bidder[2] for the Digital Assets[3] pursuant to the Court's *Order (A) Establishing Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Authorizing the Debtors' Entry Into Stalking Horse Agreement, (C) Establishing Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (D) Approving the Form and Manner of Related Notices, (E) Scheduling a Hearing to Consider the (I) Bid Protections and (II) Proposed Sale, and (F) Granting Related Relief* [Docket No. 137] (the "Bidding Procedures Order") hereby objects to: (i) the sale of the Digital Assets to a bidder, Surgical Theater, Inc. ("**STI**"), which failed to comply with the Bidding

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number (if any), are: Surgalign Holdings, Inc. (0607); Surgalign Spine Technologies, Inc. (6543); Pioneer Surgical Technology NewCo Inc.; Spinal Transition and Professional Services LLC; Andi's Belmarall, LLC; Fourth Dimension Spine, LLC (1107); Holo Surgical Inc. (4079); and HoloSurgical Technology Inc. (0952). The location of the debtors' service address in these chapter 11 cases is: 520 Lake Cook Road, Suite 315, Deerfield, Illinois 60015.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Bidding Procedures Order [Docket No. 137] and/or the Bid Procedures attached thereto as Exhibit A.

[3] As defined in the *Notice of Successful Bidders and Back-Up Bidder With Respect to the Auction of the Debtors' Assets* [Docket No. 290] (the "Auction Results Notice").

Procedures Order; (ii) a finding of good faith under 11 U.S.C. § 363(m) in favor of STI; and (iii) the Debtors' purported deadlines and requirements for topping the non-compliant STI bid. In support of this Objection, Augmedics relies upon the record in this chapter 11 case and the arguments and evidence to be presented at the Sale Hearing, and respectfully states as follows:

## **INTRODUCTION**

1. The non-compliant bid put forth by STI well-beyond the 11th hour and without any colorable justification poses a very clear and fundamental question: is the integrity of the Court-approved bankruptcy sale process worth $600,000?

2. STI submitted its bid on August 7, which is 12 days after the Bid Deadline, 11 days after Augmedics prevailed in competitive bidding at the Auction, and less than 24 hours before the Sale Hearing. As of almost 10:30 a.m. Central time on August 7, Augmedics effectively had finalized the documentation of its Successful Bid with the Debtors (including the proposed sale order) and was getting ready for what it justifiably expected to be an uncontested Sale Hearing and a quick and smooth closing. Augmedics did so in good faith reliance on the Bidding Procedures Order, which Augmedics diligently followed to the letter.

3. Unbeknownst to Augmedics, the Debtors apparently received an expression of interest from STI at some unspecified point following the Auction. Also unbeknownst to Augmedics, the Debtors granted STI access to the data room, allowed STI to conduct diligence, negotiated a bid with STI on the very same form of revised APA that Augmedics had negotiated with the Debtors, and accepted a cash deposit from STI. All of this after the Debtors filed their notice designating Augmedics as the Successful Bidder and without any disclosure to Augmedics, or most importantly, this Court.

2

4. As the Court will no doubt anticipate, the Debtors' explanation for all of this is that they had a fiduciary duty to maximize value, which is specifically referenced in Section XVII of the Bid Procedures. Yet Section XI of the Bid Procedures specifically states that "Unless the Bankruptcy Court orders otherwise, the Debtors will not consider any Bids or Subsequent Bids submitted after the conclusion of the applicable Auction, and any and all such Bids and Subsequent Bids will be deemed untimely and will under no circumstances constitute Qualified Bids." If a party could simply submit a higher price bid after the conclusion of the Auction to trigger a fiduciary out under Section XVII of the Bid Procedures, then Section XI would be completely meaningless (and therefore entirely misleading to diligent bidders like Augmedics who indisputably relied upon it in good faith).

