## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SURGALIGN HOLDINGS, INC., *et al.*[1] | ) | Case No. 23-90731 (CML) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | **Re: Docket No. 26** |

## ORDER (I) AUTHORIZING AND APPROVING THE SALE OF CERTAIN OF THE DEBTORS' DIGITAL HEALTH BUSINESS ASSETS TO AUGMEDICS, INC. FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (II) AUTHORIZING THE SALE TRANSACTION; AND (III) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of the above-captioned debtors and debtors-in-possession (the "**Debtors**") for entry of an order (this "**Order**"), pursuant to sections 105(a), 363, and 365 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rule 9013-1 of the Local Bankruptcy Rules for the Southern District of Texas (the "**Local Rules**"), and Paragraph N of the Procedures for Complex Cases in the Southern District of Texas (the "**Complex Procedures**"), *inter alia* (i) approving the sale of substantially all of the Debtors' assets; (ii) authorizing the consummation of the sale and each of transactions contemplated by that certain Asset Purchase Agreement, dated as of August 9, 2023 attached as **Exhibit A** hereto (as amended, supplemented, amended and restated or otherwise modified from time to time, including the

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number (if any), are: Surgalign Holdings, Inc. (0607); Surgalign Spine Technologies, Inc. (6543); Pioneer Surgical Technology NewCo Inc.; Spinal Transition and Professional Services LLC; Andi's Belmarall, LLC; Fourth Dimension Spine, LLC (1107); Holo Surgical Inc. (4079); and HoloSurgical Technology Inc. (0952). The location of the debtors' service address in these chapter 11 cases is:  520 Lake Cook Road, Suite 315, Deerfield, Illinois 60015.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion [Docket No. 26] or the Asset Purchase Agreement (as defined herein).

amendments thereto, as set forth in the schedules attached to this Order, and including the exhibits and schedules thereto, the "**Asset Purchase Agreement**"), by and among Augmedics, Inc. (the "**Purchaser**") and Surgalign Spine Technologies, Inc. ("**Surgalign Spine**"), Holo Surgical Inc. ("**Holo Surgical**"), and HoloSurgical Technology Inc. ("**Holo Technology**", and, together with Surgalign Spine and Holo Surgical, "**Sellers**"), and, solely with respect to provisions applicable to the Deposit and the Escrow Agreement, Surgalign Holdings, Inc. ("**Holdings**", and together with the Sellers, the "**Debtors**") and this Order (the "**Sale Transaction**"); and (iii) granting related relief; and upon the *Declaration of George Varughese in Support of the Motion* [Docket No. 29]; and the United States Bankruptcy Court for the Southern District of Texas (the "**Court**") having entered an order on June 30, 2023 [Docket No. 137] (the "**Bid Procedures Order**") approving, among other things, the dates, deadlines, and bidding procedures (the "**Bid Procedures**") with respect to, and notice of, the proposed sale of substantially all the assets, including the Purchased Assets (as defined in the Asset Purchase Agreement); and due and sufficient notice of the Motion having been given under the particular circumstances; and it appearing that no other or further notice need be provided; and the Court having held a hearing on August 8, 2023 (the "**Sale Hearing**") to approve the Sale Transaction; and the Court having reviewed and considered (a) the Motion, (b) the objections to the Motion or the Sale Transaction, if any, (c) all other pleadings filed in support of the Motion, and (d) the arguments of counsel, and the evidence proffered or adduced at the Sale Hearing and any other hearing related to the Motion; and all parties in interest having been heard, or having had the opportunity to be heard, regarding the approval of the Sale Transaction and the other relief requested in the Motion; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors and other parties in

interest; and upon the record of the Sale Hearing and the chapter 11 cases; and after due deliberation thereon; and good cause appearing therefore, it is hereby,

**FOUND, DETERMINED, AND CONCLUDED THAT:[3]**

A. <u>Jurisdiction and Venue</u>.  This Court has jurisdiction to consider the Motion and approve the Sale Transaction under 28 U.S.C. § 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these chapter 11 cases and this Motion is proper in this district and Court under 28 U.S.C. §§ 1408 and 1409.

B. <u>Final Order</u>.  This Order constitutes a final order within the meaning of 28 U.S.C. §158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

C. <u>Property of the Estate</u>.  The Purchased Assets constitute property of the Sellers' estates and title thereto is vested in the Sellers' estates within the meaning of section 541(a) of the Bankruptcy Code.

D. <u>Legal Predicates</u>.  The predicates for the relief requested by this Motion are sections 105, and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9007, and 9014, Local Rule 9013-1, and Paragraph N of the Complex Procedures.

---

[3]   The findings, determinations, and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

E.    Petition Date.  On June 19, 2023 (the "**Petition Date**"), each of the Debtors commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code.  Since the Petition Date, the Debtors have continued to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

F.    Bid Procedures Order.  On June 30, 2023, this Court entered the Bid Procedures Order, *inter alia* (i) approving the Bid Procedures; (ii) scheduling the Auction, if any, and Sale Hearing; (iii) approving the form and manner of notice of the Bid Procedures, the Bid Deadline, the Auction, the deadline to object to the sale, and all other relevant procedures, protections, schedules and agreements; and (iv) granting related relief.  No appeal, motion to reconsider, or similar pleading has been filed with respect to the Bid Procedures Order, and the Bid Procedures Order is a final order of the Court.  The Bid Procedures Order has not been vacated, withdrawn, rescinded or amended and remains in full force and effect.

G.    Compliance with Bid Procedures Order.  As demonstrated by the testimony and other evidence proffered or adduced at the Sale Hearing and the representations of counsel made on the record at the Sale Hearing, the Debtors have marketed the Purchased Assets and conducted the sale process in compliance with the Bid Procedures Order.  The Debtors and their professionals have afforded potential purchasers a full and fair opportunity to make offers.  The Purchaser and its directors, managers, officers, employees, agents, representatives, attorneys, contractors, subcontractors, and independent contractors, in each case, in its respective capacity as such (collectively, the "**Purchaser Parties**") have acted in good faith and in compliance with the terms of the Bid Procedures.  In accordance with the Bid Procedures, the Debtors determined that the bid submitted by the Purchaser and memorialized by the Asset Purchase Agreement is the Successful Bid (as defined in the Bid Procedures) for the Purchased.  The Asset Purchase

Agreement constitutes the highest and best offer for the Purchased Assets, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. The Debtors' determination that the Asset Purchase Agreement constitutes the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Debtors' business judgment.

   H. <u>Notice</u>.  As evidenced by the affidavits of service and publication previously filed with the Court [Docket No. 255], and based on the record at the Sale Hearing, (i) proper, timely, adequate and sufficient notice of the Motion, the Bid Procedures, the Auction, the Sale Hearing, the Sale Transaction, and the relevant objection deadlines has been provided in accordance with sections 102(l) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9007 and 9014, and applicable Bankruptcy Local Rules, and in compliance with the Bid Procedures Order to each party entitled to such notice, (ii) such notice was good and sufficient, and appropriate under the particular circumstances, and (iii) no other or further notice of the Motion, the Bid Procedures, the Auction, if any, the Sale Hearing, the Sale Transaction, or the relevant objection deadlines is or shall be required.  With respect to entities whose identities are not reasonably ascertained by the Debtors, publication of the Sale Notice in the national edition of *The New York Times* on July 7, 2023, was sufficient and reasonably calculated under the circumstances to reach such entities. [Docket No. 255-1].

   I. <u>Company Authority</u>.  Each Debtor (i) has full corporate power and authority to execute the Asset Purchase Agreement and all other documents contemplated thereby and hereby, including any ancillary agreements (collectively, the "**Transaction Documents**"), and the Sale Transaction has been duly and validly authorized by all necessary action of each of the applicable Debtors, (ii) has all of the corporate power and authority necessary to consummate the transactions

contemplated by this Order and the Transaction Documents, (iii) has taken all action and formalities necessary to authorize and approve the Transaction Documents and the Debtors' consummation of the transactions contemplated thereby and hereby, including as required by their respective organizational documents, and (iv) has duly executed and delivered the Asset Purchase Agreement.  No government, regulatory or other consents or approvals, other than those expressly provided for in the Transaction Documents, are required for the Debtors to enter into the Transaction Documents, to consummate the Sale Transaction, or to perform their obligations under the Transaction Documents.  The consummation of the Sale Transaction and performance under the Transaction Documents do not violate or conflict with any applicable law.

J.      <u>Opportunity to Object</u>.  A fair and reasonable opportunity to object and to be heard with respect to the Motion and the relief requested therein, has been given to all interested persons and entities, including the following: (i) all known parties holding or asserting Interests on, in, or against the Purchased Assets, (ii) all parties that have requested notice pursuant to Bankruptcy Rule 2002 as of the time of service, and (iii) all applicable federal, state. and local taxing and regulatory authorities.

K.      <u>Sale in Best Interest</u>.  Consummation of the sale of the Purchased Assets pursuant to the Asset Purchase Agreement at this time is in the best interests of the Debtors, their creditors, their estates, and other parties in interest.

L.      <u>Business Justification</u>. Sound business reasons exist for the Sale Transaction. Entry into the Transaction Documents, and the consummation of the transactions contemplated thereby, including the Sale Transaction, constitutes an exercise of the Debtors' sound business judgment and such acts are in the best interests of each Debtor, its estate, and all parties in interest. The Court finds that each Debtor has articulated good and sufficient business reasons justifying

6

the Sale Transaction.  Such business reasons include, but are not limited to, the following: (i) the Asset Purchase Agreement constitutes the highest and best offer for the Purchased Assets; (ii) the Purchaser has agreed to assume the Assumed Liabilities; (iii) the Sale Transaction maximizes the going concern value of the Business and Purchased Assets; and (iv) unless the Sale Transaction and all of the other transactions contemplated by the Transaction Documents are concluded expeditiously, as provided for in the Motion, the Bid Procedures, and pursuant to the Asset Purchase Agreement, recoveries to creditors may be diminished.

M.      The Debtors' Marketing Process.  The Debtors and their professionals actively marketed the Purchased Assets to potential purchasers, as set forth in the Motion and in accordance with the Bid Procedures Order.  The bidding and auction process set forth in the Bid Procedures Order and the Bid Procedures afforded a full and fair opportunity for any entity to make a higher or otherwise better offer to purchase the Purchased Assets than the offer memorialized by the Asset Purchase Agreement. Based upon the record of these proceedings, all creditors and other parties in interest and all prospective bidders have been afforded a reasonable and fair opportunity to bid for the Purchased Assets.

N.      No Other Actionable Bids.  No other person or entity or group of persons or entities has offered to purchase the Purchased Assets for an amount that would give equal or greater economic value to the Debtors and their estates in the aggregate than the value being provided pursuant to the Asset Purchase Agreement.  Among other things, the Sale Transaction is the best alternative available to the Debtors to maximize the return to their estates.  The terms and conditions of the Asset Purchase Agreement, including the consideration to be realized by the Debtors, are fair and reasonable.  Given all of the circumstances of the chapter 11 cases and the adequacy and fair value of the consideration provided under the Asset Purchase Agreement,

7

approval of the Motion, the Asset Purchase Agreement, and the transactions contemplated thereby and hereby, including the Sale Transaction, is in the best interest of the Debtors, their estates and creditors, and all other parties in interest.

O.    <u>Arms'-Length Sale</u>.  The Transaction Documents were negotiated, proposed, and entered into by the Debtors and the Purchaser without collusion, in good faith, and at arms'- length. None of the Debtors or any of the Purchaser Parties, or any of their respective representatives has engaged in any conduct that would cause or permit the Transaction Documents, or the consummation of the Sale Transaction, to be avoidable or avoided, or for costs or damages to be imposed, under 11 U.S.C. § 363(n), or has acted in bad faith or in any improper or collusive manner with any entity in connection therewith.  Specifically, the Purchaser Parties have not acted in a collusive manner with any person or entity and the Purchase Price was not controlled by any agreement among bidders.

P.    <u>Good Faith Purchaser</u>.  The Purchaser is a good faith purchaser for value and, as such, is entitled to all of the protections afforded under 11 U.S.C. § 363(m) and any other applicable or similar bankruptcy and non-bankruptcy law.  Furthermore, none of the Purchaser Parties is an "insider" (as defined under section 101(31) of the Bankruptcy Code) of any Debtor, and, therefore, each Purchaser Party is entitled to the full protections of section 363(m) of the Bankruptcy Code and has otherwise proceeded in good faith in all respects in connection with these chapter 11 cases and the Sale Transaction.  Without limiting the foregoing: (i) all Purchaser Parties recognized that the Debtors were free to deal with any other party interested in purchasing the Purchased Assets; (ii) all Purchaser Parties complied in all respects with the provisions in the Bid Procedures Order; (iii) the Purchaser agreed to subject its bid to the competitive Bid Procedures set forth in the Bid Procedures Order; (iv) all consideration to be provided by the

8

Purchaser and all other agreements or arrangements entered into by the Purchaser Parties in connection with the Sale Transaction have been disclosed; (v) no common identity of directors, officers or controlling stockholders exists among the Purchaser and the Debtors; (vi) the negotiation and execution of the Transaction Documents were at arm's-length and in good faith, and at all times each of the Purchaser Parties and the Debtors were represented by competent counsel of their choosing; and (vii) the Purchaser Parties have not acted in a collusive manner with any person or entity. The Purchaser Parties will be acting in good faith within the meaning of 11 U.S.C. § 363(m) in closing the transactions contemplated by the Asset Purchase Agreement and the other Transaction Documents.

Q.      <u>Free and Clear Sale</u>.  The Sellers may sell the Purchased Assets free and clear of all Encumbrances, claims (including any "claims" as defined in section 101(5) of the Bankruptcy Code), rights, obligations, Liabilities, and other interests of any kind or nature whatsoever against the Debtors or the Purchased Assets (other than the Assumed Liabilities), including, without limitation, other than the Assumed Liabilities, any Liabilities, debts, or obligations arising under or out of, in connection with, or in any way relating to, any acts or omissions, indentures, loan agreements, instruments, leases, agreements, collective bargaining agreements, conditional sale or other title retention agreements, suits, judgments, demands, guaranties, contractual commitments, licenses, restrictions, options, rights of first refusal, offsets, Contracts, recoupment rights, rights of recovery, claims for reimbursement, contribution, indemnity, exoneration, products liability, breach of warranty, alter-ego, environmental liabilities, labor and employment claims (whether or not under a labor agreement), employee pension or benefit plan claims (including multiemployer benefit plan claims), including any withdrawal or termination liability thereunder, workers' compensation claims, retiree medical benefits claims, liabilities related to the Employee

Retirement Income Security Act of 1974, liabilities related to the Worker Adjustment and

Retraining Notification Act of 1988, liabilities related to the Internal Revenue Code, or any other

liability relating to the Debtors' current and former employees, claims for taxes of or against the

Debtors or their assets, any derivative, vicarious, transfer or successor liability claims, and any

other rights or causes of action (whether in law or in equity, under any law, statute, rule or

regulation of the United States, any state, territory, or possession thereof or the District of

Columbia), whether arising prior to or subsequent to the Closing Date, whether known or

unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed,

recorded or unrecorded, perfected or unperfected, allowed or disallowed, asserted or unasserted,

material or non-material, disputed or undisputed, matured or unmatured, liquidated or

unliquidated, or contingent or non-contingent, and whether imposed by agreement, understanding,

law, equity or otherwise, including, without limitation, any and all claims otherwise arising under

doctrines of successor liability, in each case, arising under or out of, in connection with, or in any

way related to the Debtors (or their predecessors), the Debtors' interests in the Purchased Assets,

the operation of the Debtors' businesses before the Closing, or the transfer of the Debtors' interests

in the Purchased Assets to the Purchaser, and all Excluded Liabilities (collectively, and excluding

only Assumed Liabilities, the "**Interests**"), because, with respect to each person or entity asserting

an Interest, one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code

has been satisfied. Each person or entity with an Interest in the Purchased Assets: (i) has, subject

to the terms and conditions of this Order, consented to the Sale Transaction or is deemed to have

consented to the Sale Transaction; (ii) could be compelled in a legal or equitable proceeding to

accept money satisfaction of such Interest; or (iii) otherwise falls within one or more of the other

subsections of section 363(f) of the Bankruptcy Code.  Those holders of Interests who did not

object or withdrew objections to the Sale Transaction are deemed to have consented to the Sale Transaction pursuant to section 363(f)(2) of the Bankruptcy Code.

R.      The Purchaser would not have entered into the Asset Purchase Agreement and would not consummate the transactions contemplated thereby, including the Sale Transaction, (i) if the transfer of the Purchased Assets was not free and clear of all Interests, including rights or claims based on any successor or transferee liability, of any kind or nature whatsoever (solely except as expressly set forth in the Asset Purchase Agreement or this Order with respect to Assumed Liabilities) or (ii) if any of the Purchaser Parties would, or in the future could, be liable for any such Interests.

S.      Not transferring the Purchased Assets to the Purchaser free and clear of all Interests would adversely impact the Debtors' efforts to maximize the value of their estates, and the transfer of the Purchased Assets to the Purchaser other than pursuant to a transfer that is free and clear of all Interests would be of substantially less benefit to the Debtors' estates.  The total consideration to be provided under the Asset Purchase Agreement reflects the Purchaser's reliance on this Order to provide the Purchaser, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, with title to and possession of the Purchased Assets free and clear of all Interests.

T.      Prompt Consummation.  The sale of the Purchased Assets must be approved and consummated promptly to preserve the value of the Purchased Assets. Therefore, time is of the essence in consummating the Sale Transaction, and the Debtors and the Purchaser intend to close the Sale Transaction as soon as reasonably practicable. The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the transactions contemplated by the Asset Purchase Agreement, the other Transaction Documents and this Order, including the Sale Transaction. The

Purchaser, being a good faith purchaser under section 363(m) of the Bankruptcy Code, may close the Sale Transaction contemplated by the Asset Purchase Agreement at any time after entry of this Order, subject to the terms and conditions of the Asset Purchase Agreement. There is cause to lift the stay contemplated by Bankruptcy Rule 6004 with regards to the transactions contemplated by this Order.

U.     No Fraudulent Transfer.  The Transaction Documents were not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession or the District of Columbia, and none of the parties to the Transaction Documents are consummating the Sale Transaction for any other fraudulent or otherwise improper purpose.

V.     The consideration provided by the Purchaser for the Purchased Assets pursuant to the Asset Purchase Agreement (i) is fair and reasonable, (ii) is the highest and best offer for the Purchased Assets, (iii) will provide a greater recovery for the Debtors' creditors than would be provided by any other available alternative, and (iv) constitutes reasonably equivalent value, fair consideration and fair value under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia (including the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, and the Uniform Voidable Transactions Act), and any other applicable law.

W.     Purchaser Not an Insider and No Successor Liability.  Prior to the Closing Date, the Purchaser was not an "insider" or "affiliate" of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors or stockholders existed between the Purchaser and the Debtors. The transfer of the Purchased Assets to the Purchaser, the assumption of the Assumed Liabilities by the Purchaser and the consummation of the Sale

Transaction (including any individual elements of the Sale Transaction), do not, and will not, subject the Purchaser Parties to any liability whatsoever, with respect to the operation of the Debtors' businesses prior to the Closing or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, in any theory of law or equity including any laws affecting antitrust, successor, transferee or vicarious liability. Pursuant to the Asset Purchase Agreement, the Purchaser is not purchasing all of the Debtors' assets in that the Purchaser is not purchasing any of the Excluded Assets or assuming the Excluded Liabilities, and the Purchaser is not holding itself out to the public as a continuation of the Debtors. The Purchaser, as a result of any action taken in connection with the Sale Transaction (including by consummating the Sale Transaction), is not a successor to or a mere continuation of any of the Debtors or their respective estates and there is no continuity or common identity between the Purchaser and the Debtors.  The Sale Transaction does not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Debtors and/or the Debtors' estates.  There is not substantial continuity between the Purchaser and the Debtors, and there is no continuity of enterprise between the Debtors and the Purchaser.  The Purchaser does not constitute a successor to the Debtors or the Debtors' estates.  None of the Purchaser Parties shall assume or in any way be responsible for any obligations or Liability of any Debtor or any Debtor's estate, except for the Assumed Liabilities.

X.    <u>Binding Agreement</u>.  The Transaction Documents are, or upon the execution of thereof by the parties thereto, will be valid and binding contracts between the Debtors and the Purchaser and shall be enforceable pursuant to their terms.  Notwithstanding anything contained herein, the Transaction Documents or any further order of the Court to the contrary, the Transaction Documents and consummation of the Sale Transaction shall be, to the extent provided

in the Transaction Documents, specifically enforceable against and binding upon the Debtors and any estate representative, including any chapter 7 trustee or chapter 11 trustee appointed in any of the Debtors' cases, any plan administrator, litigation trustee or liquidation trustee appointed in the chapter 11 cases or any successor cases, creditors and all other parties-in-interest, and shall not be subject to rejection or avoidance by the foregoing parties or any other Person or entity.

Y.    Legal, Valid Transfer.  The Debtors have full corporate power and authority (i) to perform all of their obligations under the Transaction Documents and (ii) to consummate the Sale Transaction.  The transfer of the Purchased Assets to the Purchaser will be a legal, valid, and effective transfer of the Purchased Assets, and will vest the Purchaser with all right, title, and interest of the Sellers in and to the Purchased Assets free and clear of all Interests.  The Purchased Assets constitute property of the Sellers' estates and good title to the Purchased Assets is vested in the Sellers' estates within the meaning of section 541(a) of the Bankruptcy Code.  The Sellers are the sole and rightful owners of the Purchased Assets, and no other person or entity has any ownership right, title, or interests therein.

Z.    Not a Sub Rosa Plan.  The Sale Transaction does not constitute a *sub rosa* chapter 11 plan or an element of such plan for the Debtors, for which approval has been sought without the protections that a disclosure statement would afford.  The Sale Transaction does not (i) impermissibly restructure the rights of the Debtors' creditors or equity interest holders, (ii) impair or circumvent voting rights with respect to any future plan proposed by the Debtors, (iii) impermissibly dictate a plan of reorganization for the Debtors; or (iv) classify claims or equity interests, compromise controversies, or extend debt maturities.

AA.    Consummation is Legal, Valid and Binding.  The consummation of the Sale Transaction is legal, valid and properly authorized under all applicable provisions of the

14

Bankruptcy Code, including sections 105(a), 363(b), 363(f), and 363(m) of the Bankruptcy Code, and all of the applicable requirements of the Bankruptcy Code have been complied with in respect of the transactions contemplated by the Asset Purchase Agreement and the other Transaction Documents.  The transactions contemplated under the Transaction Documents and this Order (including the Sale Transaction) are inextricably linked and collectively constitute a single, integrated transaction.

BB.    <u>Legal and Factual Bases</u>.  The legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:**

**<u>General Provisions</u>**

1.      The Sale Transaction contemplated by the Motion and the Asset Purchase Agreement is approved, in each case, as set forth in this Order.

2.      This Court's findings of fact and conclusions of law set forth in the Bid Procedures Order are incorporated herein by reference.

3.      Objections to the Motion or the relief requested therein, the Transaction Documents, the Sale Transaction, the entry of this Order, or the relief granted herein that have not been withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof, if any, are hereby **DENIED** and **OVERRULED** on the merits with prejudice.  All withdrawn objections are deemed withdrawn with prejudice.  Those parties, including those holders of Interests, who did not object to the Motion or the entry of this Order in accordance with the Bid Procedures Order, or who withdrew their objections thereto, are deemed to have consented to the relief granted herein for all purposes, including, without limitation, pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of Interests that have an Interest in the Purchased Assets and who did object

15

could be compelled in a legal or equitable proceeding to accept money satisfaction of such Interest pursuant to section 363(f)(5) of the Bankruptcy Code or fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and, therefore, are adequately protected by having their Interests that constitute Interests in the Purchased Assets, if any, attach solely to the proceeds of the Sale Transaction ultimately attributable to the property in which they have an Interest, in the same order of priority and with the same validity, force and effect that such holders had prior to the Sale Transaction, subject to any claims, setoffs, deductions, offsets and defenses of the Debtors to such Interests.

## Approval of the Sale of the Purchased Assets

4.      The Asset Purchase Agreement, including any amendments, supplements and modifications thereto, all other Transaction Documents, and all of the terms and conditions therein, are hereby **APPROVED** in all respects.

5.      Pursuant to 11 U.S.C. §§ 363(b) and (f), the sale of the Purchased Assets to the Purchaser pursuant to the Asset Purchase Agreement free and clear of all Interests is approved in all respects.

## Sale and Transfer of the Purchased Assets

6.      The consideration provided by the Purchaser for the Purchased Assets under the Asset Purchase Agreement is fair and reasonable and shall be deemed for all purposes to constitute reasonably equivalent value, fair value, and fair consideration under the Bankruptcy Code and the laws of the United States, any state, territory, possession, or the District of Columbia, including without limitation the Uniform Fraudulent Transfer Act, the Uniform Voidable Transactions Act, the Uniform Fraudulent Conveyance Act, and any other applicable law. The Sale Transaction may not be avoided or rejected by any person or entity, nor may any costs or damages be imposed or

16

awarded against the Purchaser Parties, under section 363(n) or any other provision of the Bankruptcy Code.

7.     The Sale Transaction authorized herein shall be of full force and effect, regardless of the Debtors' lack or purported lack of good standing in any jurisdiction in which the Debtors are formed or authorized to transact business.  The automatic stay imposed by section 362 of the Bankruptcy Code is modified to the extent necessary, without further order of this Court, to implement the Sale Transaction and the provisions of this Order, including, without limitation, to allow the Purchaser to: (a) deliver any notice provided for in the Asset Purchase Agreement and any of the other Transaction Documents; (b) take any and all actions permitted under the Asset Purchase Agreement and any of the other Transaction Documents in accordance with the terms and conditions thereof; and (c) take any and all actions necessary or appropriate to implement the Sale Transaction.

