## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| SURGALIGN HOLDINGS, INC., *et al.*[1] | Case No. 23-90731 (CML) |
| Debtors. | (Jointly Administered) |

## DEBTORS' SECOND OMNIBUS
## OBJECTION TO CLAIMS (MILESTONE CLAIMS)

**This is an objection to your claim. This objection asks the Court to disallow or subordinate the claim that you filed in this bankruptcy case. If you do not file a response within 30 days after the objection was served on you, your claim may be disallowed or subordinated without a hearing.**

**If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within thirty days from the date this objection was served on you. If you do not have electronic filing privileges, you must file a written response that is actually received by the clerk within thirty days from the date this motion was served on you. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on October 26, 2023, at 1:00 p.m. (prevailing Central Time) in Courtroom 401, United States Bankruptcy Court, 515 Rusk, 4th Floor, Houston, Texas 77002. Participation at the hearing will only be permitted by an audio/video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's home page. The meeting code is "JudgeLopez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**

---

[1]  The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number (if any), are:  Surgalign Holdings, Inc. (0607); Surgalign Spine Technologies, Inc. (6543); Pioneer Surgical Technology NewCo Inc.; Spinal Transition and Professional Services LLC; Andi's Belmarall, LLC; Fourth Dimension Spine, LLC (1107); Holo Surgical Inc. (4079); and HoloSurgical Technology Inc. (0952).  The location of the debtors' service address in these chapter 11 cases is:  520 Lake Cook Road, Suite 315, Deerfield, Illinois 60015.

**Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Lopez's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

**This Objection seeks to disallow or subordinate certain proofs of claim, including Claim Nos. 148, 150, 152 and 155.   Claimants receiving this Objection should locate their names and claims on Schedule 1 to the proposed order attached to this Objection.**

The debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases state as follows in support of this omnibus objection (this "**Objection**") to Claim Nos. 148, 150, 152 and 155 (collectively, the "**Disputed Milestone Claims**"), as set forth on Schedule 1 attached to the proposed order (the "**Order**").  In support of this Objection, the Debtors submit the *Declaration of Christopher Thunander in Support of the Debtors' Second Omnibus Objection to Claims (Milestone Claims)* (the "**Thunander Declaration**") attached hereto as **Exhibit A**.

## Relief Requested

1.      By this Objection, the Debtors seek entry of the Order (a) disallowing the Disputed Milestone Claims set forth on Schedule 1 to the Order in their entirety, or, in the alternative, (b) (i) reducing the Disputed Milestone Claims, as set forth below, and (ii) subordinating any reduced amounts remaining under the Disputed Milestone Claims, and (c) granting such other and further relief as the Court deems just and proper.

## Jurisdiction, Venue, and Predicates for Relief

2.      The United States Bankruptcy Court for the Southern District of Texas (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b).  The Debtors confirm their consent to the entry of a final order by the Court.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.     The bases for the relief requested herein are sections 501, 502(b) and 510(b) of title 11 of the United States Code (the "**Bankruptcy Code**"), rules 3001 and 3007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and rule 3007-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "**Bankruptcy Local Rules**").

<u>Background</u>

**A.     Procedural Background**

5.     On June 19, 2023 (the "**Petition Date**"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Court.  On June 29, 2023, the United States Trustee for the Southern District of Texas (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (the "**Committee**") [Docket No. 121].  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The chapter 11 cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

6.     Additional factual background and information regarding the Debtors, including their business operations, their corporate and capital structure, and the events leading to the commencement of these chapter 11 cases, is set forth in detail in the *Declaration of Paul Rundell, Managing Director of Alvarez & Marsal North America, LLC, in Support of Chapter 11 Petitions and Requests for First Day Relief* [Docket No. 23].

7.     On June 30, 2023, the Court entered the *Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form of and Manner for Filing Proofs of Claim, Including Section 503(b)(9) Requests and (IV) Approving Notice of Bar Dates* [Docket No. 130] (the "**Bar Date Order**"), (i) requiring any person or entity

(including, without limitation, individuals, partnerships, corporations, joint ventures, and trusts), other than a governmental unit, to file a proof of claim based on prepetition claims against the Debtors, including a claim entitled to priority under section 503(b)(9) of the Bankruptcy Code, on or prior to August 16, 2023 at 5:00 p.m. (prevailing Central Time), and (ii) establishing December 19, 2023 at 5:00 p.m. (prevailing Central Time) as the deadline by which any governmental unit (as such term is defined in section 101(27) of the Bankruptcy Code) is required to file a proof of claims based on prepetition claims against the Debtors. The Debtors caused notice of the bar dates to be provided in accordance with the procedures outlined in the Bar Date Order. [Docket No. 220].