5. Therefore, if there is going to be any integrity to the bankruptcy sale process, the standard for considering a non-compliant, last-minute bid must be more than just an incremental increase in price. The case law bears this out, with a focus on balancing the extent to which a compliant bidder's rights and expectations have been reasonably established against other factors that might cut against the integrity of the process (like fraud, collusion, lack of competitive bidding or other factors indicating a grossly inadequate auction price).

6. Here, the balance weighs overwhelmingly in favor of honoring Augmedics' Successful Bid. Unlike other cases where courts have reopened bidding, Augmedics clearly prevailed in the competitive Auction that was conducted pursuant to Bid Procedures approved in advance by this Court and on full notice (including publication) to all potentially interested parties. There is nothing in the record to remotely suggest that approving the sale to Augmedics would implicate the integrity of the process. Whereas entertaining the STI bid would do great and

irreparable harm to the integrity of the sale process not only in these cases, but potentially in a host of cases to come.

## FACTS AND PROCEDURAL HISTORY

*Pre-petition Marketing of the Debtors' Assets*

7. According to the Debtors, their current sale process is their third marketing process in just the past two years:

   a. The Debtors conducted an "initial sale process for its assets on or around late 2021 into 2022 and then ran a second process in December 2022 through May 2023." Motion at ¶2, p.2;

   b. Approximately four weeks prior to the Petition Date, "the Debtors, with assistance from A&M, began a third, more targeted marketing process and reached out to third parties to gauge market interest in pursuing a potential sale of the Debtors' U.S. hardware and biomaterials and digital health businesses." Motion at ¶3, p. 3; and

   c. Specifically with respect to the Debtors' digital health business, as of the Petition Date the Debtors continued "to run a broad marketing process," and as of the Petition Date had "reached out to approximately 300 strategic and financial partners and purchasers." Motion at ¶5, p. 3.

8. Notably, the Debtors' predecessor completed its initial public offering in August 2000, and the Debtors were publicly listed on the NASDAQ exchange through the Petition Date. *See* [Docket No. 23] at ¶¶12, 23.

*Bidding Procedures Order*

9. The Debtors filed the Motion as a "first day" pleading on the Petition Date.

10. The Bidding Procedures Order was entered on June 30, 2023, nearly a full month prior to the Bid Deadline.

11. The Bid Procedures clearly specify the Bid Deadline and the corresponding Bid Requirements.

12. The Debtors filed a Notice of the *Bid Procedures in Connection with the Sale of Debtors' Assets* on June 30, 2023, s*ee* [Docket No. 139], which clearly set forth the Bid Deadline and corresponding Bid Requirements.

13. The Debtors published the Notice of Bid Procedures in a national edition of *The New York Times* on July 7, 2023.  See [Docket No. 255].

**The Auction and Follow-up Discussions Regarding Augmedics' Successful Bid**

14. As memorialized in the Auction Results Notice, the Debtors received competing, qualified bids for the Digital Assets, which resulted in competitive bidding at the Auction that produced a $900,000 Successful Bid from Augmedics and a $850,000 Back-Up Bid from Brainlab AG.  *See* [Docket No. 290].

15. STI did not participate in the Auction.

16. The Debtors filed the Auction Results Notice on July 28, 2023.  *See* [Docket No. 290].

17. From July 28 through August 6, 2023, Augmedics worked in good faith with the Debtors' professionals to finalize the documentation of its Successful Bid.  As of 4:13 p.m. Central time on August 6, 2023, the Debtors' counsel acknowledged alignment had been reached on the last outstanding issues, and advised counsel for Augmedics that they would be "sending over a further revised APA."

*The Non-Compliant STI Bid*

18. At 10:19 a.m. Central time on August 7 (just over 24 hours before the Sale Hearing), the Debtors' professionals sent an email to bankruptcy counsel for Augmedics (Mr. Schultz) and Mr. Garrett advising that, "[t]here has been a development and we would like to talk with you before 1pm et."