8.     Subject to the terms, conditions, and provisions of this Order, all persons and entities are hereby forever prohibited and barred from taking any action that would adversely affect or interfere, or that would be inconsistent (a) with the ability of the Debtors to sell and transfer the Purchased Assets to the Purchaser in accordance with the terms of the Transaction Documents and this Order, (b) with the ability of the Purchaser to acquire, take possession of, use and operate the Purchased Assets and to conduct the Business in accordance with the terms of the Transaction Documents and this Order and (c) with the ability of the Debtors and the Purchaser to consummate the transactions contemplated by the Transaction Documents or to perform their respective obligations under any of the Transaction Documents; provided, however, that the foregoing restriction shall not impair the right of any party in interest with the requisite standing to appeal this Order in accordance with applicable law or opposing any appeal of this Order.

9.     Pursuant to sections 105, 363 and 365 of the Bankruptcy Code, the Debtors are hereby authorized, empowered and directed to, and shall, take any and all actions necessary or appropriate to (a) sell the Purchased Assets to the Purchaser, (b) consummate the Sale Transaction in accordance with, and subject to the terms and conditions of, this Order and the Transaction Documents, and (c) transfer and assign to the Purchaser all right, title and interest (including common law rights) to all property, licenses and rights to be conveyed in accordance with and subject to the terms and conditions of the Transaction Documents, in each case without further notice to or order of this Court.  The Debtors are further authorized and directed to execute and deliver, and are empowered to perform under, consummate and implement, the Transaction Documents, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Asset Purchase Agreement, including the related documents, exhibits and schedules, and to take all further actions as may be reasonably requested by the Purchaser for the purposes of assigning, transferring, granting, conveying and conferring to the Purchaser or reducing to possession, the Purchased Assets, or as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the Transaction Documents without further notice to or order of this Court.  Neither the Purchaser nor the Debtors shall have any obligation to proceed with consummating the Sale Transaction until all conditions precedent to their obligations to do so under the applicable Transaction Documents have been met, satisfied or waived.

10.    Pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, the Purchased Assets shall be transferred to the Purchaser at Closing free and clear of all Interests.  On and after the Closing Date, any person or entity that has an Interest against or in the Purchased Assets is authorized and directed to execute such documents and take all other actions as may be necessary

or reasonably requested by the Purchaser to release its Interests in or against the Purchased Assets, if any, as such Interests may have been recorded or otherwise exist.  If any such person or entity shall not have delivered to the Debtors prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfactions or releases of all Interests that such person or entity has with respect to the Purchased Assets, or otherwise, then the Purchaser is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Interests in the Purchased Assets of any kind or nature; provided that, notwithstanding anything in this Order, the Asset Purchase Agreement or other Transaction Documents to the contrary, the provisions of this Order authorizing and approving the transfer of the Purchased Assets free and clear of all Interests shall be self-executing, and neither the Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Order, the Asset Purchase Agreement or any of the other Transaction Documents.

11.     Following the Closing, the Purchaser may, but shall not be required to, file or record a certified copy of this Order in any filing or recording office in any federal, state, county, or other jurisdiction in which the Debtors are formed or have real or personal property, or with any other appropriate clerk or recorder, and such filing or recording shall be accepted and shall be sufficient to release, discharge, and terminate any of the Interests as set forth in this Order as of the Closing and/or to transfer and assign any of the Purchased Assets to the Purchaser as of the Closing free and clear of any and all Interests. Subject to the occurrence of the Closing, this Order will be construed, and constitute for any and all purposes, a full and complete general assignment, conveyance and transfer to the Purchaser of the Purchased Assets or a bill of sale transferring good

and marketable title in the Purchased Assets to the Purchaser.  Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by this Order, the Asset Purchase Agreement and the other Transaction Documents.

12.     All persons and entities who are presently, or on the Closing Date may be, in possession of some or all of the Purchased Assets are hereby directed to surrender possession of the Purchased Assets to the Purchaser on the Closing Date.

13.     Except as expressly permitted by the Asset Purchase Agreement or this Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade creditors, dealers, employees, litigation claimants, parties to executory contracts and unexpired leases, customers, licensors, current and former employees and other creditors, and all holders of Interests against or in a Debtor or any of the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Purchased Assets, the operation of the Purchased Assets before the Closing, or the transactions contemplated by the Asset Purchase Agreement, including the Sale Transaction and the transfer of the Purchased Assets, are forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such persons' or entities' Interests, whether by payment, setoff, or otherwise, directly or indirectly (including, without limitation, taking any of the following actions: (a) commencing or continuing in any manner any action or other proceeding; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any Interest; (d) asserting an Interest as a setoff, right of subrogation or recoupment of any kind against

any obligation due; (e) commencing or continuing any action in any manner or place that does not comply, or is inconsistent, with the provisions of this Order or the agreements or actions contemplated or taken in respect thereof; or (f) interfering with, preventing, restricting, prohibiting or otherwise enjoining the consummation of the Sale Transaction), in the case of each of the foregoing, against the Purchaser, the other Purchaser Parties, or any of their respective successors or assigns, their respective assets or property and the Purchased Assets. Following the Closing, no party shall interfere with the Purchaser's title to or use, enjoyment and operation of the Purchased Assets based on or related to any such Interest or based on any action or failure to act of the Debtors in the chapter 11 cases or any successor cases.

14.    To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license or similar grant relating to the Business or the operation of the Purchased Assets on account of the filing or pendency of the chapter 11 cases or the consummation of the transactions contemplated by the Asset Purchase Agreement or any of the other Transaction Documents, including the Sale Transaction and the transfer of the Purchased Assets. Each and every federal, state, and local governmental agency or department is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the Sale Transaction.

15.    The Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Business or the Purchased Assets, and, to the extent provided for under the Asset Purchase Agreement, all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are directed to be, transferred to the Purchaser as of the Closing Date.  Any dispute with respect to any such transfer or the vesting of any such

21

license, permit, registration or government authorization or approval in the Purchaser not raised by the Sale Objection Deadline is hereby waived.

16.    Subject to the terms and conditions of this Order, the transfer of the Purchased Assets to the Purchaser pursuant to the Asset Purchase Agreement and the consummation of the Sale Transaction and any related actions contemplated hereby and thereby constitute a legal, valid, and effective transfer of the Purchased Assets, do not require any consents of any Person or entity other than as specifically provided for in the Asset Purchase Agreement, and shall vest the Purchaser with all right, title, and interest of the Sellers in and to the Purchased Assets free and clear of all Interests of any kind or nature whatsoever.

**Releases and No Successor Liability**

17.    None of the Purchaser Parties is a "successor" to the Debtors or their estates by reason of any theory of law or equity, and, except as otherwise expressly provided in the Asset Purchase Agreement, none of the Purchaser Parties shall assume, or be deemed to assume, or in any way be responsible for any Liability or obligation of any of the Debtors and/or their estates with respect to the Purchased Assets or otherwise (other than, in the case of the Purchaser, the Assumed Liabilities), including, but not limited to, under any bulk sales law, doctrine or theory of successor liability, or similar theory or basis of liability or responsibility for any claim against any Debtor or against an insider of any Debtor, or similar liability.  Neither the purchase of the Purchased Assets by the Purchaser nor the fact that the Purchaser is using any assets previously operated by the Debtors will cause any of the Purchaser Parties to be deemed a successor in any respect to the Debtors' businesses or, except solely for the Assumed Liabilities, incur any Liability derived therefrom of any kind or character, including, but not limited to, an Interest or Liability arising under: (a) any employment or labor agreements or the termination thereof; (b) any pension,

welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of or related to any of the Debtors or any of the Debtors' predecessors or any current or former employees of any of the foregoing, or the termination of any of the foregoing; (c) the Debtors' business operations or the cessation thereof; (d) any litigation involving one or more of the Debtors; (e) any claims of any former employees of any of the Debtors; and (f) any employee, workers' compensation, occupational disease or unemployment or temporary disability related law, including, without limitation, claims that might otherwise arise under or pursuant to: (i) the Employee Retirement Income Security Act of 1974, as amended; (ii) the Fair Labor Standards Act; (iii) Title VII of the Civil Rights Act of 1964; (iv) the Federal Rehabilitation Act of 1973; (v) the National Labor Relations Act; (vi) the Worker Adjustment and Retraining Notification Act of 1988; (vii) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended; (viii) the Americans with Disabilities Act of 1990; (ix) the Consolidated Omnibus Budget Reconciliation Act of 1985; (x) the Multiemployer Pension Plan Amendments Act of 1980; (xi) state and local discrimination laws; (xii) state and local unemployment compensation laws or any other similar state and local laws; (xiii) state workers' compensation laws; (xiv) any other state, local or federal employee benefit laws, regulations or rules or other state, local or federal laws, regulations or rules relating to wages, benefits, employment or termination of employment with any or all of the Debtors or any of the Debtors' predecessors; (xv) any antitrust laws; (xvi) any product liability or similar laws, whether state, federal or otherwise; (xvii) any environmental laws, rules, or regulations, including, without limitation, under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, *et seq.*, or similar state statutes; (xviii) any bulk sales or similar laws; (xix) any federal, state or local tax statutes, regulations or ordinances, including,

23

without limitation, the Internal Revenue Code of 1986, as amended; or (xx) any common law doctrine of *de facto* merger or successor or transferee liability, successor-in-interest liability theory or any other theory of or related to successor liability, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, or liquidated or unliquidated with respect to any of the Debtors or any obligations of any of the Debtors arising prior to the Closing, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to, the Purchased Assets (except as expressly set forth in the Asset Purchase Agreement with respect to Assumed Liabilities).

18.     The Purchaser and the Purchaser Parties will be providing substantial consideration under the Asset Purchase Agreement and the Transaction Documents, which consideration shall constitute valid and valuable consideration for the releases of any potential claims of successor liability against the Purchaser Parties and which shall be deemed to have been given in favor of the Purchaser Parties by all holders of Interests in or against the Debtors, or the Purchased Assets. Upon consummation of the Sale Transaction, none of the Purchaser Parties shall be deemed to (a) be the successor to any Debtor or any assets of any Debtor, (b) have, *de facto* or otherwise, merged with or into any Debtor or any Debtor's estate, (c) have a common identity with any Debtor, (d) have a continuity of enterprise with any Debtor or (e) be a mere continuation, alter ego or substantial continuation of any Debtor.

19.     The Purchaser shall not have any liability, responsibility or obligation for any Interests, claims, Liabilities or other obligations of the Debtors or their estates, including any Interests, claims, Liabilities or other obligations related to the Purchased Assets prior to Closing. Under no circumstances shall the Purchaser be deemed a successor of or to the Debtors for any

Interests against, in or to the Debtors or the Purchased Assets.  For the purposes of this paragraph of this Order, all references to the Purchaser shall also be for the benefit of the Purchaser Parties.

<strong><u>Transfer of Certain Claims and Causes of Action</u></strong>

20.    As used in this Order, "**Claims and Causes of Actions**" means, collectively, any and all claims, interests, obligations, rights, suits, damages, causes of action (including, with respect to any Debtor, any cause of action under chapter 5 of the Bankruptcy Code and similar causes of action under state or other applicable law), remedies, and liabilities whatsoever, including any derivative claims that a person or entity (or someone on its behalf) would have been legally entitled to assert, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such person or entity would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of a holder of any claim against such person or entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the chapter 11 cases, the Sale Transaction, or any of the transactions contemplated by any of the Sale Transaction arising on or before the Closing Date. Notwithstanding anything to the contrary in this Order or the Asset Purchase Agreement to the contrary, other than to the extent included in the Purchased Assets, the Debtors shall retain, and shall be deemed to have retained, any and all Claims and Causes of Action.  Furthermore, notwithstanding anything in this Order or the Asset Purchase Agreement to the contrary except for the release provided to Seller and Purchaser in Sections 7.18(b) and 7.18(c) of the Purchaser Agreement, nothing in this Order shall release or be deemed to release the Purchaser or any Debtor from any claims, liabilities or obligations arising under or related to this Order, the Asset Purchase Agreement and the other Transaction Documents.

**Good Faith**

21.     The transactions contemplated by the Transaction Documents are undertaken by the Purchaser Parties without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein by this Order to consummate the Sale Transaction shall not alter, affect, limit, or otherwise impair the validity of the sale of the Purchased Assets to the Purchaser, including the transfer of the Purchased Assets. The Purchaser is a good faith purchaser of the Purchased Assets within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to, and is hereby granted, the full rights, benefits, privileges and protections of section 363(m) of the Bankruptcy Code. The Debtors and the Purchaser have acted, and will be acting, in good faith if they proceed to consummate the Sale Transaction at any time after the entry of this Order.

22.     As a good faith purchaser of the Purchased Assets, the Purchaser has not entered into an agreement with any other potential bidders at the Auction, and has not colluded with any of the other bidders, potential bidders or any other parties interested in the Purchased Assets, and, therefore, neither the Debtors nor any representative of or successor in interest to the Debtors' estates nor any other party in interest shall be entitled to bring any claim or cause of action against the Purchaser or the other Purchaser Parties, and the Sale Transaction may not be avoided, in each case, pursuant to section 363(n) of the Bankruptcy Code, and no party shall be entitled to any damages or other recovery pursuant to section 363(n) of the Bankruptcy Code in respect of the Asset Purchase Agreement, any of the other Transaction Documents or the Sale Transaction.

**Additional Provisions**

23.     Commencing on the Closing Date, the Debtors and the Purchaser are authorized to take such actions as may be necessary or appropriate to obtain a release of any and all Interests in,

26

on or against the Purchased Assets, if any, and to the extent contemplated hereby and by the Asset Purchase Agreement.  This Order (a) shall be effective as a determination that, as of the Closing Date, all Interests of any kind or nature whatsoever existing as to the Purchased Assets prior to the Closing have been, and are, unconditionally released, discharged and terminated, and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all persons and entities, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law or by reason of the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets.  Each and every federal, state and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement and the other Transaction Documents.  The Purchaser and the Debtors shall take such further steps and execute such further documents, assignments, instruments and papers as shall be reasonably requested by the other to implement and effectuate the transactions contemplated in this paragraph.  All Interests of record as of the date of this Order shall be forthwith deemed removed and stricken as against the Purchased Assets.  All persons and entities described in this paragraph are authorized and specifically directed to strike all such recorded Interests against the Purchased Assets from their records, official and otherwise.

24.      If any person or entity that has filed statements or other documents or agreements evidencing Interests in, on or against any of the Purchased Assets does not deliver to the Debtors

or the Purchaser prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all interests and other interests that the person or entity has or may assert with respect to any of the Purchased Assets in any required jurisdiction, the Debtors and/or the Purchaser are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to any of the Purchased Assets in any required jurisdiction. This Order constitutes authorization under all applicable jurisdictions and versions of the Uniform Commercial Code and other applicable law for the Purchaser to file UCC and other applicable termination statements with respect to all Interests in, on, or against the Purchased Assets.

25.    The Debtors will cooperate with the Purchaser and the Purchaser will cooperate with the Debtors, in each case to ensure that the transactions contemplated in the Asset Purchase Agreement and the other Transaction Documents are consummated, and the Debtors will make such modifications or supplements to any bill of sale or other document executed in connection with the Closing to facilitate such consummation as contemplated by the Transaction Documents.

26.    The terms and provisions of the Transaction Documents and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors and their respective affiliates, successors and assigns, their estates, and their creditors and equityholders, the Purchaser, and its respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons or entities asserting Interests in, on or against the Purchased Assets, notwithstanding any subsequent appointment of any trustee(s) (including without limitation any plan administrators, litigation or liquidation trustees appointed during the pendency of, or upon confirmation of a chapter 11 plan in, these chapter 11 cases), examiner(s) or other fiduciary under

28

any chapter of the Bankruptcy Code, as to which trustee(s) (including without limitation any plan administrators, litigation or liquidation trustees appointed during the pendency of, or upon confirmation of a chapter 11 plan in, these chapter 11 cases), examiner(s) or other fiduciary such terms and provisions likewise shall be binding.

27.     The failure specifically to include any particular provisions of the Asset Purchase Agreement or any other Transaction Documents in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Asset Purchase Agreement and the other Transaction Documents be authorized and approved in their entirety.

28.     Following entry of this Order, the Transaction Documents may be modified, amended or supplemented by the parties thereto, in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.  To the extent that any provision of the Asset Purchase Agreement conflicts with or is, in any way, inconsistent with any provision of this Order, this Order shall govern and control.  To the extent that this Order is inconsistent with any prior order or pleading with respect to the Motion, the terms of this Order shall govern.

29.     Neither the Purchaser Parties nor the Debtors shall have an obligation to close the Sale Transaction until all conditions precedent in the Asset Purchase Agreement to each of their respective obligations to close the Sale Transaction have been met, satisfied, or waived in accordance with the terms of the Asset Purchase Agreement.

30.     Nothing in this Order shall modify or waive any closing conditions or termination rights set forth in the Asset Purchase Agreement, and all such conditions and rights shall remain in full force and effect in accordance with their terms.

31.     Nothing contained in any chapter 11 plan confirmed in these chapter 11 cases, any order of this Court confirming such plans, any order dismissing any of these chapter 11 cases or any other order in these chapter 11 cases, including any order entered after any conversion of these chapter 11 cases to a case under chapter 7 of the Bankruptcy Code, shall alter, conflict with, or derogate from, the provisions of the Asset Purchase Agreement or the terms of this Order.  To the extent of any such conflict or derogation, the terms of this Order, and the Asset Purchase Agreement shall govern.  The provisions of this Order, the Asset Purchase Agreement and the other Transaction Documents, and any actions taken pursuant hereto or thereto, shall survive entry of any order which may be entered confirming or consummating any chapter 11 plan of the Debtors, or which may be entered converting these chapter 11 cases from chapter 11 to chapter 7 of the Bankruptcy Code or dismissing these chapter 11 cases, and the terms and provisions of the Asset Purchase Agreement and the other Transaction Documents, as well as the rights and interests granted pursuant to this Order, the Asset Purchase Agreement and the other Transaction Documents, shall continue in these chapter 11 cases or any superseding cases and shall be specifically performable and enforceable against and binding upon the Debtors, their estates, all creditors, all holders of equity interests in the Debtors, all holders of claim(s) (whether known or unknown) against the Debtors, all holders of Interests (whether known or unknown) against, in or on all or any portion of the Purchased Assets, the Purchaser and their respective successors and permitted assigns, and any trustee, responsible officer or other fiduciary hereafter appointed or elected as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code, including without limitation plan fiduciaries, plan administrators, litigation or liquidation trustees appointed during the pendency of, or upon confirmation of a chapter 11 plan in, these chapter 11 cases.

30

32.     Any and all valid and perfected Interests in the Purchased Assets arising prior to the Closing Date shall attach to any proceeds of the Sale Transaction immediately upon receipt of such proceeds by the Debtors in the order of priority, and with the same validity, force and effect which they may have against such Purchased Assets as of immediately prior to the Closing Date, subject to any rights, claims, and defenses of the Debtors, the Debtors' estates or any trustee for any Debtor, as applicable, may possess with respect thereto; provided, however, that setoff rights will be extinguished to the extent there is no longer mutuality after the consummation of the Sale Transaction in addition to any limitations on the use of such proceeds pursuant to any provision of this Order.

33.     Notwithstanding the relief granted herein and any actions taken pursuant to such relief, nothing contained in this Sale Order shall constitute, nor is it intended to constitute: (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' right to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim or finding that any particular claim is an administrative expense claim or other priority claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Sale Order; (e) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Sale Order are valid and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection, or to seek avoidance of all such liens.  Any payment made pursuant to this Sale Order should not be construed as an admission as to the validity, priority, or

amount of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

34.     The provisions of this Order are nonseverable and mutually dependent.

35.     No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale Transaction.

36.     The Debtors and each other person or entity having duties or responsibilities under the Transaction Documents or this Order, and their respective agents, representatives, and attorneys, are authorized and empowered to carry out all of the provisions of the Asset Purchase Agreement and the other Transaction Documents, to issue, execute, deliver, file and record, as appropriate, the Asset Purchase Agreement, the other Transaction Documents and any related agreements, and to take any action contemplated by the Asset Purchase Agreement, the other Transaction Documents or this Order, and to issue, execute, deliver, file and record, as appropriate, such other certificates, documents, contracts, instruments, releases, deeds, bills of sale, assignments, or other agreements, and to perform such other acts as are consistent with, and necessary, desirable or appropriate to, implement, effectuate and consummate the Transaction Documents and this Order and the transactions contemplated thereby and hereby, all without further application to, or order of, the Court.  Without limiting the generality of the foregoing, this Order shall constitute all approvals and consents, if any, required by applicable business corporation, trust and other laws of applicable governmental units with respect to the implementation and consummation of the Asset Purchase Agreement, the other Transaction Documents and this Order and the transactions contemplated thereby and hereby.  The transfer of the Purchased Assets to the Purchaser pursuant to the Transaction Documents do not require any

consents other than specifically provided for in the Asset Purchase Agreement or as provided for herein.

37.     Notwithstanding the provisions of Bankruptcy Rule 6004 or any applicable provisions of the Local Rules, this Order shall not be stayed for fourteen (14) days after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14) day stay provided in such rules is hereby expressly waived and shall not apply.  Accordingly, the Debtors are authorized and empowered to close the Sale Transaction immediately upon, and following, entry of this Order.  Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay within the time prescribed by law and prior to the Closing or risk its appeal will be foreclosed as moot.

38.     This Court shall retain exclusive jurisdiction to enforce and implement the terms and provisions of this Order, the Asset Purchase Agreement and the other Transaction Documents, and all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connections therewith in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Purchased Assets to the Purchaser free and clear of all Interests, or compel the performance of other obligations owed by the Debtors, (b) compel delivery of the purchase price or performance of other obligations owed to the Debtors, (c) resolve any disputes arising under or related to the Asset Purchase Agreement, or any of the other Transaction Documents except as otherwise provided therein, (d) interpret, implement, and enforce the provisions of this Order, and (e) protect the Purchaser and Purchaser Parties against (i) claims made related to any of the Excluded Liabilities, (ii) any claims of successor or vicarious liability related to the Purchased Assets, or (iii) any Interests (other than Assumed Liabilities) asserted in, on, or against the Debtors or the Purchased Assets, of any kind or nature whatsoever.

39.     To the extent the Debtors or any trustee(s), receiver(s), responsible officer(s) or other fiduciary appointed or elected, in these chapter 11 cases or any successor cases, receive, hold, or otherwise come into possession after the Closing of any payment or asset that constitutes Purchased Assets, such payment or asset shall be held in trust for the benefit of the Purchaser and the Debtors or any such trustee(s), receiver(s), responsible officer(s) or other fiduciary shall promptly deliver or otherwise turn over such payment or asset to the Purchaser.

40.     The Debtors are authorized to take all actions necessary or appropriate to effectuate the relief granted pursuant to this Order in accordance with the Motion.

Houston, Texas
Dated: _____, 2023

_____
UNITED STATES BANKRUPTCY JUDGE

## Exhibit A

**Asset Purchase Agreement**

**ASSET PURCHASE AGREEMENT**

**dated as of**

**August 9, 2023**

**by and among**

**Surgalign Spine Technologies, Inc.,**

**Holo Surgical Inc.,**

**HoloSurgical Technology Inc.,**

**Surgalign Holdings, Inc.**

**and**

**Augmedics, Inc.**

## ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT ("**Agreement**") is entered into as of August 9, 2023 by and among Augmedics, Inc., a Delaware corporation (the "**Purchaser**"), and Surgalign Spine Technologies, Inc., a Delaware corporation ("**Surgalign Spine**"), Holo Surgical Inc., a Delaware corporation ("**Holo Surgical**"), and HoloSurgical Technology Inc., a Delaware corporation ("**Holo Technology**", and, together with Surgalign Spine and Holo Surgical, "**Sellers**"), and, solely with respect to provisions applicable to the Deposit and the Escrow Agreement, Surgalign Holdings, Inc. ("**Holdings**").

## RECITALS

WHEREAS, Sellers and certain of their Affiliates have commenced voluntary cases under Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq, as amended (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") on June 19, 2023 (the "**Petition Date**") and are being jointly administered for procedural purposes as *In re Surgalign Holdings, Inc., et al.*, Case No. 23-90731 (CML) (the "**Bankruptcy Case**");

WHEREAS, each Seller continues to operate its business and manage its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

WHEREAS, Sellers wish to sell to Purchaser and Purchaser wishes to acquire from Sellers certain assets related to the Business;

WHEREAS, the transactions contemplated by this Agreement will be consummated pursuant to a Sale Approval Order (as defined below) to be entered in the Bankruptcy Case under Sections 105 and 363, and other applicable provisions of the Bankruptcy Code, and this Agreement and the transactions contemplated herein are subject to the approval of the Bankruptcy Court; and

NOW, THEREFORE, in consideration of the mutual promises in this Agreement and for other good and valuable consideration, the parties hereto hereby agree as follows.

## AGREEMENT

1. **DEFINITIONS**

    1.1    "**Accounts Receivable**" means all of Sellers' trade accounts receivable and other rights to payment from customers or other third parties with respect to products sold or services performed on or prior to the Closing Date to the extent related to and arising out of the operation of the Business.

    1.2    "**Actions**" has the meaning set forth in **Section 3.4** hereof.

    1.3    "**Affiliate**" of a Person means any other Person that directly or indirectly through one or more intermediaries controls, is controlled by, or is under common control with such Person. For purposes of this definition, "control" (and any similar term) means the power of one or more Persons (directly or indirectly through one or more intermediaries) to direct, or cause

2

the direction of, the management or affairs of another Person by reason of ownership of voting interests or by Contract or otherwise.

**1.4** "**Agreement**" means this Asset Purchase Agreement among the parties set forth on the first page hereof, including, without limitation, all Exhibits and Schedules hereto, as the same may be amended from time to time.