8.      On July 17, 2023, the Debtors filed their respective schedules of assets and liabilities and statements of financial affairs (the "**Schedules and Statements**").

9.      On August 31, 2023, the Court entered the *Order (I) Approving Omnibus Claims Objection Procedures and (II) Authorizing the Debtors to File Substantive Omnibus Objections to Claims* [Docket No. 403] (the "**Omnibus Claims Objection Procedures Order**"). This Objection is filed in accordance with the Omnibus Claims Objections Procedures Order and the omnibus claims objection procedures set forth therein (the "**Objection Procedures**").

10.      On August 9, 2023, the Court entered the *Order (I) Authorizing and Approving the Sale of Certain of the Debtors' Assets Related to Debtors' Global Hardware Business to Xtant Medical Holdings, Inc. Free and Clear of All Liens, Claims, Encumbrances, and Interests; (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith; (III) Authorizing the Sale Transaction; and (IV) Granting Related Relief* [Docket No. 329], approving the sale of the Debtors' hardware assets (and equity

interests in certain of the Debtors' non-Debtor affiliates) to Xtant Medical Holdings, Inc. ("**Xtant**") for a purchase price of $5 million (the "**Hardware Assets Sal**e").

11.     On August 10, 2023, the Bankruptcy Court entered the Order *(I) Authorizing and Approving the Sale of Certain of the Debtors' Digital Health Business Assets to Augmedics, Inc. Free and Clear of All Liens, Claims, Encumbrances, and Interests; (II) Authorizing the Sale Transaction; and (III) Granting Related Relief* [Docket No. 338], approving the sale of certain of the Debtors' digital assets to Augmedics, Inc. ("**Augmedics**") for a purchase price of $1.5 million (the "**Digital Assets Sale**").

12.     On August 31, 2023, the Court entered the *Order (I) Conditionally Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Notice Procedures, (III) Approving the Form of Ballot and Notices, (IV) Approving Certain Dates and Deadlines in Connection with Solicitation and Confirmation of the Plan and (V) Scheduling a Combined Hearing on (A) Final Approval of the Disclosure Statement and (B) Confirmation of the Plan* [Docket No. 406] (the "**Conditional Disclosure Statement Order**").  Pursuant to the Conditional Disclosure Statement Order, the Debtors commenced solicitation of the *Combined Disclosure Statement and Joint Chapter 11 Plan of Surgalign Holdings, Inc. and Its Affiliated Debtors* [Docket No. 431] (as may be amended, supplemented, or modified from time to time, the "**Disclosure Statement and Plan**," or the "**Plan**," as applicable).  Under the Plan, claims that are subordinated pursuant to section 510(b) of the Bankruptcy Code are classified in Class 8 Section 510(b) Claims and will recover pursuant to the treatment afforded claims in such class.

**B.     Claims Review Process**

13.     The Debtors each maintained, in the ordinary course of their business, books and records, including the software suite known as Systems Applications and Products and more

commonly referred to as SAP (collectively, the "**Books and Records**"), that reflect, among other things, the Debtors' liabilities and the amounts owed to their creditors.

14.     The Debtors' register of claims (the "**Claims Register**") reflects that, to date, approximately 197 proofs of claim (collectively, the "**Proofs of Claim**") have been filed in these chapter 11 cases asserting claims against the Debtors.  The Debtors and their advisors have been comprehensively reviewing and reconciling all claims filed in these chapter 11 cases, as well as comparing the Proofs of Claim to the Schedules and Statements and Books and Records to determine the validity of the asserted claims.  This reconciliation process includes identifying categories of claims that may be, among other things, disallowed and expunged, reduced and allowed, or reclassified.[2]

15.     As part of their ongoing review, the Debtors have reviewed the Disputed Milestone Claims listed on Schedule 1 to the attached Order and have concluded that each such claim is appropriately objected to on the basis set forth below.[3]

**C.      Stock Purchase Agreement and Related Proofs of Claim**

16.     On December 30, 2021, Debtor Surgalign Holdings, Inc. ("**Surgalign Holdings**") acquired an ownership interest in Inteneural Network Inc. ("**INN**"), pursuant to the *Stock Purchase Agreement* by and among Surgalign Holdings as buyer, and Dearborn Capital Management LLC ("**Dearborn**") and Neva, LLC ("**Neva**" and, together with Dearborn, the "**Sellers**"), the Sellers' respective sole group members, Krzysztof Siemionow and Pawel Lewicki, and INN (the "**SPA**").[4]

---

[2]     Contemporaneously herewith, the Debtors have filed the *Debtors' First Omnibus Objection to Claims (No Liability Claims)*.