19. Mr. Schultz and Mr. Garrett joined a call with the Debtors' professionals shortly before 10:30 a.m. Central time (Mr. Garrett had to drop off of the call shortly after 10:30 a.m. Central time due to a prior commitment). On this call, the Debtors' professionals advised for the first time that they had interest from STI following the Auction, they had given STI access to the data room over the past weekend, and just that morning they had received a bid from STI in the amount of $1,500,000 for which they intended to seek approval at the Sale Hearing. The Debtors further advised that they intended to provide Augmedics the opportunity to top the STI bid. Mr. Schultz inquired how Augmedics could reasonably react to this given the timing and that the STI bid failed to comply with the Bidding Procedures Order. The Debtors' professionals said they would provide Augmedics with a copy of the STI bid and then there would be a further opportunity to discuss.

20. At 1:34 pm Central time on August 7, counsel for the Debtors sent an email to counsel for Augmedics providing a copy of the non-compliant STI bid and a revised version of the Augmedics APA. The Debtors' professionals further advised in this email:

> Accordingly, the Debtors intend to proceed with seeking entry of a sale order for the Surgical Theater bid at the sale hearing, unless you inform the Debtors' counsel by 6:00 pm (CT) today that Augmedics is willing to increase its bid by at least $250,000 over the Surgical Theater bid (i.e., to $1,750,000). In that case, the Debtors, after consulting with the Creditors' Committee, intend to reconvene the auction at 10:00 am CT on Tuesday, at which time Surgical Theater, Augmedics, and Brain Lab (the existing backup bidder) may submit

6

        bids in increments of not less than $100,000 until no further bids are received.

21.    Notably, this email purported to: (i) impose an arbitrary $250,000 minimum overbid threshold, which is five times the $50,000 bidding increment utilized by the Debtors at the Auction; (ii) require Augmedics to confirm whether it would make an overbid in this excessive amount on less than five hours' notice (or be precluded from any further bidding); (iii) set a start time of 10:00 a.m. Central time on August 8 to reconvene the Auction on less than 24 hours' notice; and (iv) impose a $100,000 bid increment (still two times the $50,000 bidding increment utilized by the Debtors at the Auction) in the event the Auction was reconvened.

22.    Counsel for Augmedics immediately responded that, independent of the unfairness in acting on the non-compliant STI bid, these arbitrary deadlines and requirements would not give Augmedics a reasonable opportunity to respond, particularly given travel schedules for Augmedics' business representatives. Nonetheless, the Debtors refused to make any adjustment beyond saying they would be willing to discuss "some limited period of time beyond 6pm CT tonight."

## LEGAL ARGUMENT

**I.    The Court Should Disregard STI's Bid Because It Failed to Comply With the Bidding Procedures Order.**

23.    Bankruptcy courts have recognized that accepting a tardy bid that failed to comply with court-approved bidding procedures "undermines confidence in judicial sales and discourages prospective purchasers from making their best offers in a timely and efficient manner." *In re Sebert*, No. 07-15509, 2008 WL 686264, at *2 (E.D. Mich. Mar. 11, 2008). *See also In re Bigler, LP*, 443 B.R. 101, 117 (Bankr. S.D. Tex. 2010) ("[W]hen the bid procedures are clear; the bid procedures are not complex; the parties are sophisticated; there is no collusion or fraud; and the

auction price is not grossly inadequate—the highest priority should be on maintaining the integrity of the system.").