**1.5** "**Alternative Transaction**" means the sale, transfer or other disposition, directly or indirectly, including through an asset sale, share sale, merger, plan of arrangement, issuance, financing, recapitalization, amalgamation, liquidation or other similar transaction, including a chapter 11 plan approved by the Bankruptcy Court, or resulting from the Auction, of a material portion of the Purchased Assets, in a transaction or series of transactions with one or more Persons other than Purchaser.

**1.6** "**Ancillary Agreements**" means any agreement, instrument or other document to be executed and delivered in connection with the consummation of the transactions contemplated by this Agreement and shall include, without limitation, any agreement, instrument, or other document that is set forth in **Section 2.7** hereof.

**1.7** "**Assumed Liabilities**" has the meaning set forth in **Section 2.3(a)** hereof.

**1.8** "**Auction**" means the auction of the Purchased Assets.

**1.9** "**Back-up Bidder**" has the meaning set forth in **Section 5.4(e)(iii)** hereof.

**1.10** "**Bankruptcy Case**" has the meaning given to it in the recitals hereto.

**1.11** "**Bankruptcy Code**" has the meaning given to it in the recitals hereto.

**1.12** "**Bankruptcy Court**" has the meaning given to it in the recitals hereto.

**1.13** "**Bid Procedures**" means the auction, sale and bid procedures approved by the Bid Procedures Order.

**1.14** "**Bid Procedures Order**" means the Order approving, among other things, the bid procedures to be used in connection with the sale of the Purchased Assets, Docket No. 137.

**1.15** "**Business**" means the business of designing and developing digital health solutions as conducted by Sellers, including the suite of HOLO™ AI medical imaging AI software, the HOLO AI Insights analytics cloud platform, and the HOLO Portal™ augmented reality surgical guidance system.

**1.16** "**Business Day**" means any day other than a Saturday, Sunday or other day on which commercial banks in New York are required or authorized by Law to be closed.

**1.17** "**Cash and Cash Equivalents**" means all cash and cash equivalents, including checks, commercial paper, treasury bills, certificates of deposit and other bank deposits, securities,

securities entitlements, instruments and other investments of Sellers, and all bank accounts and securities accounts, including any cash collateral that is collateralizing any letters of credit.

1.18    "**Cash Payment**" has the meaning set forth in **Section 2.6(a)** hereof.

1.19    "**Claim**" has the meaning given to such term in Section 101(5) of the Bankruptcy Code.

1.20    "**Closing**" has the meaning set forth in **Section 2.5** hereof.

1.21    "**Closing Date**" has the meaning set forth in **Section 2.5** hereof.

1.22    "**Code**" means the Internal Revenue Code of 1986, as amended.

1.23    "**Competing Bid**" means any bid, offer or proposal contemplating an Alternative Transaction.

1.24    "**Confidentiality Agreement**" means the Confidentiality Agreement by and between Seller and Augmedics, Inc., dated June 29, 2023.

1.25    "**Consent**" means any consent, approval, authorization, license or order of, registration, declaration or filing with, or notice to, or waiver from, any federal, state, local, foreign or other Governmental Entity or any Person, including, without limitation, any security holder or creditor which is necessary to be obtained, made or given in connection with the execution and delivery of this Agreement and/or any Ancillary Agreement, the performance by a Person of its obligations hereunder and/or thereunder and the consummation of the transactions contemplated hereby and/or thereby.

1.26    "**Contract**" means any written lease, contract, deed, mortgage, license or other legally enforceable agreement or instrument.

1.27    "**Deal Communications**" means all communications (whether before, at or after the Closing and whether in writing, electronic or other form) between internal or external legal counsel and any Seller or any of their respective Affiliates or any of their respective Representatives that relate in any way to the Transactions or the Bankruptcy Cases that are entitled to any attorney-client privilege or an expectation of client confidence or any other rights to any evidentiary privilege.

1.28    "**Debtors**" means the debtors and debtors in possession in the Bankruptcy Case.

1.29    "**Delivery Date**" has the meaning set forth in **Section 5.5(a)** hereof.

1.30    "**Deposit**" has the meaning set forth in **Section 2.6** hereof.

1.31    "**Disclosure Limitations**" has the meaning set forth in **Section 5.1** hereof.

4

**1.32** "**Disclosure Schedules**" means the disclosure schedules delivered by Sellers to Purchaser concurrently with the execution of this Agreement, which shall include but not be limited to each of the Schedules expressly referred to in **Section 3** of this Agreement.

**1.33** "**Employment Related Plan**" means any employment, consulting, bonus, incentive compensation, deferred compensation, pension, profit sharing, retirement, stock purchase, stock option, stock ownership, stock appreciation rights, phantom stock, equity (or equity-based), leave of absence, layoff, vacation, day or dependent care, legal services, cafeteria, life, health, medical, dental, vision, welfare, accident, disability, workmen's compensation or other insurance, severance, separation, termination, change of control, collective bargaining or other benefit plan, understanding, agreement, practice, policy or arrangement of any kind, whether written or oral, and whether or not subject to ERISA, including any "employee benefit plan" within the meaning of Section 3(3) of ERISA.

**1.34** "**Encumbrances**" means collectively and without limitation, any and all mortgages, security interests, conditional sales or title retention agreements, pledges, hypothecations, rights, liens, judgments, interests, encumbrances or claims of any kind or nature whatsoever, including, without limitation, any and all "Claims" as defined in Section 101(5) of the Bankruptcy Code, whether arising by agreement, any statute or otherwise.

**1.35** "**ERISA**" means the Employee Retirement Income Security Act of 1974, as amended, and the rules and regulations promulgated thereunder.

**1.36** "**ERISA Affiliate**" means any Person required at any particular time to be aggregated with any Seller or any Subsidiary of Sellers under Sections 414(b), (c), (m) or (o) of the Code or Section 4001 of ERISA.

**1.37** "**Escrow Agent**" means Citibank, N.A.

**1.38** "**Escrow Agreement**" means that certain Escrow Agreement, dated as of June 18, 2023, by and between Holdings and the Escrow Agent.

**1.39** "**Excluded Assets**" has the meaning set forth in **Section 2.2** hereof.

**1.40** "**Excluded Liabilities**" has the meaning set forth in **Section 2.3(b)** hereof.

**1.41** "**Final Order**" means (a) an Order of the Bankruptcy Court or (b) an Order of any other court having jurisdiction over any appeal from (or petition seeking certiorari or other review of) any Order of the Bankruptcy Court, in each case as to which the time to file an appeal, a motion for rehearing or reconsideration or a petition for writ of certiorari has expired and no such appeal, motion or petition is pending; provided, however, that the possibility a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Federal Rules of Bankruptcy Procedure or local rules of the Bankruptcy Court, may be filed relating to such Order shall not prevent such Order from being a Final Order.

**1.42** "**GAAP**" means United States generally accepted accounting principles, applied on a consistent basis.

5

1.43   "**Governmental Entity**" means any federal, state, local or foreign government, political subdivision, legislature, court, agency, department, bureau, commission or other governmental regulatory authority, body or instrumentality, including any industry or other non-governmental self-regulatory organizations.

1.44   "**Hardware Business**" has the meaning set forth in **Section 2.2(s)** hereof.

1.45   "**Hardware Business Owner**" has the meaning set forth in **Section 2.2(s)** hereof.

1.46   "**Holo Surgical**" has the meaning given to it in the Recitals hereto.

1.47   "**Holo Technology**" has the meaning given to it in the Recitals hereto.

1.48   "**IFRS**" means the international financial reporting standards issued by the International Accounting Standards Board as of the date hereof.

1.49   "**Indemnified Person**" has the meaning set forth in **Section 5.8(a)** hereof.

1.50   "**Intellectual Property**" means all intellectual property of any kind owned or licensed or purported to be owned or licensed by Sellers to the extent primarily used, or held for use, in connection with the operation of the Business, including the following:  (i) trademarks, service marks, trade names, slogans, logos, trade dress, internet domain names, brand names, and other similar designations of source or origin, together with all goodwill, registrations and applications related to the foregoing; (ii) patents, utility models and industrial design registrations (and all continuations, divisionals, continuations in part, provisionals, renewals, reissues, re-examinations and applications and all rights of priority for any of the foregoing); (iii) copyrights and copyrightable subject matter (including, without limitation, any registrations and applications for any of the foregoing); (iv) trade secrets, know-how, proprietary processes, formulae, algorithms, models, engineering or technical information, manufacturing information, and methodologies; and (v) computer software, computer programs, computer instructions, routines, configuration files, scripts, compilers, interpreters, virtual machines, development environments, application programming interfaces, and databases (whether in source code, object code, assembly code or other form).

1.51   "**Intellectual Property Rights**" means all proprietary rights and privileges of any kind or nature, however known or denominated, whether arising by operation of law, contractual obligation, or other means, throughout the world, including the right to distribute, exhibit, broadcast, and market Intellectual Property by all means now known or hereafter devised (including over the Internet, World Wide Web, or other computer network).

1.52   "**IP Assets**" has the meaning set forth in **Section 3.5** hereof.

1.53   "**Inventory**" means all of Sellers' inventories (including, without limitation, raw materials, processed scrap, packaging materials, supplies, instruments, work in process, finished goods, spare parts and replacement and component parts and fuel) to the extent primarily used, or held for use, in connection with the operation of the Business.

**1.54** "**Knowledge of Seller**" means the actual knowledge of any of the individuals listed on **Schedule 1.54** of the Disclosure Schedules after reasonable due inquiry or investigation.

**1.55** "**Law**" means any federal, state, provincial, local, municipal, foreign or other law, statute, legislation, constitution, principle of common law, resolution, ordinance, code, edict, decree, proclamation, treaty, convention, rule, regulation, ruling, directive, pronouncement, requirement, determination, decision or opinion of any Governmental Entity.

**1.56** "**Legal Restraint**" has the meaning set forth in **Section 6.1(a)** hereof.

**1.57** "**Liability**" means any and all Claims, debts, indebtedness, liens, losses, damages, adverse Claims, liabilities, fines, penalties, duties, responsibilities, obligations and expenses (including reasonable attorneys' fees and reasonable costs of investigation and defense) of any kind, character, or description, whether known or unknown, direct or indirect, fixed, absolute or contingent, matured or unmatured, accrued or unaccrued, asserted or unasserted, ascertained or ascertainable, disputed or undisputed, liquidated or unliquidated, secured or unsecured, joint or several, vested or unvested, executory, determined, determinable, in contract, tort, strict liability, or otherwise, or otherwise due or to become due.

**1.58** "**Machine Shop Assets**" has the meaning set forth in **Section 2.2(s)** hereof.

**1.59** "**Material Adverse Effect**" means any state of facts, event, change or effect to the Business, that results in a material adverse effect on the Purchased Assets, taken as a whole; provided, however, that none of the following state of facts, events, changes or effects (or the results thereof) shall be deemed to constitute a "Material Adverse Effect" and shall not be taken into account, individually or in the aggregate, in determining whether a Material Adverse Effect has occurred: (a) the execution, announcement or pendency of this Agreement or the filing of the Petition (including any action or inaction by the customers, suppliers, landlords, employees, consultants or competitors of any Seller or any of their respective Affiliates as a result thereof) and compliance with the express provisions of this Agreement or the consummation of the Transactions (including the impact thereof on the relationships, contractual or otherwise, of the Business with labor unions, financing sources, customers, employees, suppliers or partners or other business relationships), including the initiation of litigation or other administrative proceedings by any Person with respect to this Agreement, the Bankruptcy Cases or any of the Transactions, (b) actions, omissions, events and circumstances, directly or indirectly, arising out of or caused by the filing or pendency of the Petitions, the Auction, the Bankruptcy Cases or any case commenced by any Seller or any of their respective Affiliates under Chapter 7 of the Bankruptcy Code, (c) actions or omissions taken or not taken by or on behalf of any Seller or any their respective Affiliates at the request of, or with the prior written consent of, Purchaser or its Affiliates, (d) actions taken by Purchaser or its Affiliates, (e) failure of any Seller or any of their respective Affiliates to meet any internal or published projections, forecasts, estimates or predictions (provided, that this clause (e) shall not prevent a determination that any state of facts, event, change or effect underlying such failure has resulted in a Material Adverse Effect, unless such state of facts, event, change or effect is otherwise excepted by this definition), (f) changes or prospective changes in Law or GAAP, IFRS or other applicable accounting principles or standards in the United States or elsewhere, or changes or prospective changes in the interpretation or enforcement of any of the foregoing, or any changes or prospective changes in general legal, regulatory or

political conditions; (g) volcanoes, tsunamis, effects of climate change, earthquakes, floods, storms, hurricanes, tornadoes, fires, epidemics, pandemics, disease, outbreak, public health crises or acts of god or natural disasters or man-made disasters, in each case, including and any direct or indirect consequence or condition thereof, including outbreaks or additional waves of outbreaks of any contagious diseases (including influenza, COVID-19 or any variation thereof), (h) any action required to be taken under any Law or Order or any existing Contract relating to the Business by which any Seller (or any of its properties) is bound, (i) disruptions to the securitization market or changes in general economic conditions, currency exchange rates or United States or international securities, currency, debt or equity markets, (j) general trends, events or conditions generally affecting the industry, markets or geographic areas in which the Business operates, including changes in customer or supplier behavior, (k) local, regional, national or international political or social conditions or any national or international hostilities, acts of terror, cyberterrorism, police action, civil unrest, sabotage, war (whether or not declared) or any escalation or worsening of any such conditions, hostilities or acts, (l) any matter disclosed on the Disclosure Schedules or in any Parent SEC Documents or in any filing by a member of the Parent Group with the Bankruptcy Court, or any other matter known to Purchaser as of the date hereof and (m) delisting of any Seller's or their respective Affiliates' securities from any public securities exchange; provided, however, that, in the case of clauses (i), (j), and (k), such state of facts, events, changes or effects shall be taken into effect in determining whether any such material adverse effect has occurred to the extent that any such state of facts, events, changes or effects have a material and disproportionate adverse effect on the Business, taken as a whole, relative to similar businesses, operating in the industry or markets in which the Business operates.

**1.60** "**Nonparty Affiliates**" has the meaning set forth in **Section 7.18(a)** hereof.

**1.61** "**Offer**" has the meaning set forth in **Section 5.6** hereof.

**1.62** "**Order**" means any order, writ, judgment, injunction, decree, rule, ruling, directive, determination or award made, issued or entered by or with any Governmental Entity, whether preliminary, interlocutory or final, including by the Bankruptcy Court in the Bankruptcy Cases (including the Sale Approval Order).

**1.63** "**Organizational Documents**" means, with respect to any Person (other than an individual), the certificate or articles of incorporation, formation or organization and any bylaws, limited liability company, operating or partnership agreement or any other similar documents adopted or filed in connection with the incorporation, formation or organization of such Person.

**1.64** "**Outside Date**" has the meaning set forth in **Section 7.1(b)(iii)** hereof.

**1.65** "**Parent Group**" means Holdings , its controlled Affiliates, including Sellers, and their respective Representatives.

**1.66** "**Parent SEC Documents**" means collectively, all reports, schedules, forms, statements, registration statements, prospectuses and other documents (including all exhibits, amendments and supplements thereto) filed or furnished by Holdings with the United States

Securities and Exchange Commission under the Securities Act or the Exchange Act since January 1, 2020.

**1.67** "**Person**" means an individual, corporation, partnership, limited liability company, firm, joint venture, association, joint stock company, trust, unincorporated organization or other entity, or any Governmental Entity or quasi-governmental body or regulatory authority.

**1.68** "**Petition**" means each voluntary petition under the Bankruptcy Code filed by each member of the Parent Group that is a debtor in the Bankruptcy Cases with the Bankruptcy Court.

**1.69** "**Petition Date**" has the meaning set forth in the Recitals hereto.

**1.70** "**Poland Subsidiary**" means HoloSurgical Technology Polska sp. Zoo.

**1.71** "**Pre-Closing Tax Period**" means (i) any Tax period ending on or before the Closing Date and (ii) with respect to a Tax period that commences before but ends after the Closing Date, the portion of such period up to and including the Closing Date.

**1.72** "**Prompt Prototypes**" has the meaning set forth in **Section 2.2(s)** hereof.

**1.73** "**Purchased Assets**" has the meaning set forth in **Section 2.1** hereof.

**1.74** "**Purchase Price**" has the meaning set forth in **Section 2.6** hereof.

**1.75** "**Purchase Price Allocation**" has the meaning set forth in **Section 7.22** hereof.

**1.76** "**Purchaser**" has the meaning given to it in the recitals hereto.

**1.77** "**Purchaser Default Termination**" has the meaning set forth in **Section 7.2(b)** hereof.

**1.78** "**Representatives**" means, with respect to a particular Person, any director, officer, employee or other authorized representative of such Person or its Subsidiaries, including such Person's attorneys, accountants, financial advisors and restructuring advisors.

**1.79** "**Released Claim**" has the meaning set forth in **Section 7.18(b)** hereof.

**1.80** "**Releasee**" has the meaning set forth in **Section 7.18(b)** hereof.

**1.81** "**Releasor**" has the meaning set forth in **Section 7.18(b)** hereof.

**1.82** "**Retained Businesses**" means the businesses of the Parent Group and its Affiliates (other than the Business).

**1.83** "**Retained Business Marks**" means any trademarks, service marks, trade name rights, associated goodwill and any other similar legal rights to indicia of origin owned by or exclusively licensed to the Retained Business, the Hardware Business or the Machine Shop Assets or otherwise associated with the products or services of the Retained Business, the Hardware

Business or the Machine Shop Assets, including the names "Surgalign" and those set forth in **Schedule 1.83** of the Disclosure Schedules and any indicia of origin that is derivative of, or confusingly similar to, such names.

1.84    "**Sale Approval Order**" has the meaning set forth in **Section 5.4(b)** hereof.

1.85    "**Sale Hearing**" means the hearing to approve the sale of the Purchased Assets, which may be continued to a later date by the Debtors by filing a notice of adjournment prior to, or making an announcement at, such hearing.

1.86    "**Section 338(g) Election**" has the meaning set forth in **Section 7.21** hereof.

1.87    "**Sellers**" has the meaning given to it in the Recitals hereto.

1.88    "**Seller Plan**" means each Employment Related Plan that is sponsored, maintained, administered, contributed to or entered into by any Seller or any ERISA Affiliate as of or prior to the Closing Date and, in the case of an Employment Related Plan that is subject to Part 3 of Title I of ERISA, Section 412 of the Code, or Title IV of ERISA, at any time during the five (5) year period preceding the Closing Date, in each case, that is primarily for the benefit of the Sellers' employees and/or former employees, independent contractors or former independent contractors (or their dependents and beneficiaries) of the Business.

1.89    "**Straddle Period**" means any taxable period which begins on or before the Closing Date and ends after the Closing Date.

1.90    "**Subsidiary**" means, with respect to any Person, any other Person (i) of which the first Person owns directly or indirectly fifty percent (50%) or more of the equity interest in the other Person; (ii) of which the first Person or any other Subsidiary of the first Person is a general partner or managing member or has the power to direct the policies, management or affairs or (iii) of which securities or other ownership interests having ordinary voting power to elect a majority of the board of directors or other persons performing similar functions with respect to the other Person are at the time owned by the first Person and/or one or more of the first Person's Subsidiaries.

1.91    "**Successful Bidder**" shall have the meaning set forth in the Bid Procedures.

1.92    "**Surgalign Spine**" has the meaning given to it in the Recitals hereto.

1.93    "**Taxes**" (or "**Tax**" where the context requires) means all federal, state, county, provincial, local, foreign and other taxes (including, without limitation, income, profits, premium, estimated, excise, sales, use, occupancy, gross receipts, franchise, ad valorem, severance, capital levy, production, transfer, withholding, employment and payroll related and property taxes and other governmental charges and assessments), whether attributable to statutory or no statutory rules and whether or not measured in whole or in part by net income, and including, without limitation, interest, additions to tax or interest, charges and penalties with respect thereto, and expenses associated with contesting any proposed adjustment related to any of the foregoing. For purposes of this Agreement, in the case of any Taxes that are imposed with respect to any Straddle Period, the portion of such Tax which relates to the portion of such period ending on and including

the Closing Date shall (a) in the case of any real or personal property Taxes or other similar ad valorem Taxes, be deemed to be the amount of such Tax for the entire taxable period multiplied by a fraction the numerator of which is the number of days in the taxable period ending on the Closing Date and the denominator of which is the number of days in the entire Straddle Period and (b) in the case of any other Tax, be deemed equal to the amount which would be payable if the relevant taxable period ended on the Closing Date, based on an interim closing of the books.

       **1.94** "**Transactions**" means the transactions contemplated by this Agreement and the other Ancillary Agreements, including the purchase and sale of the Purchased Assets in exchange for the Purchase Price and the assumption of the Assumed Liabilities.

## 2.   PURCHASE AND SALE OF ASSETS

       **2.1** <u>Purchase and Sale of Assets</u>.   Pursuant to sections 105 and 363 of the Bankruptcy Code and subject to the terms and conditions of this Agreement together with any Bankruptcy Court approval that may be required, including the payment by Purchaser of the Purchase Price, at the Closing, Sellers hereby agree to sell, assign, transfer, convey and deliver to Purchaser, and Purchaser agrees to purchase, acquire and accept from Sellers, free and clear of any and all Encumbrances, all of Sellers' right, title and interest in and to all of the following assets, properties and rights of Sellers (such assets, properties and rights are hereinafter collectively referred to as the "**Purchased Assets**"), on an "As Is/Where Is" basis, which, for the avoidance of doubt, shall not include any Excluded Assets:

       **(a)** all Intellectual Property and Intellectual Property Rights set forth on **Schedule 2.1** of the Disclosure Schedules, but excluding any potential or actual Claims arising prior to the Closing Date against any member of the Parent Group, any Person operating the Hardware Business, the Machine Shop Assets or the Retained Business, or any Claims arising from the operation of the Hardware Business, the Machine Shop Assets or the Retained Business; and

       **(b)** any other assets set forth on **Schedule 2.1** of the Disclosure Schedules.

       **2.2** <u>Excluded Assets</u>.   Notwithstanding anything to the contrary herein, Sellers shall not cause to be sold, assigned, transferred, conveyed or delivered, to Purchaser, and Purchaser shall not purchase, and the Purchased Assets shall not include, any right, title or interest of Sellers in, any assets, properties or rights that are not specifically identified for inclusion in the Purchased Assets in accordance with <u>Section 2.1</u>, and the Purchased Assets shall exclude, without limitation, all of the following (the "**Excluded Assets**"):

       **(a)** All rights of Sellers under this Agreement and the Ancillary Agreements, and all cash and non-cash consideration payable or deliverable to Sellers pursuant to this Agreement or any other Ancillary Agreement;

       **(b)** All Sellers' Cash and Cash Equivalents;

       **(c)** All corporate records, including without limitation, the organizational documents of Sellers, accounting documents, tax returns, tax files and records, audit materials, legal records, board and member minutes and related correspondence, stock transfer books, blank

stock certificates and other related documents; provided, however, that Purchaser shall be granted reasonable access to, and the right to make copies of, any such documents;

(d)    All human resources material including without limitation employment and compensation records and benefits information;

(e)    All executory contracts and unexpired leases;

(f)    All Claims for avoidance, recovery, subordination or other relief and actions of Sellers, including, without limitation, any claims arising under Sections 544, 545, 547, 548 549, 550 and 551 of the Bankruptcy Code and any applicable state Law, including any and all proceeds thereof;

(g)    All of Sellers' known or unknown Claims, causes of action, choses in action, rights of recovery, and rights of set-off of whatever kind or description against any Person, in each case to the extent related to (i) any Excluded Assets or Excluded Liabilities, and (ii) or arising under chapter 5 of the Bankruptcy Code;

(h)    All rights, Claims and causes of action against any current or former director or officer of any Seller or their respective Affiliates, and all rights, Claims and causes of action under director and officer, fiduciary, employment practices and similar insurance policies maintained by Sellers;

(i)    Any shares of capital stock or other equity interests in Sellers or any other member of the Parent Group, or any securities convertible into, exchangeable or exercisable for shares of capital stock or other equity interests in any of the Sellers or any other member of the Parent Group;

(j)    All Seller Plans and all assets owned or held by any Seller Plans;

(k)    All Accounts Receivable;

(l)    All accounts payable (or other amounts payable) and other intercompany obligations of the members of the Parent Group owed to Sellers;

(m)    Any rights, demands, Claims, credits, allowances, rebates (including any vendor or supplier rebates), reimbursements or rights of setoff (other than against Sellers) to the extent not included in the Purchased Assets;

(n)    The proceeds of the sale of any Excluded Assets;

(o)    All insurance policies and binders;

(p)    Any Tax receivable, Tax refund, credit or prepaid Tax relating to Taxes paid by the Business or imposed on the Purchased Assets;

(q)    All royalties, advances, prepaid assets or deferred charges and expenses (including all lease and rental payments), deposits (including maintenance, customer, and security

and other deposits), in each case, primarily relating to the Business, and which have been prepaid by Sellers as of the Closing;

(r)     All Deal Communications and any attorney-client privilege or expectation of client confidence or any other rights to any evidentiary privilege related thereto;

(s)     Any assets, properties or rights that are (x) predominately used in or predominantly related to the Parent Group's business of designing, developing and manufacturing hardware medical technology and distributing biologics medical technology that have been, or will be, sold to (i) Xtant Medical Holdings, Inc. pursuant to that certain Asset Purchase Agreement, dated as of June 18, 2023, between Holdings, Inc. and Xtant Medical Holdings, Inc., or (ii) the successful bidder at the auction, if any, held for such assets, properties or rights (the "**Hardware Business**", and the acquirer of such Hardware Business, the "**Hardware Business Owner**") or (y) contemplated by that certain Asset Purchase Agreement, dated June 8, 2023, between Surgalign Spine and Prompt Prototypes LLC ("**Prompt Prototypes**", and, such assets, properties or rights contemplated by this clause (y), the "**Machine Shop Assets**");

(t)     All of the outstanding equity securities of the Poland Subsidiary; and

(u)     Sellers' right, title and interest to the other assets, if any, set forth in **Schedule 2.2** of the Disclosure Schedules.