[3]     The Debtors reserve the right to amend, modify, or supplement this Objection, and to file additional objections regarding the Disputed Milestone Claims on any basis after further investigation.

[4]     Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Disclosure Statement and Plan or the SPA, which is attached to the Disputed Milestone Claims, as applicable.

Pursuant to the SPA, Surgalign Holdings acquired 42% of the equity interests in and obtained a non-exclusive license to use INN's proprietary artificial intelligence technology.

17.     As consideration for the 42% ownership stake purchased under the SPA, Surgalign Holdings paid total consideration of $19.9 million, consisting of: (a) $5.0 million in cash, (b) 6,820,792 shares of Surgalign Holdings' common stock with a fair value of $4.9 million and (c) a promissory note issued to each of the Sellers, each in the principal amount of $5,305,787.16 (each, an "**INN Seller Note**" and together, the "**INN Seller Notes**").  The INN Seller Notes were issued in an aggregate principal amount of $10,611,574.32, or fair value principal amount of $10 million.

18.     Under the SPA, Surgalign Holdings agreed to acquire 100% of the shares of common stock of INN over a period of four tranches, or closing dates, each of which were tied to certain milestones (each, a "**Milestone**" and collectively, the "**Milestones**").  As set forth above, the first Milestone payment was made by the Debtors as consideration for the 42% equity ownership stake in INN.  Each of the three additional Milestones are commercial in nature and relate to various clinical, regulatory and revenue targets.  With the achievement of each of the three outstanding Milestones and the satisfaction of related contingencies specified therein, the SPA provides that Surgalign Holdings would acquire an additional 19.3% equity interest in INN upon its payment of $19.3 million (each payment, a "**Milestone Payment**").  *See* SPA, Art. II; Art. VIII.  The second Milestone requires Surgalign Holdings to complete the commercial release of the Holo Viewer Intracranial Product on or before June 30, 2023.  *Id.*  The third Milestone requires Surgalign Holdings to reach $19.3 million in revenue on or before December 31, 2025.  *Id.*  Finally, the fourth Milestone requires Surgalign Holdings to reach $38.6 million in total revenue on or before June 30, 2027.  *Id.*

19.     On August 15, 2023, Neva, Dearborn, Pawel Lewicki, and Krzysztof Siemionow (collectively, the "**Claimants**") each filed a Disputed Milestone Claim asserting $73,000,000.00 against Surgalign Holdings on account of identical liabilities.  *See* Claim Nos. 148, 150, 152, and 155.  The Disputed Milestone Claims each assert "multiple defaults" under the SPA.  *Id.* at 4.  The Disputed Milestone Claims indicate that Surgalign Holdings "failed to meet any of the deadlines or reach any of the milestones as required by the Stock Purchase Agreement."  *Id.*

20.     On August 15, 2023, Neva and Dearborn also filed the INN Seller Notes Claims, each of which assert $6,177,704.85 against Surgalign Holdings on account of the INN Seller Notes issued under the SPA.  *See* Claim Nos. 151, 153.

## Objection

### A. The Debtors Do Not Have Liability for the Disputed Milestone Claims, or, Alternatively, Any Liability of the Debtors Is Significantly Less Than $73 Million

21.     Section 502 of the Bankruptcy Code provides, in pertinent part, as follows: "[a] claim or interest, proof of which is filed under section 501 of [the Bankruptcy Code], is deemed allowed, unless a party in interest . . . objects."  11 U.S.C. § 502.  Section 502(b)(1) provides that a court shall not allow a claim if "such claim is unenforceable against the debtor and property of the debtor . . ."  *See* 11 U.S.C. § 502(b)(1).  Bankruptcy Rule 3007 provides certain grounds upon which "objections to more than one claim may be joined in an omnibus objection."  Fed. R. Bankr. P. 3007(d).  The Objection Procedures provide that the Debtors may file omnibus objections to claims on the grounds that, *inter alia*, the claims "seek recovery of amounts for which the Debtors are not liable."  *See* Objection Procedures ¶ 1.a.