24. Here, the Bid Procedures are clear and not complex, the parties involved are sophisticated (including nationally-known professionals representing the Debtors), there was no collusion or fraud involved in Augmedics' Successful Bid, and the STI bid is only $600,000 more than the Successful Bid produced by competitive bidding at the Auction. Moreover, there is no colorable justification for STI's failure to submit a bid in compliance with the Bidding Procedures Order—the Debtors are a public company that by their own acknowledgement have been marketing their assets for the better part of two years in three separate marketing processes. The Debtors published the Notice of Bid Procedures in a national edition of *The New York Times* on July 7, 2023, nearly three weeks before the Bid Deadline. And news of the Debtors' bankruptcy and proposed asset sale was reported in numerous online publications, including those specific to the relevant industry. *See, e.g.*, https://www.fiercebiotech.com/medtech/amid-bankruptcy-filing-surgalign-continues-layoffs-prepares-auction-assets (dated June 20, 2023); https://www.globenewswire.com/news-release/2023/06/20/2691074/0/en/Surgalign-Enters-Into-Definitive-Agreement-to-Sell-Global-Hardware-and-Biologics-Business-Through-a-Structured-Sale-Process-Under-Chapter-11-of-the-U-S-Bankruptcy-Code.html (dated June 20, 2023); https://news.bloomberglaw.com/bankruptcy-law/medical-tech-firm-surgalign-seeks-sale-through-bankruptcy (dated June 20, 2023); https://medtech.pharmaintelligence.informa.com/MT148022/Surgical-Device-Maker-Surgalign-Files-For-Bankruptcy-Sells-Assets-At-Auction (dated June 21, 2023); https://www.mddionline.com/surgical/medtech-minute-bankruptcy-layoffs-and-asset-sales-oh-

my (dated June 22, 2023); https://ryortho.com/breaking/surgalign-declares-bankruptcy/ (dated July 3, 2023).

25. When courts have reopened bidding and approved late bids, they generally have done so based upon circumstances not present here. *See, e.g. Brink v. Payless Cashways, Inc. (In re Payless Cashways, Inc.)*, 281 B.R. 648, 650 (B.A.P. 8th Cir. 2002) (no prior Court approval of bidding procedures); *Four B. Corp. v. Food Barn Stores (In re Food Barn Stores)*, 107 F.3d 558, 566 (8th Cir. 1997) ("very informal and flexible bidding process" with "auction marked by a lack of applicable rules and guidelines" and "no definite time by which the court required parties to submit offers"); *In re Fin. News Network, Inc.*, 980 F.2d 165, 170 (2d Cir. 1992) ("No clear winner emerged from [initial auction]"; court reopened bidding to allow previous auction participants to increase bids).

26. None of these considerations apply to STI, which simply waited far too long to get involved and is now trying to use an increased purchase price to distract from its unjustified failure to comply with the Bidding Procedures Order. While the STI price increase is a large percentage solely as a relative matter, in the overall picture it does not (in and of itself) provide a sufficient justification to completely undermine the fairness of the Bid Procedures, which were carefully developed by the Debtors, judiciously approved by the Court, and assiduously followed and relied upon by Augmedics (and the Back-Up Bidder for the Digital Assets). If the Court were to consider the STI bid now (whether or not it is subjected to a fair overbid process of its own, *see § III* below), the Court would be providing STI with an unwarranted, material advantage (i.e. holding back to see who bid at the Auction and at what price before even submitting its own initial bid). The integrity of the system demands much more before the Court should even consider undermining confidence in the bankruptcy sale process by contravening its own Bidding Procedures Order.

## II. STI Is Not Entitled to a Good Faith Finding Under Section 363(m) of the Bankruptcy Code.

27. In addition to failing to comply with the Bidding Procedures Order, STI's conduct fails to meet the requirements of a good faith finding under section 363(m) of the Bankruptcy Code. STI is not a financial buyer, it is an established competitor of Augmedics (and presumably a competitor of the Back-Up Bidder as well). STI waited until after Augmedics prevailed at the Auction, gaining the material advantage of this information (including the price Augmedics was willing to pay and the price and identity of the Back-Up Bidder).[4] With that material advantage in hand and without any good faith justification, STI seeks to vitiate Augmedics' rights as Successful Bidder in derogation of the Bidding Procedures Order.