2.3     Assumed and Excluded Liabilities.

(a)     Upon the terms and subject to the conditions of this Agreement, on the Closing Date, Purchaser shall assume and agree to perform and discharge, when due (in accordance with their respective terms and subject to the respective conditions thereof), and Sellers shall irrevocably convey, transfer, assign and deliver to Purchaser, only the following obligations, Claims and Liabilities of Sellers and no others (collectively, the "**Assumed Liabilities**"): Liabilities arising from the ownership of the Purchased Assets on and after the Closing Date (including all Liabilities for Taxes arising from the ownership of the Purchased Assets by Purchaser on and after the Closing).

(b)     Sellers shall retain, and shall be responsible for paying or performing when due, or discharging, and shall pay or perform when due, or discharge, and the Purchaser shall not assume or have any responsibility for, any Liabilities of Sellers or their respective Affiliates not expressly assumed by Purchaser pursuant to **Section 2.3(a)** of this Agreement (the "**Excluded Liabilities**").  The term Excluded Liabilities shall specifically include, without limitation:

(i)     Taxes relating to the Business or imposed on the Purchased Assets which accrued during the Pre-Closing Tax Period;

(ii)     Any and all Liabilities to the extent primarily relating to the Excluded Assets;

(iii)     Any and all Liabilities of Sellers under this Agreement and all legal, accounting, brokerage, investment banking and finder's fees or other fees and expenses incurred

13

by or on behalf of Sellers in connection with this Agreement and the transactions contemplated hereby;

        (iv)    Any and all Liabilities and obligations to current and former employees or contractors of Sellers;

        (v)    Any and all Liabilities and obligations arising out of or relating to any line-of-credit or other payable or debt facility or instrument; and

        (vi)    All Liabilities related to, associated with or arising out of any action, Claim, suit or proceeding to the extent primarily with respect to the operation of the Business or the Sellers' ownership of the Purchased assets prior to the Closing, whether such action, Claim, suit or proceeding is brought prior to, on or after the Closing.

**2.4**    <u>Poland Subsidiary</u>.  Notwithstanding anything to the contrary in this Agreement, none of the Purchased Assets, Excluded Assets, Assumed Liabilities or Excluded Liabilities shall include any assets or Liabilities of the Poland Subsidiary.

**2.5**    <u>Closing</u>.  Upon the terms and subject to the conditions contained in this Agreement, the closing of the sale of the Purchased Assets and the assumption of the Assumed Liabilities contemplated by this Agreement (the "<u>Closing</u>") shall take place remotely via the exchange of electronic documents and signatures by electronic mail at 9:00 a.m. New York Time no later than the second (2nd) Business Day following the date on which the conditions set forth in <u>Article 6</u> have been satisfied or, to the extent permitted by applicable Law, waived by either Purchaser or Sellers, as applicable, in writing (other than conditions which by their nature are to be satisfied at the Closing, but subject to the satisfaction or, to the extent permitted by applicable Law, waiver of such conditions at or prior to the Closing), or at such other place and time as Purchaser and Sellers may mutually agree in writing.  The date on which the Closing actually occurs is herein referred to as the "<u>Closing Date.</u>"

**2.6**    <u>Consideration</u>.  The aggregate consideration to be paid by Purchaser for the Purchased Assets (the "**Purchase Price**") shall be the following:

    **(a)**    A cash amount equal to One Million Five Hundred Thousand Dollars ($1,500,000.00), payable by Purchaser to Sellers at Closing by wire transfer or immediately available funds (the "**Cash Payment**"), which shall include application of the Deposit; and

    **(b)**    the assumption of the Assumed Liabilities.

As of the date hereof, Purchaser shall have deposited into a deposit escrow account with the Escrow Agent in the amount of One Hundred Fifty Thousand Dollars ($150,000.00) (the "**Deposit**") by wire transfer of immediately available funds.  The Deposit shall be disbursed as provided in **Section 7.2(b)**.

**2.7**    <u>Closing Delivery</u>.  Subject to entry of the Sale Approval Order, at the Closing:

**(a)**      Purchaser shall deliver to Sellers (i) the Cash Payment less the Deposit, and a duly executed certificate from an officer of Purchaser to the effect that the conditions set forth in **Section 6.3(a)** and **Section 6.3(b)** have been satisfied;

**(b)**      Sellers shall deliver to Purchaser the Purchased Assets;

**(c)**      Sellers shall deliver to Purchaser an executed Bill of Sale in the form attached as **Exhibit A** hereto;

**(d)**      RESERVED;

**(e)**      Sellers and Purchaser shall execute and deliver a copy of the Intellectual Property Assignment in the form attached as **Exhibit B** hereto;

**(f)**      Sellers shall deliver to Purchaser a duly executed certificate from an officer of each Seller to the effect that the conditions set forth in **Section 6.2(a)** and **Section 6.2(b)** have been satisfied.

**2.8**      <u>Transfer Taxes</u>.  Any sales, use, purchase, transfer, franchise, deed, fixed asset, stamp, documentary stamp, use or other Taxes and recording charges that may be payable by reason of the sale of the Purchased Assets or the assumption of the Assumed Liabilities under this Agreement or the transactions contemplated herein (collectively, "**Transfer Taxes**") shall be borne and paid by Purchaser.

**2.9**      <u>"As Is/Where Is" Transaction</u>.  Purchaser acknowledges and agrees that it has conducted its own independent investigation, review and analysis of the Business, the Purchased Assets and the Assumed Liabilities, and acknowledges that it has been provided adequate access to the personnel, properties, assets, premises, books and records, and other documents and data of Sellers for such purpose.  Purchaser acknowledges and agrees that: (a) in making its decision to enter into this Agreement and to consummate the transactions contemplated hereby, Purchaser has relied, and shall rely, solely upon its own investigation and the express representations and warranties of Sellers set forth in Article 3 of this Agreement (as modified or qualified by the Disclosure Schedules hereto or otherwise as provided herein); and (b) no Seller or any other Person has made any representation or warranty as to any Seller, the Business, the Purchased Assets, the Assumed Liabilities or this Agreement, except as expressly set forth in Article 3 of this Agreement (as modified or qualified by the Disclosure Schedules hereto or otherwise as provided herein). SUCH REPRESENTATIONS AND WARRANTIES MADE BY THE SELLERS IN ARTICLE 3 CONSTITUTE THE SOLE AND EXCLUSIVE REPRESENTATIONS AND WARRANTIES OF SELLERS TO PURCHASER IN CONNECTION WITH THE TRANSACTIONS CONTEMPLATED HEREBY, AND PURCHASER UNDERSTANDS, ACKNOWLEDGES AND AGREES THAT, EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES SET FORTH IN ARTICLE 3 OF THIS AGREEMENT (AS MODIFIED OR QUALIFIED BY THE DISCLOSURE SCHEDULES HERETO OR OTHERWISE AS PROVIDED HEREIN), ALL OTHER REPRESENTATIONS AND WARRANTIES OF ANY KIND OR NATURE EXPRESS OR IMPLIED, WRITTEN OR ORAL (INCLUDING ANY REPRESENTATION OR WARRANTY AS TO THE ACCURACY OR COMPLETENESS OF ANY INFORMATION REGARDING ANY SELLER, ANY AFFILIATES OF ANY SELLER, THE BUSINESS, THE

PURCHASED ASSETS OR THE ASSUMED LIABILITIES FURNISHED OR MADE AVAILABLE TO PURCHASER AND ITS REPRESENTATIVES AND ANY INFORMATION, DOCUMENTS OR MATERIAL MADE AVAILABLE TO PURCHASER, MANAGEMENT PRESENTATIONS OR IN ANY OTHER FORM IN EXPECTATION OF THE TRANSACTIONS CONTEMPLATED HEREBY OR AS TO THE FUTURE REVENUE, PROFITABILITY OR SUCCESS OF THE BUSINESS, OR ANY REPRESENTATION OR WARRANTY ARISING FROM STATUTE OR OTHERWISE IN LAW OR RELATING TO MERCHANTABILITY OR FITNESS FOR USE) ARE SPECIFICALLY DISCLAIMED BY SELLERS. EXCEPT AS SET FORTH IN ARTICLE 3 OF THIS AGREEMENT (AS MODIFIED OR QUALIFIED BY THE DISCLOSURE SCHEDULES HERETO OR OTHERWISE AS PROVIDED HEREIN), PURCHASER ACKNOWLEDGES AND AGREES THAT EACH SELLER IS CONVEYING THE PURCHASED ASSETS WITHOUT REPRESENTATION OR WARRANTY, EITHER EXPRESS OR IMPLIED AT COMMON LAW, BY STATUTE, OR OTHERWISE (ALL OF WHICH SELLERS HEREBY DISCLAIM), RELATING TO (I) TITLE, SUITABILITY OR ADEQUACY (II) THE MERCHANTABILITY, DESIGN, OR QUALITY OF THE BUSINESS OR THE PURCHASED ASSETS, (III) THE FITNESS OF THE PURCHASED ASSETS FOR ANY PARTICULAR PURPOSE OR QUALITY WITH RESPECT TO THE BUSINESS AND ANY OF THE PURCHASED ASSETS OR THE CONDITION OF THE WORKMANSHIP THEREOF OR THE ABSENCE OF ANY DEFECTS THEREIN, WHETHER LATENT OR PATENT, (IV) ANY REAL OR PERSONAL PROPERTY OR ANY FIXTURES, (V) THE ABSENCE OF PATENT, LATENT OR REDHIBITORY VICES OR DEFECTS, (VI) THE ENVIRONMENTAL OR PHYSICAL CONDITION OF THE PURCHASED ASSETS (SURFACE AND SUBSURFACE), (VII) COMPLIANCE WITH APPLICABLE LAWS, (VIII) THE CONTENTS, CHARACTER OR NATURE OF ANY INFORMATION MEMORANDUM OR MANAGEMENT PRESENTATION, (IX) ANY ESTIMATES OF THE VALUE OF THE PURCHASED ASSETS OR FUTURE REVENUES GENERATED BY THE PURCHASED ASSETS, (X) CONTRACTUAL, ECONOMIC, FINANCIAL INFORMATION AND/OR OTHER DATA AND ANY RELATED ESTIMATIONS OR PROJECTIONS MADE IN SALE PRESENTATIONS OR MARKETING MATERIALS, (XI) CONTINUED FINANCIAL VIABILITY, INCLUDING PRESENT OR FUTURE VALUE OR ANTICIPATED INCOME OR PROFITS, (XII) THE CONTENT, CHARACTER OR NATURE OF ANY INFORMATION MEMORANDUM, REPORTS, BROCHURES, CHARTS OR STATEMENTS PREPARED BY THIRD PARTIES, (XIII) ANY OTHER MATERIALS OR INFORMATION THAT MAY HAVE BEEN MADE AVAILABLE OR COMMUNICATED TO PURCHASER OR ITS AFFILIATES, OR ITS OR THEIR EMPLOYEES, AGENTS, CONSULTANTS, REPRESENTATIVES OR ADVISORS IN CONNECTION WITH THE TRANSACTIONS OR ANY DISCUSSION OR PRESENTATION RELATING THERETO, (XIV) ANY IMPLIED OR EXPRESS WARRANTY OF FREEDOM FROM INTELLECTUAL PROPERTY INFRINGEMENT, MISAPPROPRIATION OR OTHER VIOLATION OR (XV) ANY OTHER MATTER WHATSOEVER (INCLUDING THE ACCURACY OR COMPLETENESS OF ANY INFORMATION PROVIDED TO PURCHASER), IT BEING EXPRESSLY UNDERSTOOD AND AGREED BY THE PARTIES THAT PURCHASER WILL BE DEEMED TO BE OBTAINING THE PURCHASED ASSETS IN THEIR PRESENT STATUS, CONDITION AND STATE OF REPAIR, "AS IS" AND WITH ALL FAULTS, AND THAT PURCHASER HAS MADE OR CAUSED TO BE MADE SUCH INSPECTIONS AS PURCHASER DEEMS APPROPRIATE AND PURCHASER

IRREVOCABLY WAIVES ANY AND ALL CLAIMS IT MAY HAVE AGAINST ANY SELLER ASSOCIATED WITH THE SAME. PURCHASER HEREBY ACKNOWLEDGES AND AGREES THAT PURCHASER IS PURCHASING THE PURCHASED ASSETS ON AN "AS IS, WHERE IS", "WHERE IS," AND "WITH ALL FAULTS" BASIS AFTER GIVING EFFECT TO THE TERMS CONTAINED HEREIN BASED SOLELY ON PURCHASER'S OWN INVESTIGATION OF THE PURCHASED ASSETS AND NONE OF THE SELLERS OR ANY OF THEIR RESPECTIVE REPRESENTATIVES HAVE MADE ANY WARRANTIES, REPRESENTATIONS OR GUARANTEES, EXPRESS, IMPLIED OR STATUTORY, WRITTEN OR ORAL, RESPECTING THE PURCHASED ASSETS, ANY PART OF THE PURCHASED ASSETS, THE FINANCIAL PERFORMANCE OF THE PURCHASED ASSETS OR THE BUSINESS, OR THE PHYSICAL CONDITION OF THE PURCHASED ASSETS. PURCHASER FURTHER ACKNOWLEDGES THAT THE CONSIDERATION FOR THE PURCHASED ASSETS SPECIFIED IN THIS AGREEMENT HAS BEEN AGREED UPON BY SELLERS AND PURCHASER AFTER GOOD-FAITH ARMS-LENGTH NEGOTIATION IN LIGHT OF PURCHASER'S AGREEMENT TO PURCHASE THE PURCHASED ASSETS "AS IS" AND "WITH ALL FAULTS."   NOTHWITHSTANDING THE FOREGOING OR ANYTHING ELSE TO THE CONTRARY HEREIN, PURCHASER IS PURCHASING THE PURCHASED ASSETS FREE AND CLEAR OF ALL ENCUMBRANCES AS PROVIDED IN THE SALE APPROVAL ORDER.

3.    **REPRESENTATIONS AND WARRANTIES OF SELLERS**

Each Seller jointly and severally hereby represents and warrants to Purchaser that, subject to entry of the Sale Approval Order and except (i) as set forth in the Disclosure Schedule (with specific reference to the representations and warranties in this <u>Article 3</u> to which the information in such schedule relates; <u>provided</u>, <u>however</u>, that, disclosure in the Disclosure Schedule as to a specific representation or warranty shall qualify any other sections of this Agreement to the extent (notwithstanding the absence of a specific cross reference) it is reasonably apparent that such disclosure relates to such other sections), (ii) as otherwise disclosed or identified in the Parent SEC Documents filed prior to the date hereof, and (iii) such exceptions that result from the filing and commencement of the Bankruptcy Cases, the statements in this **Section 3** are correct and complete as of the date hereof and shall be correct and complete as of the Closing Date.

3.1    <u>Authority</u>.  Each Seller is a corporation duly organized and in good standing under the Laws of the State of Delaware.  Each Seller has all requisite power and authority to execute and deliver this Agreement and the Ancillary Agreements to which it is or shall, pursuant to this Agreement, be a party, and to perform, carry out and consummate the transactions contemplated hereby and thereby.  The execution, delivery and performance of this Agreement and the Ancillary Agreements to which it is or shall, pursuant to this Agreement, be a party have been duly authorized by all necessary action on the part of such Seller.  This Agreement has been duly executed and delivered by each Seller and constitutes the valid and legally binding obligation of each such Seller, enforceable against each such Seller in accordance with its terms and conditions.

3.2    <u>Title</u>.  Each Seller has good and marketable title to, or a valid interest in, each of the Purchased Assets and, upon the Closing will convey and transfer to Purchaser each of the Purchased Assets, and Purchaser shall receive good and marketable title to, or a valid interest in,

17

all of the Purchased Assets free and clear of any Encumbrances, pursuant to sections 105 and 363 of the Bankruptcy Code and any other applicable sections of the Bankruptcy Code and as set forth in the Sale Approval Order.

**3.3**    Brokers.  No Seller has any Liability or obligation to pay any broker, finder or investment banker, any brokerage, finder's or other fee or commission in connection with the origination, negotiation or execution of this Agreement and the Ancillary Agreements or the Transactions based upon arrangements made by or on behalf of such Seller for which Purchaser could become liable or obligated.

**3.4**    Litigation.  Except as set forth in **Schedule 3.4** of the Disclosure Schedules, other than the Bankruptcy Case, as of the date hereof, there is no Claim, action, suit, proceeding, opposition, challenge, cancellation proceeding or investigation (collectively, "**Actions**") pending or, to the Knowledge of Seller, currently threatened against any Seller or the Business that would prohibit any Seller from entering into this Agreement or any Ancillary Agreement, or to consummate the Transactions, or that, to the Knowledge of Seller, could result, either individually or in the aggregate, in any Material Adverse Effect.

**3.5**    Intellectual Property.  Except as otherwise disclosed in **Schedule 3.5** of the Disclosure Schedules, Sellers possess all right, title and interest in and to the Purchased Assets, including all Intellectual Property and all Intellectual Property Rights inherent therein or appurtenant thereto (all of the foregoing, collectively, the "**IP Assets**"), and all IP Assets shall be conveyed and transferred to Purchaser free and clear of all Encumbrances.  To the Knowledge of Seller, none of the Purchased Assets has been subject to any challenge by a third party, including any interference, derivation, reexamination, inter partes review, post grant challenge, cancellation, nullity action, third party observations, or opposition proceeding.  To the Knowledge of Seller, no inventor or other Person has challenged inventorship or ownership of such Purchased Assets.  With respect to fees and documents with final deadlines occurring before the Closing Date, such fees and documents have been paid or filed in connection with the IP Assets that constitute Purchased Assets.  All invention assignments have been properly executed and recorded, or invention assignments are provided for in agreements the respective Seller is a party to, for all patents and patent applications of the Purchased Assets.  Other than as disclosed in Schedule 3.5 of the Disclosure Schedules, to the Knowledge of Seller, (i) the patents included in the Purchased Assets are valid and enforceable, (ii) Sellers have not granted any licenses or sublicenses to the Purchased Assets, and (iii)  Sellers have not received any oral or written threats of alleged infringement of third-party patents or invitations to license third-party patents.

**4.    REPRESENTATIONS AND WARRANTIES OF PURCHASER**

Purchaser hereby represents and warrants to Sellers that the statements in this **Section 4** are correct and complete as of the date hereof and shall be correct and complete as of the Closing Date:

**4.1**    Authority.  Purchaser is a corporation organized and in good standing under the Laws of the State of Delaware.  Purchaser has the right and authority to enter into, execute, deliver and perform this Agreement and the Ancillary Agreements and to carry out the obligations hereunder and thereunder, without the need for any further approval of its officers and directors.  All action on Purchaser's part required for the lawful execution and delivery of this Agreement

18

and the Ancillary Agreements has been taken.  Upon its execution and delivery by Purchaser, this Agreement and the Ancillary Agreements will be valid and legally binding obligations of the Purchaser in accordance with their respective terms.

**4.2**    Compliance with Other Instruments.  The execution, delivery and performance of this Agreement and the Ancillary Agreements, and the consummation of the Transactions will not result in any such violation or default or be in conflict with or constitute, with or without the passage of time and giving of notice, either a default under any provision, instrument, judgment, order, writ, decree or contract applicable to Purchaser or any of its Affiliates, or by which Purchaser or any of its properties or assets are bound or affected, or an event that results in the creation of any lien, charge or encumbrance upon any of Purchaser's material properties or assets.

**4.3**    Brokers.  No broker, finder or investment banker is entitled to any brokerage, finder's or other fee or commission in connection with the origination, negotiation or execution of this Agreement and the Ancillary Agreements or the Transactions based upon arrangements made by or on behalf of Purchaser.

**4.4**    Litigation.  There is no Action pending or, to Purchaser's knowledge, currently threatened in writing against Purchaser that questions the validity of this Agreement or any Ancillary Agreement, or the right of Purchaser to enter into such agreements, or to consummate the Transactions.

**4.5**    Financial Assurance.  The Purchaser has sufficient cash, available lines of credit or other sources of immediately available funds to enable it to make payment of the Purchase Price and perform the Assumed Liabilities as they become due in accordance with their terms.

**4.6**    Good Faith Purchaser.   This Agreement and all Ancillary Agreements were negotiated and entered into at arm's length and, to the Purchaser's knowledge, in good faith, and Sellers and Purchaser did not engage in any collusion with respect to setting or fixing the Purchase Price, and to the knowledge of Purchaser, there are no facts to support a finding that any Seller negotiated and entered into this Agreement and all Ancillary Agreements other than in good faith as described in Section 363(m) of the Bankruptcy Code.

**5.**    **COVENANTS**

**5.1**    Seller Records.   Prior to the Closing Date, Sellers shall, during ordinary business hours and upon the reasonable prior request from Purchaser, afford Purchaser, and its Representatives, reasonable access (at the Purchaser's sole expense) to Sellers' Business, books, records and employees to the extent relating to the Purchased Assets, and shall provide to Purchaser and its representatives such additional financial and operating data and other information as Purchaser shall from time to time reasonably request. Notwithstanding anything to the contrary contained in this Agreement, Sellers may restrict the foregoing access and shall not be required to (I) provide any information or access that Sellers reasonably believe would violate applicable Law, including antitrust Laws and data protection Laws or the terms of any applicable Contract (including confidentiality obligations) or cause forfeiture of any attorney-client privilege or an expectation of client confidence or any other rights to any evidentiary privilege (such limitations, "**Disclosure Limitations**"); provided, further, that Purchaser and Sellers shall

reasonably cooperate in seeking to find a way to allow disclosure of such information to the extent doing so would not (in the good faith belief of Sellers) reasonably be likely to cause such violation to occur or such privilege to be undermined with respect to such information, (II) provide any information relating to the sale process, bids received from other Persons in connection with the Transactions and information and analysis (including financial analysis) relating to such bids or (III) conduct, or permit Purchaser or any of its Representatives to conduct, any Phase I or Phase II environmental site assessment or investigation, or other environmental sampling relating to any Leased Real Property.  Purchaser acknowledges and agrees that, notwithstanding anything to the contrary in this Agreement, all documents, materials, communications, analyses and other information relating to the sale process, bids received from Purchaser and other Persons in connection with the Transactions are in the possession of Sellers as of the date of this Agreement and through the Closing will be transferred to Sellers prior to, or as of, the Closing and no Seller shall be required to grant access to such documents, materials and other information to Purchaser or any of its Affiliates at any time.

      **5.2**    <u>Filings and Authorizations</u>.  Each of the Sellers and Purchaser, as promptly as practicable, (i) shall make, or cause to be made, all such filings and submissions under Laws, rules and regulations applicable to it, as may be required to consummate the transactions contemplated herein, in accordance with the terms of this Agreement, (ii) shall use all commercially reasonable efforts to obtain, or cause to be obtained, all authorizations, approvals, consents and waivers from all Governmental Entities and non-governmental Persons necessary to be obtained by it, in order to consummate the transactions contemplated herein; provided, however, that, any provision hereof to the contrary notwithstanding, Sellers shall have no obligation to pay any fee to any third party (other than any lawful fees assessed by a Governmental Entity) for the purpose of obtaining any Consent or any costs and expenses of any third party resulting from the process of obtaining such Consent, and (iii) shall use commercially reasonable efforts to take, or cause to be taken, all other actions necessary, proper or advisable in order for him, her or it to fulfill his, her or its obligations hereunder.  Sellers and Purchaser shall coordinate and cooperate with one another in exchanging such information and supplying such reasonable assistance as may be reasonably requested by each in connection with the foregoing.

      **5.3**    <u>Further Assurances; Accounts</u>.

      **(a)**    Simultaneous with the Closing, Sellers shall take such steps as may be necessary to put Purchaser in possession and operating control of the Purchased Assets, including but not limited to the transfer of documents, files and records that relate to the investigation, evaluation, preparation, prosecution, maintenance, defense, enforcement, filing, issuance or registration of any of the patents or patent applications that constitute the Purchased Assets as set forth on Schedule 2.1(a) (e.g., word-processor versions of patent application specifications, drawings, invention disclosure records or documents that help to support or establish the dates of conception or reduction to practice of any inventions associated with the Purchased Assets).  At or after the Closing, Sellers shall, at the reasonable request of Purchaser, without further consideration, use their respective commercially reasonable efforts to promptly execute and deliver, or cause to be executed and delivered, to Purchaser such assignments, bills of sale, consents and other instruments in addition to those required by this Agreement, in form and substance reasonably satisfactory to Purchaser and Sellers, and take all such other actions as Purchaser may reasonably deem necessary or desirable to implement any provision of this

Agreement and to more effectively transfer to and vest in Purchaser, ownership in, and to put Purchaser in possession of, all of the Purchased Assets, free and clear of any and all Encumbrances. With respect to the petitions for retroactive filing licenses filed or to be filed in connection with the Purchased Assets set forth on <u>Schedule 5.3(a)</u> of the Disclosure Schedules, Sellers shall (i) use reasonable best efforts to cause the execution of declarations by the individuals set forth on <u>Schedule 5.3(a)(i)</u> of the Disclosure Schedules as promptly as practicable and in any event prior to the Closing and (ii) use reasonable efforts to cause the execution of declarations by the individuals set forth on <u>Schedule 5.3(a)(ii)</u> of the Disclosure Schedules as promptly as practicable (whether prior to, at or after the Closing); provided, that if any such filings or declarations are not made or executed, as applicable, at or prior to the Closing, Sellers shall provide to Purchaser final drafts of the renewed petitions (including any signed supporting declarations) to the dismissal notices at the Closing. To the extent reasonably practicable, Sellers shall incorporate reasonable comments from Purchaser prior to filing the renewed petitions to the extent such filings are made prior to the Closing.  This **Section 5.3(a)** shall survive until and terminate upon the earlier of (i) six (6) months following the Closing and (ii) the closing of the Bankruptcy Case.