22.     A proof of claim loses the presumption of prima facie validity under Bankruptcy Rule 3001(f) if an objecting party refutes at least one of the allegations that is essential to the claim's legal sufficiency.  *See In re Fidelity Holding Co., Ltd.*, 837 F.2d 696, 698 (5th Cir. 1988).

Once such an allegation is refuted, the burden reverts to the claimant to prove the validity of its claim by a preponderance of the evidence. *Id.* Despite this shifting burden during the claim objection process, "the ultimate burden of proof always lies with the claimant." *In re Armstrong*, 347 B.R. 581, 583 (Bankr. N.D. Tex. 2006) (citing *Raleigh v. Ill. Dep't of Rev.*, 530 U.S. 15 (2000)).

23.     As an initial matter, the Disputed Milestone Claims assert "multiple defaults" under the SPA, noting that Surgalign Holdings "failed to meet any of the deadlines or reach any of the milestones as required by the Stock Purchase Agreement." *See* Claim Nos. 148, 150, 152, and 155 at 4.  Except for this conclusory statement, the Disputed Milestone Claims do not articulate the basis of the Debtors' liability with specificity and provide no explanation of the calculations supporting the asserted claim amount of $73 million. *See id.*

24.     From what the Debtors can glean, it appears that the Claimants are seeking reimbursement for the three outstanding contingent Milestone Payments under the SPA. The Milestones under the SPA are linked to the achievement of certain commercial requirements. *See* SPA, Art. II.  If the Milestones are achieved, the SPA provides that Surgalign Holdings will fund the Milestone Payment and deliver to each Seller their proportionate share thereof. *See* SPA, Art. II.  In exchange, the SPA provides that Sellers will transfer a percentage of equity interest in INN to Surgalign Holdings. *See* SPA, Art. II, Art. VIII.

25.     Failure to achieve any of the Milestones precludes the transfer of additional equity interests in INN at the agreed-upon price under the SPA to Surgalign Holdings and relatedly, the obligation of Surgalign Holdings to transfer the Milestone Payments. *See generally* SPA.  There is no requirement under the SPA that the Debtors transfer the Milestone Payments to the Sellers if the Milestones (and events that trigger such Milestones, such as (a) the commercial release of the

Holo Viewer Intracranial Product on or before June 30, 2023, (b) reaching $19.3 million in revenue on or before December 31, 2025, and (c) reaching $38.6 million in total revenue on or before June 30, 2027) do not occur.  Given that the Milestones have not occurred and could never occur since the Debtors have consummated the sale of certain of their hardware and digital assets and are in the process of winding down and liquidating the rest of their assets and businesses, including the remaining digital business in Poland,[5] the Debtors have no liability for the Milestone Payments and could never have any liability for such payments as the conditions to such Milestone Payments will never be met.  Accordingly, to the extent that the Disputed Milestone Claims are asserting any claims for such liability, they should be disallowed and expunged in their entirety.

26.     Alternatively, although it is unclear, to the extent that the Disputed Milestone Claims are making a claim for damages related to Surgalign Holdings' alleged obligation under the SPA to cause a buyer in a "Buyer Sale"[6] to assume the SPA, SPA, Art. VI § 6.03(c),[7] such

---

[5]     On September 5, 2023, the Debtors filed the *Notice of Commencement of Foreign Proceeding*, indicating that HoloSurgical Technology Polska sp Zoo, which is incorporated under the laws of Poland and is a wholly owned subsidiary of Debtor HoloSurgical Technology Inc., filed a bankruptcy petition and initiated insolvency proceedings in the District Court (Sqd Rejonowy) of the Capital City of Warsaw, 18th Commercial Division in Warsaw Poland pursuant to the Bankruptcy Law of 28 February 2003. Docket No. 435.