28. The STI bid and the circumstances surrounding it are not consistent with fairness or the overarching goal of maximizing value for the benefit of a debtor's estate. STI's conduct (if validated by the Court) would encourage bidders to engage in improper gamesmanship to the disadvantage of bidders who do comply in good faith with court-approved bid procedures. Contrary to the customary sequence, where a party with a potential stalking horse or lead bid is rewarded for taking the early initiative on diligence and negotiation of purchase terms, STI's conduct (especially when combined with the Debtors' purported deadlines and requirements for topping the non-compliant STI bid, *see* Section III below) turn the process on its head. Giving any credence to the STI bid would allow it to profit off of the diligence done by Augmedics (and other

---

[4] Once again, the results of the Auction were publicized on numerous online outlets. *See, e.g.*, https://www.beckersspine.com/spinal-tech/57435-surgaligns-businesses-auctioned-to-xtant-medical-augmedics.html (dated July 31, 2023); https://hitconsultant.net/2023/07/31/augmedics-acquires-surgaligns-digital-health-assets/ (dated July 31, 2023); https://www.mobihealthnews.com/news/augmedics-buys-assets-bankrupt-surgalign-grow-spine-surgery-offerings (dated August 1, 2023). It is readily apparent that STI had this information in hand <u>before</u> it submitted its non-compliant bid.

bidders) in reliance on and in compliance with the Bidding Procedures Order. Under these facts, STI cannot meet its burden to justify a finding of good faith.

### III. The Debtors' Purported Deadlines and Requirements for Topping the Non-Compliant STI Bid Are Unreasonable and Not Calculated to Provide a Full and Fair Opportunity to Other Bidders.

29. Finally, even if the Court were to consider the STI bid (which it should decline to do for all of the reasons set forth above), the Debtors' purported deadlines and requirements for further overbids are unreasonable and not calculated to provide a full and fair opportunity to other bidders. STI had well over a week to analyze the Auction results (from the date of the Auction Results Notice) until it apparently finalized its non-compliant bid on August 7. In contrast, the Debtors purported to require Augmedics (and the Back-Up Bidder) to react to the STI bid on less than five hours' notice or be eliminated from any consideration, despite having prevailed at the Auction in full compliance with the Bidding Procedures Order.

30. Moreover, despite setting a $50,000 overbid increment at the Auction, the Debtors now are purporting to require a minimum overbid of $250,000 above the STI price (and subsequent bid increments of $100,000 if the Auction is reconvened). This amounts to a wholly-unjustified stalking horse protection for STI with the only likely effect to be a further chill on bidding beyond what would already result from allowing a non-compliant bidder to commandeer the process. Based upon Augmedics' ongoing review of the STI bid, it is based entirely upon the Augmedics' APA with minimal edits (beyond the increased price). The Debtors have provided no justification for imposing a minimum overbid requirement that is five times higher than the actual Auction bidding increment solely for the benefit of a party who failed to comply with the Bidding Procedures Order in the first place.

11

## CONCLUSION

WHEREFORE, for the reasons set forth herein, Augmedics respectfully requests that the Court (i) refuse to entertain the STI bid, (ii) deny STI good faith protection under 363(m), and/or (iii) grant such other and further relief as the Court deems to be just and proper.

Dated: August 7, 2023

Respectfully submitted,

**MUNSCH HARDT KOPF & HARR, P.C.**

500 N. Akard Street, Suite 3800
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584
E-mail: dperry@munsch.com
E-mail: gsmith@munsch.com

By: /s/ *Deborah M. Perry*
    Deborah M. Perry
    Texas Bar No. 24002755
    Garrick Smith
    Texas Bar No. 24088435

and

**Law Office of Nathan A. Schultz, P.C.**
10621 Craig Road
Traverse City, MI 49686
310-429-7128
nschultzesq@gmail.com

**ATTORNEYS FOR AUGMEDICS, INC.**

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that on the 7th day of August, 2023, she caused a true and correct copy of the foregoing Objection to be served electronically on those parties requesting electronic service through the Court's ECF system.

    /s/ Deborah M. Perry
    Deborah M. Perry