(b)      Nothing in this **Section 5.3** shall (i) require Sellers to make any expenditure or incur any obligation on their own or on behalf of Purchaser, (ii) prohibit Sellers from ceasing operations or winding up its affairs following the Closing, or (iii) prohibit Sellers from taking such actions as are necessary to conduct the Auction, as are required by the Bankruptcy Court or as would otherwise be permitted under **Section 5.4**.

5.4      <u>Bankruptcy Covenants</u>.

(a)      <u>Motions, Orders, etc</u>. Sellers and Purchaser each acknowledges that this Agreement and the Transactions are subject to Bankruptcy Court approval. Purchaser acknowledges that to obtain such approval, Sellers must demonstrate that it has taken reasonable steps to obtain the highest and otherwise best offer possible for the Purchased Assets (as further set out in **Section 5.4(e)**). Each Seller shall use its respective commercially reasonable efforts to ensure that the Auction, which will be conducted in accordance with the Bid Procedures and the Bid Procedures Order, shall be held and closed no later than July 27, 2023; provided, that Sellers shall not have to comply with the foregoing if Sellers are not required to hold an Auction pursuant to the Bid Procedures (as approved by the Bid Procedures Order). Provided that Purchaser is selected as the Successful Bidder in respect of the Purchased Assets at the Auction, if any, or if no Competing Bid is submitted with respect to the Purchased Assets, each of the Sellers and Purchaser shall use their respective commercially reasonable efforts to obtain entry by the Bankruptcy Court of the Sale Approval Order no later than August 10, 2023. Purchaser agrees that it will promptly take such actions as are reasonably requested by any Seller to assist in obtaining entry of such Orders, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for the purposes, among others, of demonstrating that Purchaser is a "good faith" purchaser under section 363(m) of the Bankruptcy Code. Sellers shall be responsible for making all appropriate filings relating thereto with the Bankruptcy Court, which filings shall be provided, to the extent practicable, to Purchaser prior to their filing with the Bankruptcy Court for Purchaser's prior review. Each of the Sellers and Purchaser shall consult with one another regarding pleadings which any of them intends to file with the Bankruptcy Court in connection with, or which might reasonably affect the Bankruptcy Court's approval of the Sale Approval Order.  Sellers shall promptly provide Purchaser and its counsel with copies of all notices, filings

and Orders of the Bankruptcy Court that Sellers receive pertaining to the motion for approval of the Sale Approval Order or any other Order related to any of the Transactions, but only to the extent such papers are not publicly available on the Bankruptcy Court's docket or otherwise made available to Purchaser and its counsel.

(b)    Sale Approval Order.   Without limiting the generality of the foregoing **Section 5.4(a)**, the sale approval order substantially in the form attached hereto as **Exhibit C** (the "**Sale Approval Order**"), which shall be filed with the Bankruptcy Court on the timeline set forth in the Bid Procedures Order  and shall include provisions, among other things (i) providing that Purchaser shall not incur any Liability as a successor to the Business, (ii) approving the sale of the Purchased Assets to Purchaser on the terms and conditions set forth in this Agreement and authorizing Sellers to proceed with the Transactions, (iii) stating that any objections filed with respect to the sale of the Purchased Assets, which have not been withdrawn, are overruled or the interests of such objections have been otherwise satisfied or adequately provided for by the Bankruptcy Court, (iv) finding that the Purchase Price represents fair value for the Purchased Assets, (v) finding that the sale is in the best interests of Sellers' estate and creditors, (vi) finding that Purchaser is a good faith purchaser of the Purchased Assets under section 363(m) of the Bankruptcy Code and that the provisions of section 363(n) of the Bankruptcy Code have not been violated, (vii) providing that the sale of the Purchased Assets to Purchaser shall be free and clear of all Encumbrances under section 363 of the Bankruptcy Code and any other applicable sections of the Bankruptcy Code, (viii) providing that the Bankruptcy Court shall retain jurisdiction, among other things, for the purpose of enforcing the provisions of the Sale Approval Order including, without limitation, compelling delivery of the Purchased Assets to Purchaser and protecting Purchaser against any Encumbrances against Sellers or the Purchased Assets, (ix) finding that there are no brokers involved in consummating the sale and no brokers' commissions are due, (x) providing that the parties hereto shall be authorized to close this transaction immediately upon execution of the Sale Approval Order pursuant to Rules 6004(g) and 6006(d) of the Federal Rules of Bankruptcy Procedure, (xi) authorizing and directing Sellers to execute, deliver, perform under, consummate and implement this Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the foregoing and (xii) determining that Purchaser is not a successor to any Seller or otherwise liable for any of the Excluded Liabilities or Excluded Assets and permanently enjoining each and every holder of any of the Excluded Liabilities or Excluded Assets from commencing, continuing or otherwise pursuing or enforcing any remedy, Claim, cause of action or Encumbrance against Purchaser or the Purchased Assets related thereto.  To the extent that there is any inconsistency between this paragraph and the Sale Approval Order, the Sale Approval Order shall govern.

(c)    RESERVED.

(d)    Other Bankruptcy Covenants.  Sellers shall promptly make any filings, take all actions, and use commercially reasonable efforts to obtain any and all other approvals and orders necessary or appropriate for consummation of the sale of the Purchased Assets, subject to its obligations to comply with any order of the Bankruptcy Court.  In the event an appeal is taken, or a stay pending appeal is requested, from any of the foregoing orders of the Bankruptcy Court, Sellers shall immediately notify Purchaser of such appeal or stay request and, upon Purchaser's request, shall provide to Purchaser within one (1) business day after Sellers' receipt thereof a copy of the related notice of appeal or order of stay and each of the Sellers and Purchaser shall use their

22

commercially reasonable efforts to prosecute such appeal, petition or motion and obtain an expedited resolution of any such appeal, petition or motion. Sellers shall also provide Purchaser with written notice of any motion, application, brief or other pleading filed in connection with any appeal from any of such orders.

      **(e)**      <u>Competing Transaction</u>.

      (i)      This Agreement is subject to approval by the Bankruptcy Court and the consideration by Sellers of higher or better competing bids in respect of all or any part of the Purchased Assets (whether in combination with other assets of Sellers, Sellers' Affiliates or otherwise) solely in accordance with the Bid Procedures Order. Purchaser and each Seller acknowledge that Sellers must take reasonable steps to demonstrate that they have sought to obtain the highest or otherwise best price for the Purchased Assets, including giving notice thereof to the creditors of Sellers and other interested parties, providing information about Sellers' business to prospective bidders, entertaining higher and better offers from such prospective bidders, and, if additional qualified prospective bidders desire to bid for the Purchased Assets, conducting an Auction.

      (ii)      The bid procedures to be employed with respect to this Agreement and any Auction shall be those reflected in the Bid Procedures Order. Purchaser agrees to be bound by and accept the terms and conditions of the Bid Procedures Order. Purchaser and Sellers agree that this Agreement and the Transactions are subject to the right of Sellers and their respective Affiliates and Representatives to seek, solicit, invite, encourage, consider, discuss and negotiate higher or better Competing Bids solely in accordance with the Bid Procedures Order. Solely in accordance with the Bid Procedures Order, from the date hereof (and any prior time) and until the Closing, Sellers and their Affiliates are permitted to and are permitted to cause their Representatives and Affiliates to, initiate contact with, solicit or encourage submission of any inquiries, proposals or offers by, any Person (in addition to Purchaser and its Affiliates and Representatives) in connection with a Competing Bid, including, to (and to cause their Representatives and Affiliates to) respond to any inquiries or offers to purchase all or any part of the Purchased Assets (including supplying information relating to the Business and the assets of each Seller to prospective purchasers), and to perform any and all other acts related thereto which are required under the Bankruptcy Code or other applicable Law.

      (iii)      If an Auction is conducted, and Purchaser is not the prevailing bidder at the Auction but is the bidder with the next highest bid after the Successful Bidder at the Auction, Purchaser shall serve as a back-up bidder (the "**Back-up Bidder**") and keep Purchaser's bid to consummate the Transactions on the terms and conditions set forth in this Agreement (as the same may be improved upon in the Auction) open and irrevocable in accordance with the terms and conditions in the Bid Procedures, and Purchaser shall not terminate this Agreement in accordance with **Section 7.1(b)(ii)** or **(iii)**, notwithstanding any right of Purchaser to otherwise terminate this Agreement pursuant to **Section 7.1** hereof, until the earlier of (i) the Outside Date or (ii) the date of the consummation of an Alternative Transaction. Following the Sale Hearing and prior to the Outside Back-up Date, if the Successful Bidder in the Auction fails to consummate an Alternative Transaction as a result of a breach or failure to perform on the part of such Successful Bidder, Purchaser (as the Back-Up Bidder) will be deemed to have the new prevailing bid, and Sellers will be authorized, without further Order of the Bankruptcy Court, to consummate

the Transactions with Purchaser on the terms and subject to the conditions set forth in this Agreement (as the same may be improved upon in the Auction).

5.5    RESERVED.

5.6    Employees. From and after the time the Transactions are announced to the public through the date of the Auction, Purchaser may during ordinary business hours contact and communicate with members of management of Sellers regarding employees of Sellers to the extent such communications would not conflict with any Disclosure Limitations and such contact and communications do not interfere with Sellers' or their Affiliates' operations. Nothing in this Agreement will be deemed to obligate Purchaser to continue any employment, or dictate the terms or conditions of any employment, for any period.

5.7    Wrong Pocket.

(a)    Subject to the terms of this Agreement and the other Ancillary Agreements, during the six (6)-month period following the Closing, if either Purchaser or any Seller becomes aware that any right, property or asset forming part of the Purchased Assets has not been transferred to Purchaser or that any right, property or asset not forming part of the Purchased Assets has been transferred to Purchaser, it shall promptly notify such other party hereto and Purchaser or the applicable Seller, as applicable, shall, as soon as reasonably practicable thereafter, ensure that such right, property or asset (and any related Liability) is transferred at the expense of the party that is seeking the assets to be transferred to it and with any necessary prior Consent, to (i) Purchaser, in the case of any right, property or asset forming part of the Purchased Assets which was not transferred to Purchaser at or in connection with the Closing, or (ii) the applicable Seller, in the case of any right, property or asset not forming part of the Purchased Assets which was transferred to Purchaser at the Closing.

(b)    Each Seller, on the one hand, and Purchaser, on the other hand, each agree that, after the Closing, each will, to the extent permitted by applicable Law, hold in trust for the other's benefit and accounts and will promptly transfer and deliver to the other, from time to time as and when received by such party or its Affiliates, any cash, checks with appropriate endorsements, payment of an account, trade, note receivable or other payment or other property or assets that such party or its Affiliates may receive on or after the Closing which properly belongs to such other party or their respective Affiliates pursuant to the terms of this Agreement. For the avoidance of doubt, except as otherwise provided in this Agreement, following the Closing, (i) if any payments due with respect to the Purchased Assets are paid to any Seller, such Seller shall promptly remit by wire or draft such payment to an account designated in writing by Purchaser and (ii) if any payments due with respect to the Excluded Assets, the Hardware Business, the Machine Shop Assets or the Retained Business are paid to Purchaser or its Affiliates, Purchaser shall transfer, or cause its Affiliates to, promptly remit by wire or draft such payment to an account designated in writing by Sellers.

5.8    RESERVED.

5.9    Use of Certain Marks.

(a)      As promptly as practicable but in no event later than ninety (90) days after the Closing Date, Purchaser shall completely and permanently obliterate or remove all Retained Business Marks from all Purchased Assets.  On and after the Closing Date, except as expressly otherwise set forth in this **Section 5.9**, Purchaser shall not and shall not permit any Affiliate to (i) use any Retained Business Mark or (ii) in any way represent that it is, or otherwise hold itself out as being, affiliated with the Parent Group.

(b)      Purchaser shall not be entitled to use any Retained Business Marks together with the Purchased Assets or any other trademarks, service marks, trade dress or logos on any stationery or advertising or in any other form or documentation.  As soon as practicable after the Closing Date and not later than ninety (90) days thereafter, Purchaser shall take all actions necessary to change any names under which it conducts business to names that do not use any Retained Business Mark or any name confusingly similar to a Retained Business Mark.

(c)      Retained Business Marks are vested in and shall remain vested in Sellers, the applicable member of the Parent Group, the Hardware Business Owner or Prompt Prototypes, as applicable, and, notwithstanding anything to the contrary herein, Purchaser shall not obtain any right, title, or interest in, or to, Retained Business Marks.  Purchaser hereby acknowledges and agrees that neither it nor any of its Affiliates shall acquire any goodwill, rights or benefits arising from any use of Retained Business Marks and that all such goodwill, rights and benefits shall accrue absolutely to Sellers, the applicable member of the Parent Group, the Hardware Business Owner or Prompt Prototypes, as applicable.

6.    **CONDITIONS PRECEDENT TO CLOSING.**

**6.1**      Conditions Precedent to Obligations of the Parties.  The respective obligations of each Seller and Purchaser under this Agreement to consummate the Transactions on the Closing Date shall be subject to the satisfaction, at or prior to the Closing Date, of all of the following conditions, any one or more of which may be waived in a joint writing by Purchaser and Sellers to the extent permitted by applicable Law:

(a)      No Legal Prohibition.  No Action shall have been instituted and no Order shall have been issued and be in effect, in each case, by any Governmental Entity of competent jurisdiction, and no statute, rule or regulation shall have been enacted or promulgated by any Governmental Entity and be in effect, which in each case restrains or prohibits the consummation of the Transactions contemplated hereby (any such Action, Order, statute, rule or regulation, a "**Legal Restraint**").

(b)      Entry of Order; Appeal.  The Bankruptcy Court shall have entered the Sale Approval Order in accordance with **Section 5.4(b)** (subject to any modifications or amendments that have been made with the written consent of Sellers and Purchaser (which consent shall not be unreasonably withheld, conditioned or delayed), and the Sale Approval Order shall not have been stayed.

**6.2**      Conditions Precedent to Obligations of Purchaser.  The obligation of Purchaser under this Agreement to consummate the Transactions on the Closing Date shall be subject to the

satisfaction, at or prior to the Closing Date, of all of the following conditions, any one or more of which may be waived by Purchaser to the extent permitted by applicable Law:

   **(a)** <u>Representations and Warranties Accurate</u>. The representations and warranties of Sellers set forth in Article 3 (without giving effect to any materiality or Material Adverse Effect qualifications set forth therein) shall be true and correct as of the date of this Agreement and as of the Closing Date as though made at and as of such time (except for those representations and warranties which address matters only as of a specific date in which case such representation or warranty shall have been true and correct as of such date), except for such failures to be true and correct as has not resulted in and would not reasonably be expected to result in a Material Adverse Effect.

   **(b)** <u>Performance by Sellers</u>. Each Seller shall have performed and complied in all material respects with all covenants and agreements required to be performed or complied with by such Person hereunder on or prior to the Closing Date.

   **(c)** <u>Deliverables</u>. Sellers shall have delivered to Purchaser each of the agreements, documents, certificates and other items required to be delivered to Purchaser pursuant to **Section 2.7** of this Agreement.

   **6.3** <u>Conditions Precedent to Obligations of Sellers</u>. The obligations of Sellers under this Agreement to consummate the Transactions on the Closing Date shall be subject to the satisfaction, at or prior to the Closing Date, of all of the following conditions, any one or more of which may be waived by Sellers to the extent permitted by applicable Law:

   **(a)** <u>Representations and Warranties Accurate</u>. The representations and warranties of Purchaser set forth in <u>Article 4</u> (without giving effect to any materiality qualifications set forth therein) shall be true and correct in all material respects as of the date of this Agreement and as of the Closing Date as though made at and as of such time (except for those representations and warranties which address matters only as of a specific date in which case such representation or warranty shall have been true and correct as of such date).

   **(b)** <u>Performance by Purchaser</u>. Purchaser shall have performed and complied in all material respects with all covenants and agreements required to be performed or complied with by such Person hereunder on or prior to the Closing Date.

   **(c)** <u>Deliverables</u>. Purchaser shall have delivered to Sellers each of the agreements, documents and other items required to be delivered to Sellers pursuant to **Section 2.7** of this Agreement.

**7.** **MISCELLANEOUS**

   **7.1** <u>Termination</u>. This Agreement may be terminated, and the transactions contemplated herein may be abandoned:

   **(a)** any time before the Closing, by mutual written agreement of any or all of the Sellers and Purchaser; or

**(b)** any time before the Closing, by any or all of the Sellers, on the one hand, or Purchaser, upon written notice, subject to **Section 5.4**, if:

(i) a Legal Restraint is in effect that has become final and nonappealable; <u>provided</u>, that neither Sellers nor Purchaser may terminate this Agreement pursuant to this **Section 7.1(b)(i)** unless each Seller, on the one hand, or Purchaser, on the other hand, as applicable, has complied in all material respects with its obligations under **Section 5.2**;

(ii) Sellers enter into a definitive agreement with respect to an Alternative Transaction or the Bankruptcy Court approves an Alternative Transaction, each solely in accordance with the Bid Procedures Order; <u>provided</u>, <u>however</u>, that if Purchaser is the Back-Up Bidder at an Auction, then Purchaser may not terminate this Agreement or withdraw its irrevocable offer unless and until the earlier of (x) the Outside Date, and (y) the date such Alternative Transaction has closed;

(iii) the Closing shall not have occurred on or before August 31, 2023 (the "**Outside Date**"); provided, that the right to terminate this Agreement under this **Section 7.1(b)(iii)** shall not be available to any party hereto if such party or its Affiliates is then in material breach of this Agreement that proximately caused the failure of the Closing to occur prior to such date; provided, further, that the right to terminate this Agreement pursuant to this **Section 7.1(b)(iii)** shall not be available to Sellers or Purchaser, as applicable, if the other party hereto or its Affiliates have initiated proceedings prior to the Outside Date to specifically enforce this Agreement which such proceedings are still pending;

(iv) (x) the Bankruptcy Cases are, without Sellers' consent, converted into cases under Chapter 7 of the Bankruptcy Code or dismissed, or (y) without Sellers' consent, a trustee under the Bankruptcy Code is appointed in the Bankruptcy Cases; or

(v) the Sale Approval Order is not entered by the Outside Date in substantially the form attached hereto as **Exhibit C** in accordance with **Section 5.4(b)** (subject to any modifications or amendments that have been made with the written consent of Sellers and Purchaser (which consent shall not be unreasonably withheld, conditioned or delayed).

**(c)** any time before the Closing, by any or all of the Sellers upon written notice if:

(i) any of the representations and warranties of Purchaser contained in Article 4 shall be inaccurate or shall have become inaccurate, and the condition set forth in **Section 6.3(a)** would not then be satisfied; provided, that at the time of such termination Sellers are not in material breach of any of their respective representations, warranties, covenants or agreements contained herein;

(ii) Purchaser shall have failed to perform or comply with any of the covenants or agreements contained in this Agreement to be performed and complied with by Purchaser and the condition set forth in **Section 6.3(b)** would not then be satisfied; provided, that at the time of such termination Sellers are not in material breach of any of its representations, warranties, covenants or agreements contained herein;

(iii) (A) all of the conditions set forth in **Section 6.1** and **Section 6.2** have been satisfied, or waived by Purchaser (other than (x) those conditions that by their terms cannot be satisfied until the Closing, but which conditions are, at the time the notice of termination is delivered by any or all of the Sellers to Purchaser, capable of being satisfied if the Closing were to occur at such time and (y) those conditions which have not been satisfied, in whole or in part, as a result of a breach of this Agreement by Purchaser), (B) any or all of the Sellers has confirmed in writing to Purchaser that all of the conditions set forth in **Sections 6.1** and **Section 6.3** have been satisfied, or waived by Sellers (other than (x) those conditions that by their terms cannot be satisfied until the Closing, but which conditions are, at the time the notice of termination is delivered by any or all of the Sellers to Purchaser, capable of being satisfied if the Closing were to occur at such time and (y) those conditions which have not been satisfied, in whole or in part, as a result of a breach of this Agreement by Purchaser), (C) any or all of the Sellers has confirmed in writing to Purchaser that Sellers are ready, willing and able to effect the Closing and (D) Purchaser does not consummate the Closing within two (2) Business Days following the receipt by Purchaser of such notice; or

(iv) Any Seller or the board of directors of any Seller determines in good faith that proceeding with the Transactions or failing to terminate this Agreement would be inconsistent with its fiduciary duties;

provided, however, for purposes of clauses (i) and (ii) of this **Section 7.1(c)** if an inaccuracy in any of the representations and warranties of Purchaser or a failure to perform or comply with a covenant or agreement by Purchaser is curable by Purchaser, then any or all of the Sellers may not terminate this Agreement under this **Section 7.1(c)** on account of such inaccuracy or failure (x) prior to delivery of written notice by any or all of the Sellers to Purchaser or during the period commencing on the date such written notice is delivered and ending on the earlier of (A) the Outside Date and (B) the day that is thirty (30) days following delivery of such notice (the "**Purchaser Cure Period**") or (y) following such Purchaser Cure Period, if such inaccuracy or failure shall have been fully cured during such Purchaser Cure Period;

(d) any time before the Closing, by Purchaser upon written notice if:

(i) any of the representations and warranties of Sellers contained in Article 3 shall be inaccurate as of the date of this Agreement, or shall have become inaccurate as of a date subsequent to the date of this Agreement (as if made on and as of such subsequent date), and the condition set forth in **Section 6.2(a)** would not then be satisfied; provided, that at the time of such termination Purchaser is not in material breach of any of its representations, warranties, covenants or agreements contained herein; or

(ii) Sellers shall have failed to perform or comply with any of the covenants or agreements contained in this Agreement to be performed and complied with by Sellers and the condition set forth in **Section 6.2(b)** would not then be satisfied; provided, that at the time of such termination Purchaser is not in material breach of any of its representations, warranties, covenants or agreements contained herein; provided, however, that if an inaccuracy in any of the representations and warranties of Sellers or a failure to perform or comply with a covenant or agreement by Sellers is curable by Sellers, then Purchaser may not terminate this Agreement under this **Section 7.1(d)** on account of such inaccuracy or failure (x) prior to delivery

28

of such written notice to Sellers or during the period commencing on the date such written notice is delivered and ending on the earlier of (A) the Outside Date and (B) the day that is thirty (30) days following delivery of such notice (the "**Seller Cure Period**") or (y) following such Seller Cure Period, if such inaccuracy or failure shall have been fully cured during such Seller Cure Period.

      **7.2**    Effect of Termination.

      **(a)**    If this Agreement is validly terminated pursuant to **Section 7.1**, this Agreement will forthwith become null and void, and there will be no Liability or obligation on the part of any party (or any of their respective officers, directors, employees, partners, agents or other representatives or Affiliates); provided, however, that (a) neither any Seller nor Purchaser shall be relieved of or released from any Liability for any failure to consummate the Transactions when required pursuant to this Agreement or arising from any intentional breach by such party of any provision of this Agreement and (b) this **Article 7** (other than **Section 7.1**) and the Confidentiality Agreement shall remain in full force and effect and survive any termination of this Agreement.

      **(b)**    Notwithstanding the provisions of **Section 7.2(a)**, above, Holdings shall give written notice to the Escrow Agent to release the Deposit to Sellers upon the earliest to occur of (i) the Closing, or (ii) two (2) Business Days following the termination of this Agreement by (A) any or all of the Sellers pursuant to **Section 7.1(c)** (other than clause (iv) thereof) or (B) Purchaser or any or all of the Sellers for any reason at a time when any or all of the Sellers could have terminated this Agreement pursuant to **Section 7.1(c)** (other than clause (iv) thereof) (any such termination described in the foregoing clause (ii)(A) or (ii)(B), a "**Purchaser Default Termination**"). If this Agreement or the Transactions are terminated other than for a termination which constitutes a Purchaser Default Termination, Holdings shall provide written instructions to the Escrow Agent to, within two (2) Business Days after such instruction, return to Purchaser the Deposit by wire transfer of immediately available funds.

      **(c)**    Each of the parties hereto acknowledges that the Deposit is not intended to be a penalty but rather is liquidated damages in a reasonable amount that will compensate Purchaser in the circumstances in which the Deposit is retained by Sellers as the result of a Purchaser Default Termination, for the efforts and resources expended and opportunities foregone while negotiating this Agreement and in reliance on this Agreement and on the expectation of the consummation of the Transactions, which amount would otherwise be impossible to calculate with precision.

      **7.3**    Expenses. Except as otherwise set forth herein, each party hereto shall pay its own expenses incurred in connection with this Agreement and the transactions contemplated hereby.

      **7.4**    Compliance with Laws. Notwithstanding anything contained in this Agreement to the contrary, the obligations of the parties shall be subject to all Laws, present and future, of any government having jurisdiction over the parties and this transaction, and to orders, regulations, directions or requests of any such government.

      **7.5**    RESERVED.

**7.6**     Governing Law; Jurisdiction; WAIVER OF JURY TRIAL.

    **(a)**     All disputes arising out of or related to this Agreement, including, without limitation, any dispute relating to the interpretation, meaning or effect of any provision hereof, will be resolved in the Bankruptcy Court and the parties hereto will each submit to the exclusive jurisdiction of the Bankruptcy Court for the purposes of adjudicating any such dispute, to the extent the jurisdiction of the Bankruptcy Court is applicable. If the jurisdiction of the Bankruptcy Court is not applicable, any legal action, suit or proceeding arising out of or relating to this Agreement, each and every agreement and instrument contemplated hereby or the transactions contemplated hereby and thereby shall be instituted in any Federal court of the District of Delaware. This Agreement shall be governed by and construed in accordance with the internal Laws of the State of Delaware (i.e., without regard to its conflicts of law rules).