[6]     A "Buyer Sale" means any one of the following, "whether in one or a series of transactions, directly or indirectly: (a) consummation of a merger or consolidation of Buyer with or into any other corporation or other entity in which holders of Buyer's voting securities  immediately prior to such merger or consolidation will not, directly or indirectly (including  through one or more other entities), continue to own at least a majority of the outstanding voting  securities of Buyer or the entity resulting from such transaction (it being understood that ownership  of the securities of an entity that directly or indirectly owns securities of Buyer or the resulting  entity shall constitute an indirect holding for this purpose); (b) the acquisition by any unrelated  Person or any group of unrelated Persons (excluding, for the avoidance of doubt, any of the Sellers, Pawel Lewicki or Kris Siemionow or any of their respective affiliates or any group of which any  of them is a member), acting together in any transaction or related series of transactions, of such  quantity of Buyer's voting securities as causes such person, or group of persons, to own, directly  or indirectly (including through one or more other entities), as of the time immediately after such transaction or related series of transactions, a majority of the outstanding voting securities of  Buyer; or (c) a sale, transfer or other disposition of Holo Surgical Inc. and the Group Companies  or all or substantially all of the assets of Holo Surgical Inc. and the Group Companies on a  consolidated basis, except where such sale, transfer or other disposition is to a direct or indirect  wholly owned Subsidiary of Buyer."  SPA, Art. I.

[7]     Section 6.03(c) of the SPA provides that "[i]f, at any time during the six (6)-year period immediately following the First Closing Date, a Buyer Sale is consummated and, at such time there are Milestones that have not been obtained or occurred . . . Buyer shall ensure that the surviving Person in the applicable merger or consolidation

10

claims for such liability should also be disallowed and expunged in their entirety, or, in the alternative, substantially reduced from the asserted amount of $73 million.

27.      **_First_**, each of the Hardware Asset Sale and the Digital Asset Sale (together, the "**Sales**") were conducted according to a Court-approved marketing and sale process.  Each of the Claimants received notice of the Sales and were allowed to (and did) participate.  Counsel to the Claimants requested, and was granted authorization, to observe the auction although no Claimant had submitted a bid for either the hardware or digital assets of the Debtors that were being sold.  Likewise, counsel to the Claimants had notice of the objection deadline related to the Sales and hearing to consider such Sales.  The Claimants failed to raise any objection at any point during the Sales.  Accordingly, the Court approved the Sales to Xtant and Augmedics free and clear of any liens, claims, and encumbrances pursuant to section 363 of the Bankruptcy Code, including any claims that may be asserted in connection with the SPA.  *See* Docket Nos. 329, 338. In doing so, after notice and hearing, the Court determined that all parties in interest had a fair and reasonable opportunity to object and to be heard with respect to the Sales.  Docket No. 329 ¶ K; Docket No. 338 ¶ J.  None of the Claimants raised a formal or informal objection to either of the Sales, despite having ample opportunity to do so, including during the auction (which Claimants' counsel attended) or during any one of the multiple hearings before the Court.  As such, the Claimants waived their right to assert such objections and cannot do so now *vis-à-vis* the Disputed Milestone Claims.

28.      **_Second_**, even if the Claimants had not waived all such objections (which they did), the Disputed Milestone Claims should still be disallowed or, in the alternative, reduced.  The Sales

---

or transferee in the applicable asset or equity transfer in respect of such Buyer Sale assumes the obligations of Buyer set forth in this Section 6.03." SPA, Art. VI.

resulted from a Court-supervised and market-tested process and constitute the "highest and best offer[s]" for each of the hardware and digital assets. Docket No. 329 ¶¶ G, M, Y; Docket No. 338 ¶¶ L, G, V. In the aggregate, the cash proceeds from the Sales total $6.5 million. *See* Docket Nos. 329, 338. Neither of the Sales would have been consummated if the Buyers were compelled to assume the SPA or otherwise pay up to $73 million thereunder, whether in these chapter 11 cases or outside of bankruptcy. If the Claimants are in fact asserting a claim for damages under this scenario as the basis for the Disputed Milestone Claims, any such damages would necessarily be limited, in the very best scenario, to the value of the total proceeds resulting from the Sales (*i.e.,* no more than $6.5 million), at best.