    **(b)**     EACH OF THE PARTIES HERETO IRREVOCABLY WAIVES TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW ANY AND ALL RIGHT SUCH PARTY MAY HAVE TO TRIAL BY JURY IN ANY ACTION, CLAIM, SUIT OR PROCEEDING (WHETHER BASED IN CONTRACT, TORT OR OTHERWISE) BETWEEN THE PARTIES HERETO ARISING OUT OF, BASED UPON OR RELATING TO THIS AGREEMENT OR THE NEGOTIATION, EXECUTION OR PERFORMANCE HEREOF.

    **7.7**     Entire Agreement; Interpretation. The terms and conditions of this Agreement, including its exhibits and the Ancillary Agreements and the Confidentiality Agreement, constitute the entire agreement between the parties with respect to the subject matter hereof, and merge and supersede all prior and contemporaneous agreements, understandings, negotiations and discussions. Neither of the parties shall be bound by any conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof other than as expressly provided herein. The section headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement. No oral explanation or oral information by either party hereto shall alter the meaning or interpretation of this Agreement. The terms "includes" and "including" are not limiting. These terms and conditions will prevail notwithstanding any different, conflicting or additional terms and conditions which may appear on any purchase order, acknowledgment or other writing not expressly incorporated into this Agreement. Unless a contrary intention appears, (i) the words "herein", "hereof" and "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular Article, Section or other subdivision, and to any certificates delivered pursuant hereto; and (ii) reference to any Article or Section means such Article or Section hereof unless otherwise indicated. Any accounting terms used in this Agreement shall, unless otherwise defined in this Agreement, have the meaning ascribed thereto by GAAP or IFRS, as applicable. The meaning of defined terms shall be equally applicable to the singular and plural forms of the defined terms, and the masculine gender shall include the feminine and neuter genders, and vice versa, as the context shall require. Any reference to any federal, state, provincial, territorial, local or foreign statute or Law shall be deemed also to refer to all rules and regulations promulgated thereunder, unless the context requires otherwise. When calculating the period of time before which, within which or following which any act is to be done or step taken pursuant to this Agreement, the date that is the reference date in calculating such period will be excluded. If the last day of such period is a day other than a Business Day, the period in question will end on the next succeeding Business Day. Any reference to "days" means calendar days unless Business

Days are expressly specified. The word "will" shall be construed to have the same meaning and effect as the word "shall." The phrases "delivered" or "made available", when used in this Agreement, means that the information referred to has been physically or electronically delivered to the relevant parties (including, in the case of "made available" to Purchaser, material that has been posted, retained and thereby made available to Purchaser through the on-line "data room" (virtual or otherwise) established by Sellers and/or their Affiliates or Representatives). The word "or" shall be non-exclusive.

       **7.8**    <u>Notices</u>: All notices required or permitted to be given hereunder shall be in writing, shall make reference to this Agreement, and shall be delivered by hand, email, or dispatched by prepaid air courier or by registered or certified airmail, postage prepaid, addressed as follows:

| <u>If to Purchaser</u> | <u>If to Sellers</u> |
|---|---|
| Augmedics, Inc.<br>21 S. Evergreen Ave., Suite 230<br>Arlington Heights, IL 60005<br>Attn: Raj Asarpota<br>Email: raj.asarpota@augmedics.com | c/o Surgalign Holdings, Inc.<br>520 Lake Cook Road, Suite 315<br>Deerfield, Illinois 60015<br>Attn: Paolo Amoruso<br>Email: pamoruso@surgalign.com |
| with a copy to: | with a copy to: |
| Gunderson Dettmer Stough Villeneuve<br>Franklin & Hachigian, LLP<br>3570 Carmel Mountain Road, Suite 200<br>San Diego, CA 91230<br>Attn: Ilan Lovinsky<br>Email: ilovinsky@gunder.com | White & Case LLP<br>111 South Wacker Drive, Suite 5100<br>Chicago, IL 60606<br>Attention: Gregory F. Pesce<br>Email: gregory.pesce@whitecase.com |
| and | and |
| Law Office of Nathan A. Schultz, P.C.<br>10621 Craig Road<br>Traverse City, MI 49686<br>Attn: Nathan A. Schultz<br>Email: nschultzesq@gmail.com | White & Case LLP<br>1221 Avenue of the Americas<br>New York, NY 10020<br>Attention: Adam Cieply<br>Email: adam.cieply@whitecase.com |

Such notices shall be deemed served when received by addressee or, if delivery is not accomplished by reason of some fault of the addressee, when tendered for delivery. Either party may give written notice of a change of address and, after notice of such change has been received, any notice or request shall thereafter be given to such party at such changed address.

       **7.9**    <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which when executed shall be deemed to be an original but all of which taken together shall constitute one and the same agreement.

**7.10**   No Ongoing Obligations.  Purchaser shall not have any obligations solely by virtue of the provisions of this Agreement to support, maintain or otherwise continue the business operations of Sellers or to otherwise market, promote or develop the Purchased Assets after the Closing Date.

**7.11**   Survival of Representations and Warranties.  None of the representations and warranties of Sellers in this Agreement, in any instrument delivered pursuant to this Agreement, or in the Schedules or Exhibits attached hereto shall survive the Closing, and Purchaser shall not, and shall not be entitled to, make any Claim or initiate any action against any Seller, its Affiliates or their respective Representatives with respect to any such representation or warranty from or after the Closing.  None of the covenants or agreements of the parties in this Agreement shall survive the Closing, and no party hereto shall, or shall be entitled to, make any Claim or initiate any action against any other party with respect to any such covenant or agreement from or after the Closing, other than (a) the covenants and agreements of the parties contained in this Article VII, and Article II and (b) those other covenants and agreements contained herein that by their terms apply, or that are to be performed in whole or in part, after the Closing, which shall survive the consummation of the Transactions until fully performed in accordance with its terms.

**7.12**   Amendment.  This Agreement may not be amended or modified except by an instrument in writing signed by, or on behalf of, each Seller and Purchaser.

**7.13**   No Agency.  The parties hereto are independent contractors.  Except as may be provided in this Agreement, neither party has any express or implied right or authority to assume or create any obligations on behalf of the other or to bind the other to any contract, agreement or undertaking with any third party.  Nothing in this Agreement shall be construed to create a partnership, joint venture, employment or agency relationship between any Seller and Purchaser.

**7.14**   Specific Performance.  Notwithstanding anything to the contrary contained herein (other than **Section 7.2(b)** hereof), each party hereto acknowledges that money damages would be incalculable and an insufficient remedy for any breach of this Agreement by such party and that any such breach would cause the other party hereto irreparable harm.  Accordingly, each party hereto also agrees that, in the event of any breach or threatened breach of the provisions of this Agreement by such party, the other party hereto shall (except to the extent **Section 7.2(b)** is applicable) be entitled to equitable relief without the requirement of posting a bond or other security, including in the form of injunctions and orders for specific performance.

**7.15**   Severability.  Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall not invalidate the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction, and any such provision, to the extent invalid or unenforceable, shall be replaced by a valid and enforceable provision which comes closest to the intention of the parties underlying such invalid or unenforceable provision.

**7.16**   Waivers.  Waiver by any party of any breach of or failure to comply with any provision of this Agreement by the other party shall not be construed as, or constitute, a continuing waiver of such provision, or a waiver of any other breach of, or failure to comply with, any other provision of this Agreement.  No waiver of any such breach or failure or of any term or condition

of this Agreement shall be effective unless in a written notice signed by the waiving party and delivered, in the manner required for notices generally, to each affected party.

        **7.17**   <u>Binding Effect; Third Party Beneficiaries; Assignment</u>.  This Agreement shall be binding upon, inure to the benefit of, and be enforceable by, the parties hereto and their respective successors and permitted assigns, including, in the case of Sellers, the trustee in the Bankruptcy Cases, if applicable.  Except as expressly set forth herein, nothing expressed or referred to in this Agreement is intended or shall be construed to give any Person other than the parties to this Agreement, or their respective legal representatives, successors and permitted assigns, any legal or equitable right, remedy or claim under or in respect of this Agreement or any provision contained herein.  Neither party may assign this Agreement nor any of its rights hereunder, other than any right to payment of a liquidated sum, nor delegate any of its obligations hereunder, without the prior written consent of the other, provided, that Purchaser may assign its rights under this Agreement to any Affiliate (so long as (a) such Affiliate is designated in writing by Purchaser to Sellers prior to the Closing, (b) Purchaser shall continue to remain obligated in full hereunder and (c) any such assignment would not reasonably be expected to impede or delay the Closing) or to any Person providing financing for the transaction; <u>provided</u>, <u>further</u>, that each Seller may assign some or all of its rights or delegate some or all of their obligations hereunder to successor entities pursuant to a chapter 11 plan confirmed or a liquidation approved by the Bankruptcy Court.

        **7.18**   <u>Non-Recourse; Release.</u>

        **(a)**   Except to the extent otherwise set forth in the Confidentiality Agreement, all Claims, obligations, Liabilities, or causes of action (whether in contract or in tort, in law or in equity, or granted by statute) that may be based upon, in respect of, arise under, out or by reason of, be connected with, or relate in any manner to this Agreement or the Ancillary Agreements, or the negotiation, execution, or performance of this Agreement and the Ancillary Agreements (including any representation or warranty made in, in connection with, or as an inducement to, this Agreement), may be made only against the parties hereto.  No Person who is not a party hereto, including any past, present or future director, officer, employee, incorporator, member, partner, manager, stockholder, Affiliate, agent, attorney, representative or assignee of, and any financial advisor or lender to, any party hereto, or any past, present or future director, officer, employee, incorporator, member, partner, manager, stockholder, Affiliate, agent, attorney, representative or assignee of, and any financial advisor or lender to, any of the foregoing (collectively, the "**Nonparty Affiliates**"), shall have any Liability (whether in contract or in tort, in law or in equity, or granted by statute) for any Liabilities or causes of action arising under, out of, in connection with, or related in any manner to this Agreement or the Ancillary Agreements or based on, in respect of, or by reason of this Agreement or the Ancillary Agreements or their negotiation, execution, performance, or breach (other than as set forth in the Confidentiality Agreement), and, to the maximum extent permitted by Law, each party hereto hereby waives and releases all such Liabilities and causes of action against any such Nonparty Affiliates (except pursuant to this Agreement or the Ancillary Agreements). Without limiting the foregoing, to the maximum extent permitted by Law, except to the extent otherwise set forth in the Confidentiality Agreement, each party hereto disclaims any reliance upon any Nonparty Affiliate with respect to the performance of this Agreement or the Ancillary Agreements or any representation or warranty made in, in connection with, or as an inducement to this Agreement.

(b)      Without limiting the foregoing, effective as of the Closing Date, Purchaser, on behalf of itself and its respective officers, directors, equityholders, Subsidiaries and Affiliates, and each of their respective successors and assigns ("**Purchaser Releasor**"), hereby releases, acquits and forever discharges, to the fullest extent permitted by Law, each Seller, each of other the members of the Parent Group, and each of their respective past, present or future officers, managers, directors, equityholders, partners, members, Affiliates, employees, counsel and agents (each, a "**Purchaser Releasee**") of, from and against any and all Liabilities, actions, causes of action, Claims, demands, damages, judgments, debts, dues and suits of every kind, nature and description whatsoever, which such Purchaser Releasor or its successors or assigns ever had, now has or may have on or by reason of any matter, cause or thing whatsoever arising on or prior to the Closing Date, in each case in respect of any cause, matter or thing relating to the Purchased Assets or any action taken or failed to be taken by any Purchaser Releasee in any capacity related to any Seller or the Purchased Assets occurring or arising on or prior to the Closing Date (a "**Purchaser Released Claim**"); for the avoidance of doubt, such Purchaser Released Claims do not include any Liabilities, actions, causes of action, Claims, demands, damages, judgments, debts, dues and suits that relate to events, circumstances or actions that first occur following the Closing Date. Each Purchaser Releasor agrees not to, and agrees to cause its respective officers, directors, equityholders, Subsidiaries and Affiliates, and each of their respective successors and assigns not to, assert any Purchaser Released Claim against the Purchaser Releasees.  Notwithstanding the foregoing, each Purchaser Releasor and its respective officers, directors, equityholders, Subsidiaries and Affiliates, and each of their respective successors and assigns retain, and do not release, their rights and interests under the terms and conditions of this Agreement, the Confidentiality Agreement and the Ancillary Agreements.

(c)      Without limiting the foregoing, effective as of the Closing Date, each Seller, on behalf of itself and its respective officers, directors, equityholders, Subsidiaries and Affiliates, and each of their respective successors and assigns ("**Seller Releasor**"), hereby releases, acquits and forever discharges, to the fullest extent permitted by Law, Purchaser, and each of its respective past, present or future officers, managers, directors, equityholders, partners, members, Affiliates, employees, counsel and agents (each, a "**Seller Releasee**") of, from and against any and all Liabilities, actions, causes of action, Claims, demands, damages, judgments, debts, dues and suits of every kind, nature and description whatsoever, which such Seller Releasor or its successors or assigns ever had, now has or may have on or by reason of any matter, cause or thing whatsoever to the Closing Date, in each case in respect of any cause, matter or thing relating to the Purchased Assets or any action taken or failed to be taken by any Seller Releasee in any capacity related to Purchaser or the Purchased Assets occurring or arising on or prior to the Closing Date (a "**Seller Released Claim**").  Each Seller Releasor agrees not to, and agrees to cause its respective officers, directors, equityholders, Subsidiaries and Affiliates, and each of their respective successors and assigns not to, assert any Seller Released Claim against the Seller Releasees.  Notwithstanding the foregoing, each Seller Releasor and its respective officers, directors, equityholders, Subsidiaries and Affiliates, and each of their respective successors and assigns retain, and do not release, their rights and interests under the terms and conditions of this Agreement, the Confidentiality Agreement and the Ancillary Agreements.

**7.19**   <u>Bulk Sales or Transfer Laws</u>.  Each of Purchaser and each Seller hereby waives compliance by Sellers with the provisions of the bulk sales or transfer Laws of all applicable jurisdictions.

**7.20**   <u>Disclosure Schedule</u>.   It is expressly understood and agreed that (a) the disclosure of any fact or item in any section of the Disclosure Schedule shall be deemed disclosure with respect to any other Section or subsection of this Agreement or the Disclosure Schedule, without the need for repetition or cross reference, (b) the disclosure of any matter or item in the Disclosure Schedule shall not be deemed to constitute an acknowledgement that such matter or item is required to be disclosed therein, or otherwise imply, that any such matter is material or creates a measure for materiality for purposes of this Agreement, and (c) the mere inclusion of an item in the Disclosure Schedule as an exception to a representation or warranty shall not be deemed an admission that such item represents a material exception or material fact, event or circumstance or that such item has resulted in and would reasonably be expected to result in a Material Adverse Effect.

**7.21**   <u>RESERVED</u>.

**7.22**   <u>Purchase Price Allocation</u>. Purchaser will prepare and deliver to Sellers within ninety (90) days after the Closing Date, a proposed schedule allocating the Purchase Price (plus any liabilities deemed assumed, and any other amounts treated as consideration for U.S. federal income Tax purposes) for the Purchased Assets among the Purchased Assets, in accordance with the principles of Section 1060 of the Code (and the Treasury Regulations promulgated thereunder and any similar provision of state, local, or foreign Law, as appropriate) (such allocation, the "**Purchase Price Allocation**"). Purchaser shall accept in any reasonable comments to the Purchase Price Allocation from Sellers. Such proposed Purchase Price Allocation, as revised to reflect any reasonable comments from Sellers incorporated by Purchaser, shall become final and binding on Purchaser and Sellers within thirty (30) days of receipt by Sellers. Neither Purchaser nor any Seller will take or cause to be taken any position or other action inconsistent with the final Purchase Price Allocation determined under this Agreement on any Tax return or for any Tax reporting purpose, upon the examination of any Tax return, in any refund claim, or in any audit, litigation, investigation, or otherwise, unless otherwise required to do so pursuant to applicable Law.

IN WITNESS WHEREOF, the parties have executed this Stock and Asset Purchase Agreement as of the date first written above:

**SELLERS:**                                                    **PURCHASER:**

**SURGALIGN SPINE TECHNOLOGIES, INC.**           **AUGMEDICS, INC.**

By: _____           By: _____

Name:  David Lyle                                Name:  Kevin Hykes

Title:   Chief Financial Officer                 Title:   Chief Executive Officer


**HOLO SURGICAL, INC.**

_____

Name: David Lyle

Title:  Chief Financial Officer


**HOLOSURGICAL TECHNOLOGY INC.**

_____

Name:  David Lyle

Title:   Chief Financial Officer


Solely with respect to provisions applicable to the Deposit and the Escrow Agreement:


**SURGALIGN HOLDINGS, INC.**

_____

Name:  David Lyle

Title:   Chief Financial Officer

IN WITNESS WHEREOF, the parties have executed this Stock and Asset Purchase Agreement as of the date first written above:

**SELLERS:**                                      **PURCHASER:**

**SURGALIGN SPINE TECHNOLOGIES, INC.**           **AUGMEDICS, INC.**

By: _____                    By: _____
                                                      *Kevin Hykes*
Name: _____                    Name:  Kevin Hykes

Title: _____                   Title:   Chief Executive Officer

**HOLO SURGICAL, INC.**

_____

Name: _____

Title: _____

**HOLOSURGICAL TECHNOLOGY INC.**

_____

Name: _____

Title: _____

Solely with respect to provisions applicable to the Deposit and the Escrow Agreement:

**SURGALIGN HOLDINGS, INC.**

_____

Name: _____

Title: _____

## **<u>EXHIBIT A</u>**

Bill of Sale

See attached.

Final Form

## BILL OF SALE

Bill of Sale (the "**Bill of Sale**") dated [●], 2023, from Surgalign Spine Technologies, Inc., a Delaware corporation, Holo Surgical Inc., a Delaware corporation and HoloSurgical Technology Inc., a Delaware corporation, (each, a "**Seller**" and together, the "**Sellers**") and Augmedics, Inc. a Delaware corporation (the "**Purchaser**"). Capitalized terms used in this Bill of Sale and not otherwise defined herein have the meanings specified in the Purchase Agreement (as defined below).

**WHEREAS**, Sellers and Purchaser are parties to that certain Asset Purchase Agreement dated August 9, 2023 (as may be amended, supplemented, or otherwise modified in accordance with its terms, the "**Purchase Agreement**");

**WHEREAS**, pursuant to the Purchase Agreement, Sellers have agreed to sell, or cause to be sold, and Purchaser has agreed to purchase the Purchased Assets; and

**WHEREAS**, in order to give effect to certain of the transactions contemplated by the Purchase Agreement, Sellers hereby deliver this Bill of Sale to Purchaser with respect to the sale of all of the Purchased Assets.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements contained in this Bill of Sale and the Purchase Agreement and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

Section 1        **Purchase and Sale of Purchased Assets**.

In consideration of the Purchase Price payable by Purchaser to Sellers for the Purchased Assets, pursuant to sections 105 and 363 of the Bankruptcy Code and on the terms and subject to the conditions contained in the Purchase Agreement, together with any Bankruptcy Court approval that may be required, Sellers hereby sell, assign, transfer, convey and deliver to Purchaser all of Sellers' right, title and interest in and to the tangible personal property included in the Purchased Assets free and clear of any and all Encumbrances and Purchaser hereby purchases, acquires and accepts the sale, assignment, transfer, conveyance and delivery of all of Sellers' right, title and interest in and to the tangible personal property included in the Purchased Assets free and clear of any and all Encumbrances, the whole in accordance with the Purchase Agreement.

Section 2        **Subject to Purchase Agreement; Further Assurances**.

This Bill of Sale is expressly made subject to the terms of the Purchase Agreement. The delivery of this Bill of Sale shall not amend, affect, enlarge, diminish, supersede, modify, replace, rescind, waive or otherwise impair any of the representations, warranties, covenants, terms or provisions of the Purchase Agreement or any of the rights, remedies or obligations of Sellers or Purchaser provided for therein or arising therefrom in any way, all of which shall remain in full force and effect in accordance with their terms. The representations, warranties, covenants, terms and provisions contained in the Purchase Agreement shall not be merged with or into this Bill of Sale but shall survive the execution and delivery of this Bill of Sale to the extent, and in the manner, set forth in the Purchase Agreement. In the event of any conflict or inconsistency between the terms of the Purchase Agreement and the terms of this Bill of Sale, the terms of the Purchase Agreement shall control.

The terms set forth in Section 5.3 (Further Assurances; Accounts) of the Purchase Agreement are incorporated by reference herein, except that, as applicable, any and all references to "**this Agreement**" shall mean and refer to this Bill of Sale.

**Section 3**        **Miscellaneous**.

The terms set forth in Section 7.6 (Governing Law; Jurisdiction; Waiver of Jury Trial), Section 7.7 (Entire Agreement; Interpretation), Section 7.8 (Notices), Section 7.9 (Counterparts), Section 7.12 (Amendment), Section 7.13 (No Agency), Section 7.15 (Severability) and Section 7.17 (Binding Effect; Third Party Beneficiaries; Assignment) of the Purchase Agreement are incorporated by reference herein, except that, as applicable, any and all references to "this Agreement" shall mean and refer to this Agreement.

[*Remainder of Page Intentionally Left Blank*]

IN WITNESS WHEREOF, the parties hereto have executed this Bill of Sale as of the date first written above.

**SELLERS:**                                         **PURCHASER:**

**SURGALIGN SPINE TECHNOLOGIES, INC.**                **AUGMEDICS, INC.**

By: _____                         By: _____
Name:                                                 Name:
Title:                                                Title:

**HOLO SURGICAL, INC.**
By:
Name:
Title:

**HOLOSURGICAL TECHNOLOGY INC.**

By: _____
Name:
Title:

[*Signature Page to Bill of Sale*]

## **EXHIBIT B**

Intellectual Property Assignment

See attached.

## INTELLECTUAL PROPERTY ASSIGNMENT AGREEMENT

This INTELLECTUAL PROPERTY ASSIGNMENT AGREEMENT (together with all Exhibits attached hereto, this "Agreement") is executed as of [●], 2023 by Surgalign Spine Technologies, Inc., a Delaware corporation, Holo Surgical Inc., a Delaware corporation and HoloSurgical Technology Inc., a Delaware corporation (each, an "Assignor", and together, the "Assignors"), on one hand, and Augmedics, Inc., a Delaware corporation ("Assignee"), on the other hand.  Assignors and Assignee may be referred to herein, individually, as a "Party" and, collectively, as the "Parties."  Capitalized terms used herein but not defined in this Agreement shall have the meanings given to such terms in the Purchase Agreement (as defined below).

**WHEREAS**, the Assignors and the Assignee are party to that certain Asset Purchase Agreement, dated as of August 9, 2023 (as may be amended, supplemented, or otherwise modified  in accordance with its terms, the "Purchase Agreement"), which sets forth, among other things,  the terms of the sale, conveyance, assignment, transfer and delivery from Assignors to Assignee  of the Purchased Assets, and assignment and delegation from Assignors to Assignee of all of the  Assumed Liabilities;

**WHEREAS**, the Purchased Assets include all Intellectual Property and Intellectual Property Rights, including but not limited to the Intellectual Property and Intellectual Property Rights set forth on Schedule 2.1(a) of the Disclosure Schedules to the Purchase Agreement and other patent applications primarily relating to the Business pending as of the later of July 26, 2023 or the Closing Date to which the Sellers have rights, as well as any applications claiming priority to or from the above-referenced patents and patent applications (including but not limited to continuations, divisions, continuation-in-part applications, and substitutions); corresponding foreign patents and applications; and any patents issuing on pending applications, including reissues, reexaminations and extensions; all rights of priority; and all claims for damages and remedies for past and future violations of the foregoing intellectual property rights, including the right to sue for, collect, and retain damages for past infringement of the foregoing intellectual property rights, but in each case excluding (i) any Retained Business Marks, (ii) any other assets set forth on Schedule 2.2 of the Disclosure Schedules to the Purchase Agreement, (iii) claims contemplated by Section 2.2(h) of the Purchase Agreement, and (iv) any Purchaser Released Claims (collectively, the "Acquired Intellectual Property");

**WHEREAS**, in connection with the transactions contemplated by the Purchase Agreement, Assignors have agreed to sell, assign, transfer and convey to Assignee, and Assignee has agreed to purchase, acquire, and accept from Assignors, all of Assignors' right, title, and interest in and to the Acquired Intellectual Property.

**NOW, THEREFORE**, in consideration of the premises and the covenants and agreements contained herein and in the Purchase Agreement, and intending to be legally bound, the Parties hereby agree as follows:

## ASSIGNMENT AND ASSUMPTION

1.1     <u>Conveyance</u>.  Pursuant to the terms set forth in the Purchase Agreement and the Sale Approval Order, and for the consideration set forth in the Purchase Agreement, the receipt and sufficiency of which Assignors and Assignee hereby acknowledge, Assignors hereby sell, transfer, assign, convey and deliver to Assignee, and Assignee acquires and accepts, effective as of the Closing, all of Assignors' rights, titles and interests in, to and under the Acquired Intellectual Property free and clear of all Encumbrances, as provided in the Purchase Agreement, but excluding any potential or actual Claims arising prior to the Closing Date against any member of the Parent Group, any Person operating the Hardware Business, the Machine Shop Assets or the Retained Business, or any Claims arising from the operation of the Hardware Business, the Machine Shop Business or the Retained Business.

1.2     <u>Intent-to-Use Trademarks</u>. Assignee is the successor-in-interest to the existing Business of Assignors, or that portion of the Business to which any intent to use trademark pertains, as required by Section 10 of the Trademark Act, 15. U.S.C. §1060.

1.3     <u>Excluded Assets</u>.  Assignors do not, and in no event shall Assignors be deemed to, sell, transfer, assign, convey or deliver, and Assignors hereby retain, (a) all of the entire right, title and interest to, in and under the Excluded Assets, as provided in Section 2.2 of the Purchase Agreement, (b) the Retained Business Marks and (c) any potential or actual Claims arising prior to the Closing Date against any member of the Parent Group, any Person operating the Hardware Business, the Machine Shop Assets or the Retained Business or any Claims arising from the operation of the Hardware Business, the Machine Shop Assets or the Retained Business.