## B. To the Extent the Debtors Have Any Liability for the Disputed Milestone Claims, Those Claims Are Subject to Subordination Under Section 510(b) of the Bankruptcy Code

29. To the extent that the Disputed Milestone Claims are not disallowed in their entirety, any reduced amounts remaining under the Disputed Milestone Claims are subject to subordination under section 510(b) of the Bankruptcy Code. The Disputed Milestone Claims assert damages arising from the purchase or sale of equity securities interests in an affiliate of the Debtors. Accordingly, assuming *arguendo* that the assertions of the Disputed Claims are true and correct (which they are not), the Disputed Claims should be subordinated to the claims of general unsecured creditors. Section 510(b) of the Bankruptcy Code states:

> [A] claim . . . for damages arising from the purchase or sale of [a security of the debtor or an affiliate of the debtor] . . shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

11 U.S.C. § 510(b).

30.     The Fifth Circuit utilizes a three-step process to consider whether a claim falls within the scope of section 510(b) of the Bankruptcy Code.  *In re Linn Energy*, 936 F.3d 334, 341(5th Cir. 2019) (citing *In re Am. Hous. Found.*, 785 F.3d 143, 153–56 (5th Cir. 2015)).  This inquiry examines whether the claim (1) is for "damages," (2) involves "securities," and (3) "arises from" a purchase or sale having a nexus with those securities.  *Id.*  Nevertheless, the Fifth Circuit is "mindful that a formulaic check-the-box approach to subordination under the statue is impossible."  *Id.* at 341.  Indeed, "[t]he most important question is this: Does the nature of the [claimant's] interest make the [claimant] more like an investor or creditor?"  *Id.*

31.     The Disputed Milestone Claims each assert a breach of the agreement relating to the purchase and sale of INN stock—*i.e.*, a security of an affiliate of a Debtor.  Accordingly, all three steps are satisfied with respect to the Disputed Milestone Claims.  ***First***, the Fifth Circuit acknowledges that courts have adopted a "broad reading of the damages category" and "the circuit courts agree that a claim arising from the purchase or sale of a security can include a claim predicated on post-issuance conduct . . . such as breach of contract," as asserted in the Disputed Milestone Claims.  *In re SeaQuest Diving LP*, 579 F.3d 411, 421 (5th Cir. 2009) (internal quotations and citations omitted).   Accordingly, the Disputed Milestone Claims constitute claims for damages within the meaning of section 510(b).  *See, e.g., Linn Energy*, 936 at 341-42 (identifying claims for breach of contract as "damages" claims for purposes of section 510(b)).

32.     ***Second***, the equity interests transferred under the SPA are the stock of an affiliate of a Debtor and, therefore, meet the requirement of section 510(b) of the Bankruptcy Code.  Section 101(49)(a) of the Bankruptcy Code defines a "security" as including a stock or note. 11 U.S.C § 101(49)(A).   The Bankruptcy Code defines "affiliate," in relevant part, as a "corporation 20 percent or more of whose outstanding voting securities are directly or indirectly

owned, controlled, or held with power to vote, by the debtor . . . ."  11 U.S.C. § 101(2)(B).  Given that Surgalign Holdings owns 42% of INN's common stock, INN is an affiliate of Debtor Surgalign Holdings under section 101(2)(B) of the Bankruptcy Code.  *See also In re VF Brands, Inc.*, 275 B.R. 725, 727 (Bankr. D. Del. 2002) (stating that "[t]he language of section 510(b) applies equally to claims arising from purchase of the stock of an affiliate, including a subsidiary, of the debtor as it does to the purchase of stock of the debtor itself").

33.  ***Finally***, the Disputed Milestone Claims "arise from" a purported harm incurred in connection with the purchase or sale of a security.  The Fifth Circuit has adopted a "broad view" when assessing whether a claim "arises from" the sale or purchase of a security for purposes of 510(b).  *In re Caprock Oil Tools, Inc.*, 585 B.R. 823, 830 (Bankr. S.D. Tex. 2018) (citing *SeaQuest Diving*, 579 F.3d at 421).  The Disputed Milestone Claims clearly "arise from" the purchase or sale of a security—the Disputed Claims are premised on the SPA and could not be asserted without the SPA.  *See, e.g.*, *In re KIT Digital, Inc.*, 497 B.R. 170, 179 (Bankr. S.D.N.Y. 2013) ("The clause 'arising from the purchase or sale' is not ambiguous at all when it's applied to an alleged breach of the agreement of purchase or sale itself.").

34.  Accordingly, to the extent that the Disputed Milestone Claims are not disallowed and expunged in their entirety, any reduced amounts remaining under the Disputed Milestone Claims should subordinated pursuant to section 510(b) of the Bankruptcy Code.