1.4     <u>Purchase Agreement</u>.  This Agreement is expressly made subject to the terms of the Purchase Agreement.  The delivery of this Agreement shall not amend, affect, enlarge, diminish, supersede, modify, replace, rescind, waive or otherwise impair any of the representations, warranties, covenants, terms or provisions of the Purchase Agreement or any of the rights, remedies or obligations of Assignors or Assignee provided for therein or arising therefrom in any way, all of which shall remain in full force and effect in accordance with their terms.  The representations, warranties, covenants, terms and provisions contained in the Purchase Agreement shall not be merged with or into this Agreement but shall survive the execution and delivery of this Agreement to the extent, and in the manner, set forth in the Purchase Agreement. In the event of any conflict or inconsistency between the terms of the Purchase Agreement and the terms of this Agreement, the terms of the Purchase Agreement shall control.

1.5     <u>Further Assurances</u>. The terms set forth in Sections 5.3 (Further Assurances; Accounts) of the Purchase Agreement are incorporated by reference herein, except that, as applicable, any and all references to "<u>this Agreement</u>" shall mean and refer to this Agreement, any and all references to "<u>Seller</u>" shall mean and refer to Assignors and any and all references to "<u>Purchaser</u>" shall mean and refer to Assignee.  Assignors shall cooperate with and assist Assignee with any efforts to perfect, maintain, enforce and defend Assignee's rights in the Acquired Intellectual Property.  Assignee agrees to reimburse Assignors for reasonable, documented expenses associated with such cooperation and assistance.  Assignors agree not to make any statements or take any action that might disparage or impair the Acquired Intellectual Property. With respect to enforcement and defense, Assignors further agree to sign documents, be deposed, and join as a party to the extent reasonably able to do so.

2

1.6   <u>Miscellaneous</u>.  The terms set forth in Section 7.6 (Governing Law; Jurisdiction; Waiver of Jury), Section 7.7 (Entire Agreement; Interpretation), Section 7.8 (Notices), Section 7.9 (Counterparts), Section 7.12 (Amendment), Section 7.13 (No Agency), Section 7.15 (Severability) and Section 7.17 (Binding Effect; Third Party Beneficiaries; Assignment) of the Purchase Agreement are incorporated by reference herein, except that, as applicable, any and all references to "<u>this Agreement</u>" shall mean and refer to this Agreement.

[*Signature Pages Follow*]

**IN WITNESS WHEREOF**, Assignors and Assignee have executed this Intellectual Property Assignment Agreement to be effective as of the Closing.

**ASSIGNORS:**

**SURGALIGN SPINE TECHNOLOGIES, INC.**

By: _____
Name:
Title:

**HOLO SURGICAL, INC.**

By: _____
Name:
Title:

**HOLOSURGICAL TECHNOLOGY, INC.**

By: _____
Name:
Title:

**ASSIGNEE:**

**AUGMEDICS, INC.**

By: _____

Name:

Title:

**<u>EXHIBIT C</u>**

Sale Approval Order

See attached.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| In re: | ) |
|  | ) Chapter 11 |
| SURGALIGN HOLDINGS, INC., *et al.*[1] | ) |
|  | ) Case No. 23-90731 (CML) |
| Debtors. | ) |
|  | ) (Jointly Administered) |
|  | ) **Re: Docket No. 26** |

### ORDER (I) AUTHORIZING AND APPROVING THE SALE OF CERTAIN OF THE DEBTORS' DIGITAL HEALTH BUSINESS ASSETS TO AUGMEDICS, INC. FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (II) AUTHORIZING THE SALE TRANSACTION; AND (III) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of the above-captioned debtors and debtors-in-possession (the "**Debtors**") for entry of an order (this "**Order**"), pursuant to sections 105(a), 363, and 365 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rule 9013-1 of the Local Bankruptcy Rules for the Southern District of Texas (the "**Local Rules**"), and Paragraph N of the Procedures for Complex Cases in the Southern District of Texas (the "**Complex Procedures**"), *inter alia* (i) approving the sale of substantially all of the Debtors' assets; (ii) authorizing the consummation of the sale and each of transactions contemplated by that certain Asset Purchase Agreement, dated as of June 26, 2023 attached as **Exhibit A** hereto (as amended, supplemented, amended and restated or otherwise modified from time to time, including the

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number (if any), are: Surgalign Holdings, Inc. (0607); Surgalign Spine Technologies, Inc. (6543); Pioneer Surgical Technology NewCo Inc.; Spinal Transition and Professional Services LLC; Andi's Belmarall, LLC; Fourth Dimension Spine, LLC (1107); Holo Surgical Inc. (4079); and HoloSurgical Technology Inc. (0952). The location of the debtors' service address in these chapter 11 cases is: 520 Lake Cook Road, Suite 315, Deerfield, Illinois 60015.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion [Docket No. 26] or the Asset Purchase Agreement (as defined herein).

amendments thereto, as set forth in the schedules attached to this Order, and including the exhibits and schedules thereto, the "**Asset Purchase Agreement**"), by and among Augmedics, Inc. (the "**Purchaser**") and Surgalign Spine Technologies, Inc. ("**Surgalign Spine**"), Holo Surgical Inc. ("**Holo Surgical**"), and HoloSurgical Technology Inc. ("**Holo Technology**", and, together with Surgalign Spine and Holo Surgical, "**Sellers**"), and, solely with respect to provisions applicable to the Deposit and the Escrow Agreement, Surgalign Holdings, Inc. ("**Holdings**", and together with the Sellers, the "**Debtors**") and this Order (the "**Sale Transaction**"); and (iii) granting related relief; and upon the *Declaration of George Varughese in Support of the Motion* [Docket No. 29]; and the United States Bankruptcy Court for the Southern District of Texas (the "**Court**") having entered an order on June 30, 2023 [Docket No. 137] (the "**Bid Procedures Order**") approving, among other things, the dates, deadlines, and bidding procedures (the "**Bid Procedures**") with respect to, and notice of, the proposed sale of substantially all the assets, including the Purchased Assets (as defined in the Asset Purchase Agreement); and due and sufficient notice of the Motion having been given under the particular circumstances; and it appearing that no other or further notice need be provided; and the Court having held a hearing on August 8, 2023 (the "**Sale Hearing**") to approve the Sale Transaction; and the Court having reviewed and considered (a) the Motion, (b) the objections to the Motion or the Sale Transaction, if any, (c) all other pleadings filed in support of the Motion, and (d) the arguments of counsel, and the evidence proffered or adduced at the Sale Hearing and any other hearing related to the Motion; and all parties in interest having been heard, or having had the opportunity to be heard, regarding the approval of the Sale Transaction and the other relief requested in the Motion; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors and other parties in

interest; and upon the record of the Sale Hearing and the chapter 11 cases; and after due deliberation thereon; and good cause appearing therefore, it is hereby,

**FOUND, DETERMINED, AND CONCLUDED THAT:[3]**

A. <u>Jurisdiction and Venue</u>.  This Court has jurisdiction to consider the Motion and approve the Sale Transaction under 28 U.S.C. § 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these chapter 11 cases and this Motion is proper in this district and Court under 28 U.S.C. §§ 1408 and 1409.

B. <u>Final Order</u>.  This Order constitutes a final order within the meaning of 28 U.S.C. §158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

C. <u>Property of the Estate</u>.  The Purchased Assets constitute property of the Sellers' estates and title thereto is vested in the Sellers' estates within the meaning of section 541(a) of the Bankruptcy Code.

D. <u>Legal Predicates</u>.  The predicates for the relief requested by this Motion are sections 105, and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9007, and 9014, Local Rule 9013-1, and Paragraph N of the Complex Procedures.

---

[3]   The findings, determinations, and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

E.     Petition Date.  On June 19, 2023 (the "**Petition Date**"), each of the Debtors commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code.  Since the Petition Date, the Debtors have continued to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

F.     Bid Procedures Order.  On June 30, 2023, this Court entered the Bid Procedures Order, *inter alia* (i) approving the Bid Procedures; (ii) scheduling the Auction, if any, and Sale Hearing; (iii) approving the form and manner of notice of the Bid Procedures, the Bid Deadline, the Auction, the deadline to object to the sale, and all other relevant procedures, protections, schedules and agreements; and (iv) granting related relief.  No appeal, motion to reconsider, or similar pleading has been filed with respect to the Bid Procedures Order, and the Bid Procedures Order is a final order of the Court.  The Bid Procedures Order has not been vacated, withdrawn, rescinded or amended and remains in full force and effect.

G.     Compliance with Bid Procedures Order.  As demonstrated by the testimony and other evidence proffered or adduced at the Sale Hearing and the representations of counsel made on the record at the Sale Hearing, the Debtors have marketed the Purchased Assets and conducted the sale process in compliance with the Bid Procedures Order.  The Debtors and their professionals have afforded potential purchasers a full and fair opportunity to make offers.  The Purchaser and its directors, managers, officers, employees, agents, representatives, attorneys, contractors, subcontractors, and independent contractors, in each case, in its respective capacity as such (collectively, the "**Purchaser Parties**") have acted in good faith and in compliance with the terms of the Bid Procedures.  In accordance with the Bid Procedures, the Debtors determined that the bid submitted by the Purchaser and memorialized by the Asset Purchase Agreement is the Successful Bid (as defined in the Bid Procedures) for the Purchased.  The Asset Purchase

4

Agreement constitutes the highest and best offer for the Purchased Assets, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. The Debtors' determination that the Asset Purchase Agreement constitutes the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Debtors' business judgment.

H.     Notice.  As evidenced by the affidavits of service and publication previously filed with the Court [Docket No. 255], and based on the record at the Sale Hearing, (i) proper, timely, adequate and sufficient notice of the Motion, the Bid Procedures, the Auction, the Sale Hearing, the Sale Transaction, and the relevant objection deadlines has been provided in accordance with sections 102(l) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9007 and 9014, and applicable Bankruptcy Local Rules, and in compliance with the Bid Procedures Order to each party entitled to such notice, (ii) such notice was good and sufficient, and appropriate under the particular circumstances, and (iii) no other or further notice of the Motion, the Bid Procedures, the Auction, if any, the Sale Hearing, the Sale Transaction, or the relevant objection deadlines is or shall be required.  With respect to entities whose identities are not reasonably ascertained by the Debtors, publication of the Sale Notice in the national edition of *The New York Times* on July 7, 2023, was sufficient and reasonably calculated under the circumstances to reach such entities. [Docket No. 255-1].

I.     Company Authority.  Each Debtor (i) has full corporate power and authority to execute the Asset Purchase Agreement and all other documents contemplated thereby and hereby, including any ancillary agreements (collectively, the "**Transaction Documents**"), and the Sale Transaction has been duly and validly authorized by all necessary action of each of the applicable Debtors, (ii) has all of the corporate power and authority necessary to consummate the transactions

contemplated by this Order and the Transaction Documents, (iii) has taken all action and formalities necessary to authorize and approve the Transaction Documents and the Debtors' consummation of the transactions contemplated thereby and hereby, including as required by their respective organizational documents, and (iv) has duly executed and delivered the Asset Purchase Agreement.  No government, regulatory or other consents or approvals, other than those expressly provided for in the Transaction Documents, are required for the Debtors to enter into the Transaction Documents, to consummate the Sale Transaction, or to perform their obligations under the Transaction Documents.  The consummation of the Sale Transaction and performance under the Transaction Documents do not violate or conflict with any applicable law.

J.      <u>Opportunity to Object</u>.  A fair and reasonable opportunity to object and to be heard with respect to the Motion and the relief requested therein, has been given to all interested persons and entities, including the following: (i) all known parties holding or asserting Interests on, in, or against the Purchased Assets, (ii) all parties that have requested notice pursuant to Bankruptcy Rule 2002 as of the time of service, and (iii) all applicable federal, state. and local taxing and regulatory authorities.

K.      <u>Sale in Best Interest</u>.  Consummation of the sale of the Purchased Assets pursuant to the Asset Purchase Agreement at this time is in the best interests of the Debtors, their creditors, their estates, and other parties in interest.

L.      <u>Business Justification</u>.  Sound business reasons exist for the Sale Transaction. Entry into the Transaction Documents, and the consummation of the transactions contemplated thereby, including the Sale Transaction, constitutes an exercise of the Debtors' sound business judgment and such acts are in the best interests of each Debtor, its estate, and all parties in interest. The Court finds that each Debtor has articulated good and sufficient business reasons justifying

the Sale Transaction.  Such business reasons include, but are not limited to, the following: (i) the

Asset Purchase Agreement constitutes the highest and best offer for the Purchased Assets; (ii) the

Purchaser has agreed to assume the Assumed Liabilities; (iii) the Sale Transaction maximizes the

going concern value of the Business and Purchased Assets; and (iv) unless the Sale Transaction

and all of the other transactions contemplated by the Transaction Documents are concluded

expeditiously, as provided for in the Motion, the Bid Procedures, and pursuant to the Asset

Purchase Agreement, recoveries to creditors may be diminished.

M.     <u>The Debtors' Marketing Process</u>.  The Debtors and their professionals actively

marketed the Purchased Assets to potential purchasers, as set forth in the Motion and in accordance

with the Bid Procedures Order.  The bidding and auction process set forth in the Bid Procedures

Order and the Bid Procedures afforded a full and fair opportunity for any entity to make a higher

or otherwise better offer to purchase the Purchased Assets than the offer memorialized by the Asset

Purchase Agreement. Based upon the record of these proceedings, all creditors and other parties

in interest and all prospective bidders have been afforded a reasonable and fair opportunity to bid

for the Purchased Assets.

N.     <u>No Other Actionable Bids</u>.  No other person or entity or group of persons or entities

has offered to purchase the Purchased Assets for an amount that would give equal or greater

economic value to the Debtors and their estates in the aggregate than the value being provided

pursuant to the Asset Purchase Agreement.  Among other things, the Sale Transaction is the best

alternative available to the Debtors to maximize the return to their estates.  The terms and

conditions of the Asset Purchase Agreement, including the consideration to be realized by the

Debtors, are fair and reasonable.  Given all of the circumstances of the chapter 11 cases and the

adequacy and fair value of the consideration provided under the Asset Purchase Agreement,

approval of the Motion, the Asset Purchase Agreement, and the transactions contemplated thereby and hereby, including the Sale Transaction, is in the best interest of the Debtors, their estates and creditors, and all other parties in interest.

O.    <u>Arms'-Length Sale</u>.  The Transaction Documents were negotiated, proposed, and entered into by the Debtors and the Purchaser without collusion, in good faith, and at arms'- length. None of the Debtors or any of the Purchaser Parties, or any of their respective representatives has engaged in any conduct that would cause or permit the Transaction Documents, or the consummation of the Sale Transaction, to be avoidable or avoided, or for costs or damages to be imposed, under 11 U.S.C. § 363(n), or has acted in bad faith or in any improper or collusive manner with any entity in connection therewith.  Specifically, the Purchaser Parties have not acted in a collusive manner with any person or entity and the Purchase Price was not controlled by any agreement among bidders.

P.    <u>Good Faith Purchaser</u>.  The Purchaser is a good faith purchaser for value and, as such, is entitled to all of the protections afforded under 11 U.S.C. § 363(m) and any other applicable or similar bankruptcy and non-bankruptcy law.  Furthermore, none of the Purchaser Parties is an "insider" (as defined under section 101(31) of the Bankruptcy Code) of any Debtor, and, therefore, each Purchaser Party is entitled to the full protections of section 363(m) of the Bankruptcy Code and has otherwise proceeded in good faith in all respects in connection with these chapter 11 cases and the Sale Transaction.  Without limiting the foregoing: (i) all Purchaser Parties recognized that the Debtors were free to deal with any other party interested in purchasing the Purchased Assets; (ii) all Purchaser Parties complied in all respects with the provisions in the Bid Procedures Order; (iii) the Purchaser agreed to subject its bid to the competitive Bid Procedures set forth in the Bid Procedures Order; (iv) all consideration to be provided by the

Purchaser and all other agreements or arrangements entered into by the Purchaser Parties in connection with the Sale Transaction have been disclosed; (v) no common identity of directors, officers or controlling stockholders exists among the Purchaser and the Debtors; (vi) the negotiation and execution of the Transaction Documents were at arm's-length and in good faith, and at all times each of the Purchaser Parties and the Debtors were represented by competent counsel of their choosing; and (vii) the Purchaser Parties have not acted in a collusive manner with any person or entity. The Purchaser Parties will be acting in good faith within the meaning of 11 U.S.C. § 363(m) in closing the transactions contemplated by the Asset Purchase Agreement and the other Transaction Documents.

Q.    <u>Free and Clear Sale</u>.  The Sellers may sell the Purchased Assets free and clear of all Encumbrances, claims (including any "claims" as defined in section 101(5) of the Bankruptcy Code), rights, obligations, Liabilities, and other interests of any kind or nature whatsoever against the Debtors or the Purchased Assets (other than the Assumed Liabilities), including, without limitation, other than the Assumed Liabilities, any Liabilities, debts, or obligations arising under or out of, in connection with, or in any way relating to, any acts or omissions, indentures, loan agreements, instruments, leases, agreements, collective bargaining agreements, conditional sale or other title retention agreements, suits, judgments, demands, guaranties, contractual commitments, licenses, restrictions, options, rights of first refusal, offsets, Contracts, recoupment rights, rights of recovery, claims for reimbursement, contribution, indemnity, exoneration, products liability, breach of warranty, alter-ego, environmental liabilities, labor and employment claims (whether or not under a labor agreement), employee pension or benefit plan claims (including multiemployer benefit plan claims), including any withdrawal or termination liability thereunder, workers' compensation claims, retiree medical benefits claims, liabilities related to the Employee

Retirement Income Security Act of 1974, liabilities related to the Worker Adjustment and Retraining Notification Act of 1988, liabilities related to the Internal Revenue Code, or any other liability relating to the Debtors' current and former employees, claims for taxes of or against the Debtors or their assets, any derivative, vicarious, transfer or successor liability claims, and any other rights or causes of action (whether in law or in equity, under any law, statute, rule or regulation of the United States, any state, territory, or possession thereof or the District of Columbia), whether arising prior to or subsequent to the Closing Date, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, asserted or unasserted, material or non-material, disputed or undisputed, matured or unmatured, liquidated or unliquidated, or contingent or non-contingent, and whether imposed by agreement, understanding, law, equity or otherwise, including, without limitation, any and all claims otherwise arising under doctrines of successor liability, in each case, arising under or out of, in connection with, or in any way related to the Debtors (or their predecessors), the Debtors' interests in the Purchased Assets, the operation of the Debtors' businesses before the Closing, or the transfer of the Debtors' interests in the Purchased Assets to the Purchaser, and all Excluded Liabilities (collectively, and excluding only Assumed Liabilities, the "**Interests**"), because, with respect to each person or entity asserting an Interest, one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Each person or entity with an Interest in the Purchased Assets: (i) has, subject to the terms and conditions of this Order, consented to the Sale Transaction or is deemed to have consented to the Sale Transaction; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Interest; or (iii) otherwise falls within one or more of the other subsections of section 363(f) of the Bankruptcy Code.  Those holders of Interests who did not

object or withdrew objections to the Sale Transaction are deemed to have consented to the Sale Transaction pursuant to section 363(f)(2) of the Bankruptcy Code.

R.    The Purchaser would not have entered into the Asset Purchase Agreement and would not consummate the transactions contemplated thereby, including the Sale Transaction, (i) if the transfer of the Purchased Assets was not free and clear of all Interests, including rights or claims based on any successor or transferee liability, of any kind or nature whatsoever (solely except as expressly set forth in the Asset Purchase Agreement or this Order with respect to Assumed Liabilities) or (ii) if any of the Purchaser Parties would, or in the future could, be liable for any such Interests.

S.    Not transferring the Purchased Assets to the Purchaser free and clear of all Interests would adversely impact the Debtors' efforts to maximize the value of their estates, and the transfer of the Purchased Assets to the Purchaser other than pursuant to a transfer that is free and clear of all Interests would be of substantially less benefit to the Debtors' estates.  The total consideration to be provided under the Asset Purchase Agreement reflects the Purchaser's reliance on this Order to provide the Purchaser, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, with title to and possession of the Purchased Assets free and clear of all Interests.

T.    <u>Prompt Consummation</u>.  The sale of the Purchased Assets must be approved and consummated promptly to preserve the value of the Purchased Assets. Therefore, time is of the essence in consummating the Sale Transaction, and the Debtors and the Purchaser intend to close the Sale Transaction as soon as reasonably practicable. The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the transactions contemplated by the Asset Purchase Agreement, the other Transaction Documents and this Order, including the Sale Transaction. The

11

Purchaser, being a good faith purchaser under section 363(m) of the Bankruptcy Code, may close the Sale Transaction contemplated by the Asset Purchase Agreement at any time after entry of this Order, subject to the terms and conditions of the Asset Purchase Agreement. There is cause to lift the stay contemplated by Bankruptcy Rule 6004 with regards to the transactions contemplated by this Order.

U.      No Fraudulent Transfer.  The Transaction Documents were not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession or the District of Columbia, and none of the parties to the Transaction Documents are consummating the Sale Transaction for any other fraudulent or otherwise improper purpose.

V.      The consideration provided by the Purchaser for the Purchased Assets pursuant to the Asset Purchase Agreement (i) is fair and reasonable, (ii) is the highest and best offer for the Purchased Assets, (iii) will provide a greater recovery for the Debtors' creditors than would be provided by any other available alternative, and (iv) constitutes reasonably equivalent value, fair consideration and fair value under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia (including the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, and the Uniform Voidable Transactions Act), and any other applicable law.

W.      Purchaser Not an Insider and No Successor Liability.  Prior to the Closing Date, the Purchaser was not an "insider" or "affiliate" of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors or stockholders existed between the Purchaser and the Debtors. The transfer of the Purchased Assets to the Purchaser, the assumption of the Assumed Liabilities by the Purchaser and the consummation of the Sale

Transaction (including any individual elements of the Sale Transaction), do not, and will not, subject the Purchaser Parties to any liability whatsoever, with respect to the operation of the Debtors' businesses prior to the Closing or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, in any theory of law or equity including any laws affecting antitrust, successor, transferee or vicarious liability. Pursuant to the Asset Purchase Agreement, the Purchaser is not purchasing all of the Debtors' assets in that the Purchaser is not purchasing any of the Excluded Assets or assuming the Excluded Liabilities, and the Purchaser is not holding itself out to the public as a continuation of the Debtors. The Purchaser, as a result of any action taken in connection with the Sale Transaction (including by consummating the Sale Transaction), is not a successor to or a mere continuation of any of the Debtors or their respective estates and there is no continuity or common identity between the Purchaser and the Debtors. The Sale Transaction does not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Debtors and/or the Debtors' estates. There is not substantial continuity between the Purchaser and the Debtors, and there is no continuity of enterprise between the Debtors and the Purchaser. The Purchaser does not constitute a successor to the Debtors or the Debtors' estates. None of the Purchaser Parties shall assume or in any way be responsible for any obligations or Liability of any Debtor or any Debtor's estate, except for the Assumed Liabilities.

X.      <u>Binding Agreement</u>.  The Transaction Documents are, or upon the execution of thereof by the parties thereto, will be valid and binding contracts between the Debtors and the Purchaser and shall be enforceable pursuant to their terms.  Notwithstanding anything contained herein, the Transaction Documents or any further order of the Court to the contrary, the Transaction Documents and consummation of the Sale Transaction shall be, to the extent provided

13

in the Transaction Documents, specifically enforceable against and binding upon the Debtors and any estate representative, including any chapter 7 trustee or chapter 11 trustee appointed in any of the Debtors' cases, any plan administrator, litigation trustee or liquidation trustee appointed in the chapter 11 cases or any successor cases, creditors and all other parties-in-interest, and shall not be subject to rejection or avoidance by the foregoing parties or any other Person or entity.

Y.     <u>Legal, Valid Transfer</u>.  The Debtors have full corporate power and authority (i) to perform all of their obligations under the Transaction Documents and (ii) to consummate the Sale Transaction.  The transfer of the Purchased Assets to the Purchaser will be a legal, valid, and effective transfer of the Purchased Assets, and will vest the Purchaser with all right, title, and interest of the Sellers in and to the Purchased Assets free and clear of all Interests.  The Purchased Assets constitute property of the Sellers' estates and good title to the Purchased Assets is vested in the Sellers' estates within the meaning of section 541(a) of the Bankruptcy Code.  The Sellers are the sole and rightful owners of the Purchased Assets, and no other person or entity has any ownership right, title, or interests therein.

Z.     <u>Not a Sub Rosa Plan</u>.  The Sale Transaction does not constitute a *sub rosa* chapter 11 plan or an element of such plan for the Debtors, for which approval has been sought without the protections that a disclosure statement would afford.  The Sale Transaction does not (i) impermissibly restructure the rights of the Debtors' creditors or equity interest holders, (ii) impair or circumvent voting rights with respect to any future plan proposed by the Debtors, (iii) impermissibly dictate a plan of reorganization for the Debtors; or (iv) classify claims or equity interests, compromise controversies, or extend debt maturities.

AA.    <u>Consummation is Legal, Valid and Binding</u>.  The consummation of the Sale Transaction is legal, valid and properly authorized under all applicable provisions of the

14

Bankruptcy Code, including sections 105(a), 363(b), 363(f), and 363(m) of the Bankruptcy Code, and all of the applicable requirements of the Bankruptcy Code have been complied with in respect of the transactions contemplated by the Asset Purchase Agreement and the other Transaction Documents.  The transactions contemplated under the Transaction Documents and this Order (including the Sale Transaction) are inextricably linked and collectively constitute a single, integrated transaction.

BB.    <u>Legal and Factual Bases</u>.  The legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:**

<u>**General Provisions**</u>

1.    The Sale Transaction contemplated by the Motion and the Asset Purchase Agreement is approved, in each case, as set forth in this Order.