## **<u>Reservation of Rights</u>**

30.  By this Objection, the Debtors object to the Disputed Milestone Claims solely for the reasons identified herein.  Regardless of whether one or more of the bases for objection stated herein is overruled, or otherwise not sustained, the Debtors reserve the right to further (i) object to the claim amount, and (ii) amend, modify, or supplement this Objection, and to file additional

objections regarding the Disputed Milestone Claims on any basis at a later date.  *See* Omnibus Claims Objections Procedures Order ¶ 7.  Further, the Debtors reserve their rights to object to any proof of claim, including any Disputed Milestone Claim listed on <u>Schedule 1</u> to the attached Order, on any grounds whatsoever at a later date, including, among other things, based on amount, priority, classification, or otherwise.

31.     Nothing in this Objection shall be deemed: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any claim is of a type specified or defined in the Objection or any order granting the relief requested by the Objection; (e) a waiver of any claim or cause of action that may exist against any creditor or interest holder; (f) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (g) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) are valid and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.

### **<u>Separate Contested Matter</u>**

32.     To the extent that a response is filed regarding any Disputed Milestone Claim and the Debtors are unable to resolve any such response, each such Disputed Milestone Claim, and the Objection as it pertains to such Disputed Milestone Claim, will constitute a separate contested matter as contemplated by Bankruptcy Rule 9014.  The Debtors request that any order entered by the Court regarding an objection be deemed a separate order with respect to each proof of claim.

## **Notice**

33.     The Debtors will provide notice of this Objection to:  (a) the United States Trustee for the Southern District of Texas; (b) Pachulski Stang Ziehl & Jones LLP, as counsel to the Committee; (c) the United States Attorney's Office for the Southern District of Texas; (d) the state attorneys general for the states in which the Debtors operate; (e) the Internal Revenue Service; (f) the United States Securities and Exchange Commission; (g) Neva, LLC; (h) Dearborn Capital Management, LLC; (i) Krzysztof Siemionow; (j) Pawel Lewicki; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002 and Bankruptcy Local Rule 9013-1(d).  In light of the nature of the relief requested, no other or further notice need be provided.

## **Conclusion**

34.     The Debtors request that the Court enter the Order granting the relief requested in this Objection and such other and further relief as the Court deems appropriate under the circumstances.

Houston, Texas
September 10, 2023

*/s/ Veronica A. Polnick*

**JACKSON WALKER LLP**

Veronica A. Polnick (TX Bar No. 24079148)
J. Machir Stull (TX Bar No. 24070697)
Matthew D. Cavenaugh (TX Bar No. 24062656)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:      (713) 752-4200
Email:             vpolnick@jw.com
                       mstull@jw.com
                       mcavenaugh@jw.com

*Co-Counsel to the Debtors and*
*Debtors in Possession*

**WHITE & CASE LLP**

Gregory F. Pesce (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone:      (312) 881-5400
Email:             gregory.pesce@whitecase.com
                       laura.baccash@whitecase.com

Charles Koster (TX Bar No. 24128278)
609 Main Street, Suite 2900
Houston, Texas 77002
Telephone:      (713) 496-9700
Email:             charles.koster@whitecase.com

Barrett Lingle (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone:      (212) 819-8200
Email:             barrett.lingle@whitecase.com

*Counsel to the Debtors and*
*Debtors in Possession*

## **Certificate of Service**

I certify that on September 10, 2023, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ *Veronica A. Polnick*
Veronica A. Polnick

## Exhibit A

**Thunander Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| SURGALIGN HOLDINGS, INC., *et al.*[1] | ) Case No. 23-90731 (CML) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**DECLARATION OF CHRISTOPHER THUNANDER
IN SUPPORT OF THE DEBTORS' SECOND OMNIBUS
OBJECTION TO CLAIMS (MILESTONE CLAIMS)**

I, Christopher Thunander, hereby declare under penalty of perjury:

1.      I am the Chief Accounting Officer for the debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases.  As the Chief Accounting Officer, I am responsible for the overall financial and accounting strategy at the Debtors, overseeing all accounting functions, guiding the controller, treasury, tax, and internal audit functions of the Debtors.