2.    This Court's findings of fact and conclusions of law set forth in the Bid Procedures Order are incorporated herein by reference.

3.    Objections to the Motion or the relief requested therein, the Transaction Documents, the Sale Transaction, the entry of this Order, or the relief granted herein that have not been withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof, if any, are hereby **DENIED** and **OVERRULED** on the merits with prejudice.  All withdrawn objections are deemed withdrawn with prejudice.  Those parties, including those holders of Interests, who did not object to the Motion or the entry of this Order in accordance with the Bid Procedures Order, or who withdrew their objections thereto, are deemed to have consented to the relief granted herein for all purposes, including, without limitation, pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of Interests that have an Interest in the Purchased Assets and who did object

15

could be compelled in a legal or equitable proceeding to accept money satisfaction of such Interest pursuant to section 363(f)(5) of the Bankruptcy Code or fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and, therefore, are adequately protected by having their Interests that constitute Interests in the Purchased Assets, if any, attach solely to the proceeds of the Sale Transaction ultimately attributable to the property in which they have an Interest, in the same order of priority and with the same validity, force and effect that such holders had prior to the Sale Transaction, subject to any claims, setoffs, deductions, offsets and defenses of the Debtors to such Interests.

## Approval of the Sale of the Purchased Assets

4.      The Asset Purchase Agreement, including any amendments, supplements and modifications thereto, all other Transaction Documents, and all of the terms and conditions therein, are hereby **APPROVED** in all respects.

5.      Pursuant to 11 U.S.C. §§ 363(b) and (f), the sale of the Purchased Assets to the Purchaser pursuant to the Asset Purchase Agreement free and clear of all Interests is approved in all respects.

## Sale and Transfer of the Purchased Assets

6.      The consideration provided by the Purchaser for the Purchased Assets under the Asset Purchase Agreement is fair and reasonable and shall be deemed for all purposes to constitute reasonably equivalent value, fair value, and fair consideration under the Bankruptcy Code and the laws of the United States, any state, territory, possession, or the District of Columbia, including without limitation the Uniform Fraudulent Transfer Act, the Uniform Voidable Transactions Act, the Uniform Fraudulent Conveyance Act, and any other applicable law. The Sale Transaction may not be avoided or rejected by any person or entity, nor may any costs or damages be imposed or

16

awarded against the Purchaser Parties, under section 363(n) or any other provision of the Bankruptcy Code.

7.      The Sale Transaction authorized herein shall be of full force and effect, regardless of the Debtors' lack or purported lack of good standing in any jurisdiction in which the Debtors are formed or authorized to transact business.  The automatic stay imposed by section 362 of the Bankruptcy Code is modified to the extent necessary, without further order of this Court, to implement the Sale Transaction and the provisions of this Order, including, without limitation, to allow the Purchaser to: (a) deliver any notice provided for in the Asset Purchase Agreement and any of the other Transaction Documents; (b) take any and all actions permitted under the Asset Purchase Agreement and any of the other Transaction Documents in accordance with the terms and conditions thereof; and (c) take any and all actions necessary or appropriate to implement the Sale Transaction.

8.      Subject to the terms, conditions, and provisions of this Order, all persons and entities are hereby forever prohibited and barred from taking any action that would adversely affect or interfere, or that would be inconsistent (a) with the ability of the Debtors to sell and transfer the Purchased Assets to the Purchaser in accordance with the terms of the Transaction Documents and this Order, (b) with the ability of the Purchaser to acquire, take possession of, use and operate the Purchased Assets and to conduct the Business in accordance with the terms of the Transaction Documents and this Order and (c) with the ability of the Debtors and the Purchaser to consummate the transactions contemplated by the Transaction Documents or to perform their respective obligations under any of the Transaction Documents; provided, however, that the foregoing restriction shall not impair the right of any party in interest with the requisite standing to appeal this Order in accordance with applicable law or opposing any appeal of this Order.

9.      Pursuant to sections 105, 363 and 365 of the Bankruptcy Code, the Debtors are hereby authorized, empowered and directed to, and shall, take any and all actions necessary or appropriate to (a) sell the Purchased Assets to the Purchaser, (b) consummate the Sale Transaction in accordance with, and subject to the terms and conditions of, this Order and the Transaction Documents, and (c) transfer and assign to the Purchaser all right, title and interest (including common law rights) to all property, licenses and rights to be conveyed in accordance with and subject to the terms and conditions of the Transaction Documents, in each case without further notice to or order of this Court.  The Debtors are further authorized and directed to execute and deliver, and are empowered to perform under, consummate and implement, the Transaction Documents, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Asset Purchase Agreement, including the related documents, exhibits and schedules, and to take all further actions as may be reasonably requested by the Purchaser for the purposes of assigning, transferring, granting, conveying and conferring to the Purchaser or reducing to possession, the Purchased Assets, or as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the Transaction Documents without further notice to or order of this Court.  Neither the Purchaser nor the Debtors shall have any obligation to proceed with consummating the Sale Transaction until all conditions precedent to their obligations to do so under the applicable Transaction Documents have been met, satisfied or waived.

10.      Pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, the Purchased Assets shall be transferred to the Purchaser at Closing free and clear of all Interests.  On and after the Closing Date, any person or entity that has an Interest against or in the Purchased Assets is authorized and directed to execute such documents and take all other actions as may be necessary

or reasonably requested by the Purchaser to release its Interests in or against the Purchased Assets, if any, as such Interests may have been recorded or otherwise exist. If any such person or entity shall not have delivered to the Debtors prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfactions or releases of all Interests that such person or entity has with respect to the Purchased Assets, or otherwise, then the Purchaser is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Interests in the Purchased Assets of any kind or nature; provided that, notwithstanding anything in this Order, the Asset Purchase Agreement or other Transaction Documents to the contrary, the provisions of this Order authorizing and approving the transfer of the Purchased Assets free and clear of all Interests shall be self-executing, and neither the Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Order, the Asset Purchase Agreement or any of the other Transaction Documents.

11.     Following the Closing, the Purchaser may, but shall not be required to, file or record a certified copy of this Order in any filing or recording office in any federal, state, county, or other jurisdiction in which the Debtors are formed or have real or personal property, or with any other appropriate clerk or recorder, and such filing or recording shall be accepted and shall be sufficient to release, discharge, and terminate any of the Interests as set forth in this Order as of the Closing and/or to transfer and assign any of the Purchased Assets to the Purchaser as of the Closing free and clear of any and all Interests. Subject to the occurrence of the Closing, this Order will be construed, and constitute for any and all purposes, a full and complete general assignment, conveyance and transfer to the Purchaser of the Purchased Assets or a bill of sale transferring good

and marketable title in the Purchased Assets to the Purchaser.  Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by this Order, the Asset Purchase Agreement and the other Transaction Documents.

12.    All persons and entities who are presently, or on the Closing Date may be, in possession of some or all of the Purchased Assets are hereby directed to surrender possession of the Purchased Assets to the Purchaser on the Closing Date.

13.    Except as expressly permitted by the Asset Purchase Agreement or this Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade creditors, dealers, employees, litigation claimants, parties to executory contracts and unexpired leases, customers, licensors, current and former employees and other creditors, and all holders of Interests against or in a Debtor or any of the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Purchased Assets, the operation of the Purchased Assets before the Closing, or the transactions contemplated by the Asset Purchase Agreement, including the Sale Transaction and the transfer of the Purchased Assets, are forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such persons' or entities' Interests, whether by payment, setoff, or otherwise, directly or indirectly (including, without limitation, taking any of the following actions: (a) commencing or continuing in any manner any action or other proceeding; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any Interest; (d) asserting an Interest as a setoff, right of subrogation or recoupment of any kind against

any obligation due; (e) commencing or continuing any action in any manner or place that does not comply, or is inconsistent, with the provisions of this Order or the agreements or actions contemplated or taken in respect thereof; or (f) interfering with, preventing, restricting, prohibiting or otherwise enjoining the consummation of the Sale Transaction), in the case of each of the foregoing, against the Purchaser, the other Purchaser Parties, or any of their respective successors or assigns, their respective assets or property and the Purchased Assets. Following the Closing, no party shall interfere with the Purchaser's title to or use, enjoyment and operation of the Purchased Assets based on or related to any such Interest or based on any action or failure to act of the Debtors in the chapter 11 cases or any successor cases.

14.     To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license or similar grant relating to the Business or the operation of the Purchased Assets on account of the filing or pendency of the chapter 11 cases or the consummation of the transactions contemplated by the Asset Purchase Agreement or any of the other Transaction Documents, including the Sale Transaction and the transfer of the Purchased Assets. Each and every federal, state, and local governmental agency or department is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the Sale Transaction.

15.     The Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Business or the Purchased Assets, and, to the extent provided for under the Asset Purchase Agreement, all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are directed to be, transferred to the Purchaser as of the Closing Date.  Any dispute with respect to any such transfer or the vesting of any such

21

license, permit, registration or government authorization or approval in the Purchaser not raised by the Sale Objection Deadline is hereby waived.

16.     Subject to the terms and conditions of this Order, the transfer of the Purchased Assets to the Purchaser pursuant to the Asset Purchase Agreement and the consummation of the Sale Transaction and any related actions contemplated hereby and thereby constitute a legal, valid, and effective transfer of the Purchased Assets, do not require any consents of any Person or entity other than as specifically provided for in the Asset Purchase Agreement, and shall vest the Purchaser with all right, title, and interest of the Sellers in and to the Purchased Assets free and clear of all Interests of any kind or nature whatsoever.

## Releases and No Successor Liability

17.     None of the Purchaser Parties is a "successor" to the Debtors or their estates by reason of any theory of law or equity, and, except as otherwise expressly provided in the Asset Purchase Agreement, none of the Purchaser Parties shall assume, or be deemed to assume, or in any way be responsible for any Liability or obligation of any of the Debtors and/or their estates with respect to the Purchased Assets or otherwise (other than, in the case of the Purchaser, the Assumed Liabilities), including, but not limited to, under any bulk sales law, doctrine or theory of successor liability, or similar theory or basis of liability or responsibility for any claim against any Debtor or against an insider of any Debtor, or similar liability.  Neither the purchase of the Purchased Assets by the Purchaser nor the fact that the Purchaser is using any assets previously operated by the Debtors will cause any of the Purchaser Parties to be deemed a successor in any respect to the Debtors' businesses or, except solely for the Assumed Liabilities, incur any Liability derived therefrom of any kind or character, including, but not limited to, an Interest or Liability arising under: (a) any employment or labor agreements or the termination thereof; (b) any pension,

welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of or related to any of the Debtors or any of the Debtors' predecessors or any current or former employees of any of the foregoing, or the termination of any of the foregoing; (c) the Debtors' business operations or the cessation thereof; (d) any litigation involving one or more of the Debtors; (e) any claims of any former employees of any of the Debtors; and (f) any employee, workers' compensation, occupational disease or unemployment or temporary disability related law, including, without limitation, claims that might otherwise arise under or pursuant to: (i) the Employee Retirement Income Security Act of 1974, as amended; (ii) the Fair Labor Standards Act; (iii) Title VII of the Civil Rights Act of 1964; (iv) the Federal Rehabilitation Act of 1973; (v) the National Labor Relations Act; (vi) the Worker Adjustment and Retraining Notification Act of 1988; (vii) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended; (viii) the Americans with Disabilities Act of 1990; (ix) the Consolidated Omnibus Budget Reconciliation Act of 1985; (x) the Multiemployer Pension Plan Amendments Act of 1980; (xi) state and local discrimination laws; (xii) state and local unemployment compensation laws or any other similar state and local laws; (xiii) state workers' compensation laws; (xiv) any other state, local or federal employee benefit laws, regulations or rules or other state, local or federal laws, regulations or rules relating to wages, benefits, employment or termination of employment with any or all of the Debtors or any of the Debtors' predecessors; (xv) any antitrust laws; (xvi) any product liability or similar laws, whether state, federal or otherwise; (xvii) any environmental laws, rules, or regulations, including, without limitation, under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, *et seq.*, or similar state statutes; (xviii) any bulk sales or similar laws; (xix) any federal, state or local tax statutes, regulations or ordinances, including,

23

without limitation, the Internal Revenue Code of 1986, as amended; or (xx) any common law doctrine of *de facto* merger or successor or transferee liability, successor-in-interest liability theory or any other theory of or related to successor liability, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, or liquidated or unliquidated with respect to any of the Debtors or any obligations of any of the Debtors arising prior to the Closing, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to, the Purchased Assets (except as expressly set forth in the Asset Purchase Agreement with respect to Assumed Liabilities).

18.     The Purchaser and the Purchaser Parties will be providing substantial consideration under the Asset Purchase Agreement and the Transaction Documents, which consideration shall constitute valid and valuable consideration for the releases of any potential claims of successor liability against the Purchaser Parties and which shall be deemed to have been given in favor of the Purchaser Parties by all holders of Interests in or against the Debtors, or the Purchased Assets. Upon consummation of the Sale Transaction, none of the Purchaser Parties shall be deemed to (a) be the successor to any Debtor or any assets of any Debtor, (b) have, *de facto* or otherwise, merged with or into any Debtor or any Debtor's estate, (c) have a common identity with any Debtor, (d) have a continuity of enterprise with any Debtor or (e) be a mere continuation, alter ego or substantial continuation of any Debtor.

19.     The Purchaser shall not have any liability, responsibility or obligation for any Interests, claims, Liabilities or other obligations of the Debtors or their estates, including any Interests, claims, Liabilities or other obligations related to the Purchased Assets prior to Closing. Under no circumstances shall the Purchaser be deemed a successor of or to the Debtors for any

Interests against, in or to the Debtors or the Purchased Assets.  For the purposes of this paragraph of this Order, all references to the Purchaser shall also be for the benefit of the Purchaser Parties.

**Transfer of Certain Claims and Causes of Action**

20.     As used in this Order, "**Claims and Causes of Actions**" means, collectively, any and all claims, interests, obligations, rights, suits, damages, causes of action (including, with respect to any Debtor, any cause of action under chapter 5 of the Bankruptcy Code and similar causes of action under state or other applicable law), remedies, and liabilities whatsoever, including any derivative claims that a person or entity (or someone on its behalf) would have been legally entitled to assert, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such person or entity would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of a holder of any claim against such person or entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the chapter 11 cases, the Sale Transaction, or any of the transactions contemplated by any of the Sale Transaction arising on or before the Closing Date. Notwithstanding anything to the contrary in this Order or the Asset Purchase Agreement to the contrary, other than to the extent included in the Purchased Assets, the Debtors shall retain, and shall be deemed to have retained, any and all Claims and Causes of Action.  Furthermore, notwithstanding anything in this Order or the Asset Purchase Agreement to the contrary except for the release provided to Seller and Purchaser in Sections 7.18(b) and 7.18(c) of the Purchaser Agreement, nothing in this Order shall release or be deemed to release the Purchaser or any Debtor from any claims, liabilities or obligations arising under or related to this Order, the Asset Purchase Agreement and the other Transaction Documents.

**Good Faith**

21.     The transactions contemplated by the Transaction Documents are undertaken by the Purchaser Parties without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein by this Order to consummate the Sale Transaction shall not alter, affect, limit, or otherwise impair the validity of the sale of the Purchased Assets to the Purchaser, including the transfer of the Purchased Assets. The Purchaser is a good faith purchaser of the Purchased Assets within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to, and is hereby granted, the full rights, benefits, privileges and protections of section 363(m) of the Bankruptcy Code. The Debtors and the Purchaser have acted, and will be acting, in good faith if they proceed to consummate the Sale Transaction at any time after the entry of this Order.

22.     As a good faith purchaser of the Purchased Assets, the Purchaser has not entered into an agreement with any other potential bidders at the Auction, and has not colluded with any of the other bidders, potential bidders or any other parties interested in the Purchased Assets, and, therefore, neither the Debtors nor any representative of or successor in interest to the Debtors' estates nor any other party in interest shall be entitled to bring any claim or cause of action against the Purchaser or the other Purchaser Parties, and the Sale Transaction may not be avoided, in each case, pursuant to section 363(n) of the Bankruptcy Code, and no party shall be entitled to any damages or other recovery pursuant to section 363(n) of the Bankruptcy Code in respect of the Asset Purchase Agreement, any of the other Transaction Documents or the Sale Transaction.

**Additional Provisions**

23.     Commencing on the Closing Date, the Debtors and the Purchaser are authorized to take such actions as may be necessary or appropriate to obtain a release of any and all Interests in,

26

on or against the Purchased Assets, if any, and to the extent contemplated hereby and by the Asset Purchase Agreement.  This Order (a) shall be effective as a determination that, as of the Closing Date, all Interests of any kind or nature whatsoever existing as to the Purchased Assets prior to the Closing have been, and are, unconditionally released, discharged and terminated, and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all persons and entities, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law or by reason of the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets.  Each and every federal, state and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement and the other Transaction Documents.  The Purchaser and the Debtors shall take such further steps and execute such further documents, assignments, instruments and papers as shall be reasonably requested by the other to implement and effectuate the transactions contemplated in this paragraph.  All Interests of record as of the date of this Order shall be forthwith deemed removed and stricken as against the Purchased Assets.  All persons and entities described in this paragraph are authorized and specifically directed to strike all such recorded Interests against the Purchased Assets from their records, official and otherwise.

24.     If any person or entity that has filed statements or other documents or agreements evidencing Interests in, on or against any of the Purchased Assets does not deliver to the Debtors

or the Purchaser prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all interests and other interests that the person or entity has or may assert with respect to any of the Purchased Assets in any required jurisdiction, the Debtors and/or the Purchaser are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to any of the Purchased Assets in any required jurisdiction. This Order constitutes authorization under all applicable jurisdictions and versions of the Uniform Commercial Code and other applicable law for the Purchaser to file UCC and other applicable termination statements with respect to all Interests in, on, or against the Purchased Assets.

25.    The Debtors will cooperate with the Purchaser and the Purchaser will cooperate with the Debtors, in each case to ensure that the transactions contemplated in the Asset Purchase Agreement and the other Transaction Documents are consummated, and the Debtors will make such modifications or supplements to any bill of sale or other document executed in connection with the Closing to facilitate such consummation as contemplated by the Transaction Documents.

26.    The terms and provisions of the Transaction Documents and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors and their respective affiliates, successors and assigns, their estates, and their creditors and equityholders, the Purchaser, and its respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons or entities asserting Interests in, on or against the Purchased Assets, notwithstanding any subsequent appointment of any trustee(s) (including without limitation any plan administrators, litigation or liquidation trustees appointed during the pendency of, or upon confirmation of a chapter 11 plan in, these chapter 11 cases), examiner(s) or other fiduciary under

28

any chapter of the Bankruptcy Code, as to which trustee(s) (including without limitation any plan administrators, litigation or liquidation trustees appointed during the pendency of, or upon confirmation of a chapter 11 plan in, these chapter 11 cases), examiner(s) or other fiduciary such terms and provisions likewise shall be binding.

27.     The failure specifically to include any particular provisions of the Asset Purchase Agreement or any other Transaction Documents in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Asset Purchase Agreement and the other Transaction Documents be authorized and approved in their entirety.

28.     Following entry of this Order, the Transaction Documents may be modified, amended or supplemented by the parties thereto, in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.  To the extent that any provision of the Asset Purchase Agreement conflicts with or is, in any way, inconsistent with any provision of this Order, this Order shall govern and control.  To the extent that this Order is inconsistent with any prior order or pleading with respect to the Motion, the terms of this Order shall govern.

29.     Neither the Purchaser Parties nor the Debtors shall have an obligation to close the Sale Transaction until all conditions precedent in the Asset Purchase Agreement to each of their respective obligations to close the Sale Transaction have been met, satisfied, or waived in accordance with the terms of the Asset Purchase Agreement.

30.     Nothing in this Order shall modify or waive any closing conditions or termination rights set forth in the Asset Purchase Agreement, and all such conditions and rights shall remain in full force and effect in accordance with their terms.

31.     Nothing contained in any chapter 11 plan confirmed in these chapter 11 cases, any order of this Court confirming such plans, any order dismissing any of these chapter 11 cases or any other order in these chapter 11 cases, including any order entered after any conversion of these chapter 11 cases to a case under chapter 7 of the Bankruptcy Code, shall alter, conflict with, or derogate from, the provisions of the Asset Purchase Agreement or the terms of this Order.  To the extent of any such conflict or derogation, the terms of this Order, and the Asset Purchase Agreement shall govern.  The provisions of this Order, the Asset Purchase Agreement and the other Transaction Documents, and any actions taken pursuant hereto or thereto, shall survive entry of any order which may be entered confirming or consummating any chapter 11 plan of the Debtors, or which may be entered converting these chapter 11 cases from chapter 11 to chapter 7 of the Bankruptcy Code or dismissing these chapter 11 cases, and the terms and provisions of the Asset Purchase Agreement and the other Transaction Documents, as well as the rights and interests granted pursuant to this Order, the Asset Purchase Agreement and the other Transaction Documents, shall continue in these chapter 11 cases or any superseding cases and shall be specifically performable and enforceable against and binding upon the Debtors, their estates, all creditors, all holders of equity interests in the Debtors, all holders of claim(s) (whether known or unknown) against the Debtors, all holders of Interests (whether known or unknown) against, in or on all or any portion of the Purchased Assets, the Purchaser and their respective successors and permitted assigns, and any trustee, responsible officer or other fiduciary hereafter appointed or elected as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code, including without limitation plan fiduciaries, plan administrators, litigation or liquidation trustees appointed during the pendency of, or upon confirmation of a chapter 11 plan in, these chapter 11 cases.

30

32.     [Any and all valid and perfected Interests in the Purchased Assets arising prior to the Closing Date shall attach to any proceeds of the Sale Transaction immediately upon receipt of such proceeds by the Debtors in the order of priority, and with the same validity, force and effect which they may have against such Purchased Assets as of immediately prior to the Closing Date, subject to any rights, claims, and defenses of the Debtors, the Debtors' estates or any trustee for any Debtor, as applicable, may possess with respect thereto; provided, however, that setoff rights will be extinguished to the extent there is no longer mutuality after the consummation of the Sale Transaction in addition to any limitations on the use of such proceeds pursuant to any provision of this Order.]

33.     Notwithstanding the relief granted herein and any actions taken pursuant to such relief, nothing contained in this Sale Order shall constitute, nor is it intended to constitute: (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' right to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim or finding that any particular claim is an administrative expense claim or other priority claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Sale Order; (e) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Sale Order are valid and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection, or to seek avoidance of all such liens.  Any payment made pursuant to this Sale Order should not be construed as an admission as to the validity, priority, or

31

amount of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

34.     The provisions of this Order are nonseverable and mutually dependent.

35.     No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale Transaction.

36.     The Debtors and each other person or entity having duties or responsibilities under the Transaction Documents or this Order, and their respective agents, representatives, and attorneys, are authorized and empowered to carry out all of the provisions of the Asset Purchase Agreement and the other Transaction Documents, to issue, execute, deliver, file and record, as appropriate, the Asset Purchase Agreement, the other Transaction Documents and any related agreements, and to take any action contemplated by the Asset Purchase Agreement, the other Transaction Documents or this Order, and to issue, execute, deliver, file and record, as appropriate, such other certificates, documents, contracts, instruments, releases, deeds, bills of sale, assignments, or other agreements, and to perform such other acts as are consistent with, and necessary, desirable or appropriate to, implement, effectuate and consummate the Transaction Documents and this Order and the transactions contemplated thereby and hereby, all without further application to, or order of, the Court.  Without limiting the generality of the foregoing, this Order shall constitute all approvals and consents, if any, required by applicable business corporation, trust and other laws of applicable governmental units with respect to the implementation and consummation of the Asset Purchase Agreement, the other Transaction Documents and this Order and the transactions contemplated thereby and hereby.  The transfer of the Purchased Assets to the Purchaser pursuant to the Transaction Documents do not require any

consents other than specifically provided for in the Asset Purchase Agreement or as provided for herein.

37.     Notwithstanding the provisions of Bankruptcy Rule 6004 or any applicable provisions of the Local Rules, this Order shall not be stayed for fourteen (14) days after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14) day stay provided in such rules is hereby expressly waived and shall not apply.  Accordingly, the Debtors are authorized and empowered to close the Sale Transaction immediately upon, and following, entry of this Order.  Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay within the time prescribed by law and prior to the Closing or risk its appeal will be foreclosed as moot.

38.     This Court shall retain exclusive jurisdiction to enforce and implement the terms and provisions of this Order, the Asset Purchase Agreement and the other Transaction Documents, and all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connections therewith in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Purchased Assets to the Purchaser free and clear of all Interests, or compel the performance of other obligations owed by the Debtors, (b) compel delivery of the purchase price or performance of other obligations owed to the Debtors, (c) resolve any disputes arising under or related to the Asset Purchase Agreement, or any of the other Transaction Documents except as otherwise provided therein, (d) interpret, implement, and enforce the provisions of this Order, and (e) protect the Purchaser and Purchaser Parties against (i) claims made related to any of the Excluded Liabilities, (ii) any claims of successor or vicarious liability related to the Purchased Assets, or (iii) any Interests (other than Assumed Liabilities) asserted in, on, or against the Debtors or the Purchased Assets, of any kind or nature whatsoever.

33

39.     To the extent the Debtors or any trustee(s), receiver(s), responsible officer(s) or other fiduciary appointed or elected, in these chapter 11 cases or any successor cases, receive, hold, or otherwise come into possession after the Closing of any payment or asset that constitutes Purchased Assets, such payment or asset shall be held in trust for the benefit of the Purchaser and the Debtors or any such trustee(s), receiver(s), responsible officer(s) or other fiduciary shall promptly deliver or otherwise turn over such payment or asset to the Purchaser.

40.     The Debtors are authorized to take all actions necessary or appropriate to effectuate the relief granted pursuant to this Order in accordance with the Motion.

Houston, Texas
Dated: _____, 2023

_____
UNITED STATES BANKRUPTCY JUDGE

34