2.      I am generally familiar with the Debtors' day-to-day operations, financing arrangements, business affairs, and Books and Records that reflect, among other things, the Debtors' liabilities and the amount thereof owed to their creditors as of the Petition Date.  I have read the *Debtors' Second Omnibus Objection to Claims (Milestone Claims)* (the "**Objection**"), filed contemporaneously herewith.[2]

---

[1]     The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number (if any), are:  Surgalign Holdings, Inc. (0607); Surgalign Spine Technologies, Inc. (6543); Pioneer Surgical Technology NewCo Inc.; Spinal Transition and Professional Services LLC; Andi's Belmarall, LLC; Fourth Dimension Spine, LLC (1107); Holo Surgical Inc. (4079); and HoloSurgical Technology Inc. (0952).  The location of the debtors' service address in these chapter 11 cases is:  520 Lake Cook Road, Suite 315, Deerfield, Illinois 60015.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Objection.

3.      Except as otherwise indicated herein, all facts set forth in this Declaration are based upon my personal knowledge, my discussions with other members of the Debtors' management, employees, and advisors, and my review of relevant documents and information maintained by the Debtors, including the Debtors' Schedules and Statements and the Debtors' Books and Records.   To the best of my knowledge, information, and belief, the assertions made in the Objection are accurate.

4.      In evaluating the Disputed Milestone Claims, the Debtors and their advisors have reviewed the Debtors' Schedules and Statements and Books and Records, including the Debtors' accounts payable aging report and payment history, the relevant Proofs of Claim, the supporting documentation provided by each claimant (if any), and the Debtors' SAP, or Systems Applications and Products software, and have determined that each Disputed Milestone Claim should be disallowed.  I believe that the disallowance of the Disputed Milestone Claims on the terms set forth in the Objection is appropriate.

5.      To the best of my knowledge, information, and belief, the Debtors have reviewed the Disputed Milestone Claims, their Schedules and Statements, and their Books and Records and do not believe that the Disputed Milestone Claims are liabilities of the Debtors.

6.      The Disputed Milestone Claims assert defaults in connection with the *Stock Purchase Agreement*, dated as of December 30, 2021, by and among Surgalign Holdings, Inc., as buyer, and Dearborn Capital Management LLC and Neva, LLC as Sellers, Krzysztof Siemionow and Pawel Lewicki, each a Seller Group Member, and INN (the "**SPA**"), none of which give rise to liabilities of the Debtors.

7.      Pursuant to the SPA, Surgalign Holdings acquired ownership of 42% of the equity interests in INN.  Under the SPA, Surgalign Holdings paid consideration totaling $19.9 million,

consisting of: (a) $5.0 million in cash, (b) 6,820,792 shares of Surgalign Holdings' common stock with a fair value of $4.9 million, and (c) an INN Seller Note issued to each of the Sellers in principal amount of $5,305,787.16.  The INN Seller Notes were issued in an aggregate principal amount of $10,611,574.32, or fair value principal amount of $10 million.

8.     The SPA contemplates that, subject to certain contingencies, Surgalign Holdings will purchase up to 100% of the equity interests in INN if additional clinical, regulatory, and revenue Milestones were met.  With the achievement of each of Milestone and the satisfaction of the related contingencies, the SPA provides that Surgalign Holding will acquire an additional 19.3% equity interest in INN for $19.3 million.

9.     To the best of my knowledge, and belief, and insofar as I have been able to ascertain after reasonable inquiry, the outstanding Milestones have not been met or otherwise satisfied and no related payments are due to the Sellers in connection therewith.

10.     Given that the Milestones have not occurred and could never occur since the Debtors have consummated the sale of certain of their hardware and digital assets and are in the process of winding down and liquidating the rest of their assets and businesses, the Debtors have no liability for the Milestone Payments and could never have any liability for such payments as the conditions to such Milestone Payments will never be met.

11.     Further, to the best of my knowledge, information, and belief, and insofar as I have been able to ascertain after reasonable inquiry (including the Debtors', their advisors' and my review of the Disputed Milestone Claims and all supporting information and documentation provided therewith), the Disputed Milestone Claims reflect Proofs of Claim that each assert a claim against the Debtors for damages arising from the purchase or sale of a security of an affiliate of a Debtor.

12.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the facts set forth in the foregoing declaration are true and correct to the best of my knowledge, information, and belief.

Dated: September 10, 2023
      Houston, Texas

/s/ *Christopher Thunander*
Christopher Thunander
Chief Accounting Officer of the Debtor