**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| SURGALIGN HOLDINGS, INC., *et al.*[1] | ) | Case No. 23-90731 (CML) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**NOTICE OF FILING OF FIRST AMENDED PLAN SUPPLEMENT FOR
THE COMBINED DISCLOSURE STATEMENT AND JOINT CHAPTER 11
PLAN OF SURGALIGN HOLDINGS, INC. AND ITS AFFILIATED DEBTORS**

      **PLEASE TAKE NOTICE** that on August 29, 2023, the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") filed the *Combined Disclosure Statement and Joint Chapter 11 Plan of Surgalign Holdings, Inc. and Its Affiliated Debtors* [Docket No. 391] (as may be amended, supplemented, or modified from time to time and including all exhibits and supplements thereto, the "**Plan**" or "**Disclosure Statement**" or "**Plan and Disclosure Statement**," as applicable")[2] in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "**Bankruptcy Court**").

      **PLEASE TAKE FURTHER NOTICE** that on August 31, 2023, the Bankruptcy Court entered an order [Docket No. 406] (the "**Disclosure Statement Order**")[3] (a) conditionally approving the Disclosure Statement, (b) establishing the Voting Record Date, the Voting Deadline, and other related dates in connection with final approval of the Disclosure Statement and confirmation of the Plan, (c) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to final approval of the Disclosure Statement and confirmation of the Plan, and (d) approving the form and manner and related ancillary documents.

      **PLEASE TAKE FURTHER NOTICE** that on September 20, 2023, in accordance with the Plan and the Disclosure Statement Order, the Debtors filed the *Notice of Filing of Plan Supplement for the Combined Disclosure Statement and Joint Chapter 11 Plan of Surgalign Holdings, Inc. and Its Affiliated Debtors* [Docket No. 461], in support of the Plan.

---

[1]    The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number (if any), are: Surgalign Holdings, Inc. (0607); Surgalign Spine Technologies, Inc. (6543); Pioneer Surgical Technology NewCo Inc.; Spinal Transition and Professional Services LLC; Andi's Belmarall, LLC; Fourth Dimension Spine, LLC (1107); Holo Surgical Inc. (4079); and HoloSurgical Technology Inc. (0952). The location of the debtors' service address in these chapter 11 cases is: 520 Lake Cook Road, Suite 315, Deerfield, Illinois 60015.

[2]    The Debtors subsequently filed a solicitation version of the Plan and Disclosure Statement on September 1, 2023. *See* Docket No. 431.

[3]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan and Disclosure Statement or the Disclosure Statement Order, as applicable.

**PLEASE TAKE FURTHER NOTICE** that, as contemplated by the Plan and the Disclosure Statement Order, the Debtors hereby file this Notice of First Amended Plan Supplement, which includes the following documents, as may be amended, modified, or supplemented from time to time, which replace and supersede all previously filed versions of such documents, as applicable:

| Exhibit | Description |
|---|---|
| A | Plan Administrator Agreement |
| A-1 | Redline to the Plan Administrator Agreement Filed on September 20, 2023 |

**PLEASE TAKE FURTHER NOTICE** that the documents, or portions thereof, contained in the Plan Supplement are not final and remain subject to ongoing review by the Debtors and interested parties, including as provided for in the Plan. The Debtors reserve the right, subject to the terms and conditions set forth in the Plan, the Bankruptcy Code, and the Bankruptcy Rules, to alter, amend, modify, or supplement the Plan Supplement, and any of the documents and designations contained therein, at any time before the Effective Date of the Plan, or any such other date as may be provided for by the Plan or by order of the Bankruptcy Court. If any document in this Plan Supplement is altered, amended, modified, or supplemented in any material respect prior to the date of the Combined Hearing (defined below), the Debtors will file a redline of such document with the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that any objections to confirmation of the Plan and the adequacy of the Disclosure Statement on a final basis must: (a) be in writing; (b) conform to the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any orders of the Bankruptcy Court; (c) state, with particularity, the basis and nature of any objection to the Plan or Disclosure Statement and, if practicable, a proposed modification to the Plan or Disclosure Statement that would resolve such objection; and (d) be filed with the Bankruptcy Court on or before **September 25, 2023 at 12:00 p.m. (prevailing Central Time)** (the "**Plan and Disclosure Statement Objection Deadline**").

**PLEASE TAKE FURTHER NOTICE** that a hearing to consider confirmation of the Plan and the adequacy of the Disclosure Statement on a final basis, and any objections to the Plan and/or Disclosure Statement, will be held on **September 27, 2023 at 9:00 a.m. (prevailing Central Time)** before the Honorable Christopher M. Lopez, United States Bankruptcy Judge, in Courtroom 401 of the United States Bankruptcy Court, 515 Rusk Avenue, Houston, Texas 77002 (the "**Combined Hearing**").

**PLEASE TAKE FURTHER NOTICE** that the Combined Hearing may be adjourned from time to time without further notice other than an announcement of the adjourned date or dates in open court or by a notice of adjournment or notice of agenda of matters scheduled for hearing filed by the Debtors with the Bankruptcy Court and available on the electronic case filing docket. The adjourned date or dates will be available on the electronic case filing docket and the Debtors' case website at https://restructuring.ra.kroll.com/surgalign/. Please be further advised that the Plan may be further modified, if necessary, pursuant to section 1127 of the Bankruptcy Code prior to, during, or as a result of the Combined Hearing, without further notice to parties in interest.

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain copies of the Disclosure Statement Order, the Plan and Disclosure Statement, the Solicitation and Voting Procedures, the Plan Supplement, or related documents, such materials are available free of charge by: (a) accessing the Debtors' restructuring website at https://restructuring.ra.kroll.com/surgalign; (b) writing to Surgalign Holdings, Inc., c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232; (c) calling (833) 939-6015 (U.S./Canada toll free) or +1 (646) 440-4843 (International, for calls originating outside of the U.S./Canada); or (d) emailing surgaligninfo@ra.kroll.com (with "Surgalign Holdings, Inc. Solicitation" in the subject line). You may also obtain copies of any pleadings filed in the chapter 11 cases for a fee via PACER at http://www.txs.uscourts.gov.

---

**ARTICLE XII** OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND **ARTICLE XII.C** CONTAINS A THIRD-PARTY RELEASE. YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.

THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE SOLICITATION AGENT.

---

Houston, Texas
September 22, 2023

*/s/ Veronica A. Polnick*

| | |
|---|---|
| **JACKSON WALKER LLP** | **WHITE & CASE LLP** |
| Veronica A. Polnick (TX Bar No. 24079148) | Gregory F. Pesce (admitted *pro hac vice*) |
| J. Machir Stull (TX Bar No. 24070697) | Laura E. Baccash (admitted *pro hac vice*) |
| Matthew D. Cavenaugh (TX Bar No. 24062656) | 111 South Wacker Drive, Suite 5100 |
| 1401 McKinney Street, Suite 1900 | Chicago, Illinois 60606 |
| Houston, Texas 77010 | Telephone:   (312) 881-5400 |
| Telephone:   (713) 752-4200 | Email:   gregory.pesce@whitecase.com |
| Email:   vpolnick@jw.com | laura.baccash@whitecase.com |
| mstull@jw.com | |
| mcavenaugh@jw.com | Charles R. Koster (TX Bar No. 24128278) |
| | 609 Main Street, Suite 2900 |
| *Co-Counsel to the Debtors and* | Houston, Texas 77002 |
| *Debtors in Possession* | Telephone:   (713) 496-9700 |
| | Email:   charles.koster@whitecase.com |
| | |
| | Barrett Lingle (admitted *pro hac vice*) |
| | 1221 Avenue of the Americas |
| | New York, New York 10020 |
| | Telephone:   (212) 819-8200 |
| | Email:   barrett.lingle@whitecase.com |
| | |
| | *Counsel to the Debtors and* |
| | *Debtors in Possession* |

**<u>Exhibit A</u>**

**Plan Administrator Agreement**

## PLAN ADMINISTRATOR AGREEMENT

This PLAN ADMINISTRATOR AGREEMENT (this "Agreement"), which shall constitute the "Plan Administrator Agreement" under, as defined in, and for all purposes of the Plan, unless and until it is replaced by an agreement with a successor "Plan Administrator" appointed under the Plan pursuant to Section 9 hereof, dated as of [●], by and among (a) Surgalign Spine Technologies, Inc., on behalf of itself and its debtor subsidiaries (collectively, the "Debtors" or the "Wind-Down Debtors," as applicable), (b) Steve Balasiano, who shall constitute (and is deemed designated) the "Plan Administrator" under, as defined in, and for all purposes of the Plan, unless and until the Plan Administrator ceases to be the "Plan Administrator" hereunder (the "Plan Administrator"), and (c) the Committee (together with the Debtors and the Plan Administrator, the "Parties"), sets forth the Plan Administrator's rights, powers, and obligations in connection with the Plan pursuant to the *Joint Chapter 11 Plan of Surgalign Holdings, Inc. and Its Affiliated Debtors* [Docket No. 431] (as may be amended, modified, or supplemented from time to time, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

1.      Appointment. Effective as of the Effective Date, the Plan Administrator will be appointed to act as the Plan Administrator under the Plan for the purpose of effectuating the Plan, subject to the terms and conditions set forth in this Agreement, the Plan, and the Confirmation Order, if applicable (collectively, the "Plan Documents"). As set forth in the Plan Documents, the Plan Administrator shall succeed to such powers as would have been applicable to the Debtors, the Debtors' officers, directors, managers, members, shareholders, and the Debtors' Estates from and following the Effective Date. Notwithstanding the foregoing, the sole and limited duties of the Plan Administrator are the responsibilities set out in Section 2.

2.      Scope of Services. The Plan Administrator shall provide post-Effective Date administration, wind down, dissolution, and liquidation services that are necessary, required, desirable, or advisable to effectuate the Plan Documents and to make certain distributions under the Plan. Without limiting the provisions of the Plan applicable to the Plan Administrator, the Plan Administrator will perform the following services for the Wind-Down Debtors' Estates in its role as Plan Administrator for all purposes of the Plan (as such services may be further described in the Plan Documents or additional tasks required to be performed by the Plan Administrator as described in the Plan Documents):

(a)      implementing the orderly wind down of the Debtors' Estates and making distributions contemplated by the Plan

(b)      marshalling, marketing for sale, and winding down any of the Debtors' assets constituting Wind-Down Debtor Assets;

(c)      overseeing the accounts of the Debtors and the Wind-Down Debtors and the wind down and dissolution of the Debtors and the Wind-Down Debtors;

(d)      receiving, maintaining, conserving, supervising, prosecuting, collecting, settling, managing, investing, protecting, and where appropriate, causing the Wind-Down Debtors

to abandon the Wind-Down Debtor Assets, including causing the Wind-Down Debtors to invest any moneys held as Wind-Down Debtor Assets;

       (e)    opening and maintaining bank accounts on behalf of or in the name of the Debtors or the Wind-Down Debtors, including, in the Plan Administrator's discretion, separating bank accounts for each of the Debtors;

       (f)    entering into any agreement or executing any document or instrument required by or consistent with the Plan, the Confirmation Order, or the Plan Administrator Agreement, and to perform all obligations thereunder;

       (g)    collecting and liquidating all Wind-Down Debtor Assets, including the sale of any Wind-Down Debtor Assets;

       (h)    protecting and enforcing the rights to the Wind-Down Debtor Assets (including any Retained Estate Claims and Causes of Action) vested in the Wind-Down Debtors and Plan Administrator by the Plan Administrator Agreement by any method deemed appropriate, including, without limitation, by judicial proceedings or otherwise;

       (i)    investigating any Wind-Down Debtor Assets, and any other potential Retained Estate Claims and Causes of Action;

       (j)    reviewing, reconciling, compromising, settling, objecting, or prosecuting Claims or Interests of any kind (other than Professional Fee Claims);

       (k)    seeking the examination of any Person pursuant to Federal Rule of Bankruptcy Procedure 2004;

       (l)    retaining professionals, disbursing agents, and other agents, independent contractors, and third parties pursuant to the Plan Administrator Agreement and paying the reasonable compensation thereof;

       (m)    paying all lawful expenses, debts, charges, taxes, and other liabilities, and making all other payments relating to the Wind-Down Debtor Assets, solely out of Wind-Down Debtor Assets;

       (n)    prosecuting and settling the Retained Estate Claims and Causes of Action and any causes of action not included in the Digital Assets Purchase Agreement or the Hardware Assets Purchase Agreement or released under the Plan;

       (o)    reviewing, reconciling, pursuing, commencing, prosecuting, compromising, settling, dismissing, releasing, waiving, withdrawing, abandoning, resolving, or electing not to pursue all Retained Estate Claims and Causes of Action;

       (p)    acquiring litigation and other claims related to the Debtors, and prosecuting such claims;

(q)     reviewing and compelling turnover of the Debtors' or the Wind-Down Debtors' property;

(r)     calculating and making all Distributions to the Holders of Allowed Claims against each Debtor, as provided for in, or contemplated by, the Plan and the Plan Administrator Agreement;

(s)     establishing, administering, adjusting, and maintaining the Wind-Down Reserve and the Disputed Claims Reserve;

(t)     withholding from the amount distributable to any Person the maximum amount needed to pay any tax or other charge that the Plan Administrator has determined, based upon the advice of his agents or professionals, may be required to be withheld from such Distribution under the income tax or other laws of the United States or of any state or political subdivision thereof;

(u)     in reliance upon the Debtors' Schedules and the official Claims Register maintained in the Chapter 11 Cases, and where appropriate, allowing or objecting to Claims, and supervising and administering the commencement, prosecution, settlement, compromise, withdrawal, or resolution of all objections to Disputed Claims required to be administered by the Wind-Down Debtors;

(v)     making all tax withholdings, filing tax information returns, filing and prosecuting tax refunds claims, making tax elections by and on behalf of the Debtors or the Wind-Down Debtors, and filing tax returns for the Debtors or the Wind-Down Debtors pursuant to and in accordance with the Plan, and paying taxes, if any, payable for and on behalf of the Debtors or the Wind-Down Debtors, as applicable; provided, however, that notwithstanding any other provision of the Plan Administrator Agreement, the Plan Administrator shall not have any responsibility or personal liability in any capacity whatsoever for the signing or accuracy of the Debtors' income tax returns that are due to be filed after the Effective Date or for any tax liability related thereto;

(w)     abandoning or donating to a charitable organization qualifying under IRC section 501(c)(3) any Wind-Down Debtor Assets that the Plan Administrator determines to be too impractical to distribute or of inconsequential value;

(x)     seeking a determination of tax liability or refund under section 505 of the Bankruptcy Code;

(y)     establishing reserves for taxes, assessments, and other expenses of administration of the Debtors or the Wind-Down Debtors as may be necessary and appropriate for the proper operation of matters incident to the Debtors or the Wind-Down Debtors;

(z)     paying Wind-Down Debtor Expenses;

(aa)    purchasing and carrying all insurance policies that the Plan Administrator deems reasonably necessary or advisable and paying all associated insurance premiums and costs;

(bb)    undertaking all administrative functions remaining in the Chapter 11 Cases to the extent necessary to carry out the Debtors', the Wind-Down Debtors', or the Plan Administrator's duties under the Plan, including reporting and making required payments of fees to the U.S. Trustee and overseeing the closing of the Chapter 11 Cases;

(cc)    retaining, terminating, appointing, hiring, or otherwise employees, personnel, management, and directors at any of the Debtors to the extent necessary to carry out the purposes of the Plan Administrator Agreement and the Plan, including, without limitation, to address any disputes between the Debtors;

(dd)    exercising, implementing, enforcing, and discharging all of the terms, conditions, powers, duties, and other provisions of the Plan, the Confirmation Order, and the Plan Administrator Agreement;

(ee)    scheduling a virtual meeting with members of the Committee who existed immediately prior to the Effective Date ("Final Committee Members") no later than 45 days after the Effective Date to provide a general update, and then at least once quarterly thereafter, which meeting shall be "by invitation" only to such Final Committee Members at a time during normal business hours (i.e., between 9:00 a.m., prevailing Eastern Time, and 5:00 p.m., prevailing Eastern Time), during which meeting the Plan Administrator shall provide a general update to the attendees of such meeting; and

(ff)    taking all other actions consistent with the provisions of the Plan and the Plan Administrator Agreement that the Plan Administrator deems reasonably necessary or desirable to administer the Debtors and the Wind-Down Debtors.

3.    Timing and Fees.

(a)    The Plan Administrator will commence its responsibilities on the Effective Date.

(b)    The Wind-Down Debtors shall pay the Plan Administrator's compensation and reimburse the Plan Administrator's expenses as set forth herein as such amounts come due without the need for Bankruptcy Court approval.

(c)    The Plan Administrator's annual compensation shall be as follows: $[●] per month until the termination of this Agreement, which shall be payable from the Wind-Down Debtor Assets on a monthly basis in advance no later than the first business day of each month.

(d)    In addition to the foregoing, the Plan Administrator shall be entitled to reimbursement of actual, reasonable, out-of-pocket and direct expenses incurred in connection with the services to be provided under this Agreement and/or the Plan Documents, as applicable.

(e)    The Plan Administrator may retain any professionals reasonably necessary to the Plan Administrator, and any professionals retained by the Plan Administrator pursuant to the terms of this Agreement shall be paid as set forth in the applicable professional's engagement letter, which shall be payable from the Wind-Down Debtor Assets in accordance with the terms of this Agreement.

4.      Relationship of the Parties.  The Parties intend that an independent contractor relationship shall be created by this Agreement.  The Plan Administrator shall not be entitled to receive from the Debtors or Wind-Down Debtors or their Estates any vacation pay, sick leave, retirement, pension, or social security benefits, workers' compensation, disability, unemployment insurance benefits, or any other employee benefits.

5.      D&O Liability Insurance.  The Wind-Down Debtors shall purchase director and officer liability insurance that will cover the Plan Administrator with respect to carrying out the Plan Administrator's duties in an amount and on terms reasonably acceptable to the Plan Administrator.

6.      Confidentiality.  The Plan Administrator shall treat confidentially all information not publicly available that is received by the Plan Administrator in connection with this engagement or that is developed during this engagement, and the Plan Administrator shall not disclose such information except as required by a court order or other legal process.

7.      Indemnity.  As set forth and limited by Article VIII.B.10 of the Plan, the Wind-Down Debtors shall indemnify and defend the Plan Administrator and all professionals engaged by the Plan Administrator from and against any and all claims, liability, loss, costs, damage, or expense (including reasonable attorneys' fees) (collectively, "Damages") asserted against it by reason of or arising out of or related to this Agreement or performance under this Agreement or any related transactions that are taken or omitted to be taken as set forth in this Agreement; provided that there shall be no obligation to indemnify or defend the Plan Administrator or its professionals on account of Damages that are determined to have arisen primarily from the Plan Administrator's or such professional's gross negligence or willful misconduct.

8.      Exculpation.  The Plan Administrator and any professional engaged by the Plan Administrator shall not be liable for any act or omission in connection with the discharge by the Plan Administrator or such professional of the powers and duties conferred upon the Plan Administrator by the Plan, this Agreement, any Final Order, or applicable law, except to the extent that such liability is due to an act or omission that is determined, in a Final Order, to be due to the Plan Administrator's or such professional's gross negligence or willful misconduct.  Nothing contained in this Section 8 shall preclude or impair any Holder of an Allowed Claim from bringing an action in the Bankruptcy Court against the Plan Administrator to compel the Plan Administrator to make the distributions contemplated by the Plan on account of such Allowed Claim.

9.      Termination; Effect of Termination.

        (a)     This Agreement shall terminate automatically after all of the Chapter 11 Cases have been closed and all payments have been made under the Plan (including the Plan Administrator's compensation and reimbursement).

        (b)     The Plan Administrator may resign its duties at any time upon thirty (30) days' written notice to the Bankruptcy Court and the Notice Parties provided in Section 15 of this Agreement, provided that such resignation shall only become effective upon the appointment of a permanent or interim successor Plan Administrator, who shall be selected by the Plan Administrator.  Upon the appointment of a successor Plan Administrator, such successor shall become fully vested with all of the rights, powers, duties, and obligations of the predecessor Plan

Administrator pursuant to this Agreement, the Plan, and the Confirmation Order, and all responsibilities of the predecessor Plan Administrator shall be terminated.

(c)     This Agreement may be terminated for cause shown pursuant to a Final Order entered by the Bankruptcy Court after notice and a hearing; <u>provided</u> <u>that</u> in the event that this Agreement is terminated before its automatic termination as provided in <u>Section 9(a)</u>, the Bankruptcy Court shall appoint a successor Plan Administrator to fill the vacancy left by the termination of this Agreement.

(d)     Upon termination of this Agreement or resignation of the Plan Administrator, the Plan Administrator shall be entitled to all fees and expenses accrued to that date pursuant to this Agreement, including any travel or related expenses incurred in returning from the location of the services being provided under this Agreement prior to the termination date or resignation date.

10.     <u>Privileges with Respect Retained Estate Claims and Causes of Action</u>.

(a)     All attorney-client privileges, work product protections and other privileges, immunities or protections from disclosure (the "<u>Privileges</u>") held by any one or more of the Debtors (including any pre-petition committee or subcommittee of the board of directors or equivalent governing body of any of the Debtors and their predecessors), or the Committee, as applicable (together, the "<u>Privilege Transfer Parties</u>") related in any way to the Retained Estate Claims and Causes of Action and the purpose of the Agreement (the "<u>Transferred Privileged Information</u>") are hereby transferred and assigned to the Plan Administrator.  The Transferred Privileged Information shall include documents and information of all manner, whether oral, written, or digital.  For the avoidance of doubt, the Privileges shall include any right to preserve or enforce a privilege that arises from any joint defense, common interest, or similar agreement involving any of the Privilege Transfer Parties.

The foregoing transfer and assignment shall vest the Privileges concerning the Transferred Privileged Information exclusively in the Plan Administrator, consistent with sections 1123(a)(5)(B) and 1123(b)(3)(B) of the Bankruptcy Code, for the sole benefit of the Plan Administrator and Holders of Claims.  The Plan Administrator shall have the exclusive authority and sole discretion to maintain the Privileges and keep the Transferred Privileged Information confidential, or waive any Privileges and/or disclose and/or use in litigation or any proceeding any or all of the Transferred Privileged Information.

(b)     The Privilege Transfer Parties agree to take all necessary actions to effectuate the transfer of such Privileges, and to provide to the Plan Administrator without the necessity of a subpoena all Transferred Privileged Information in their respective possession, custody, or control; <u>provided</u> <u>that</u> the Plan Administrator shall agree that any reasonable and documented costs and expenses (including attorneys' fees) for any person or entity that takes action pursuant to this provision shall be reimbursed from the Wind-Down Debtor Assets.  The Plan Administrator is further expressly authorized to formally or informally request or subpoena documents, testimony or other information that would constitute Transferred Privileged Information from any persons, including attorneys, professionals, consultants and experts that may possess Transferred Privileged Information, and no such person may object to the production to

the Plan Administrator of such Transferred Privileged Information on the basis of a Privilege held by a Privilege Transfer Party. Until and unless the Plan Administrator makes a determination in its sole discretion to waive any Privilege, Transferred Privileged Information shall be produced solely to the Plan Administrator or as required by law. For the avoidance of doubt, this Subsection is subject in all respects to Section 1.1(a) of this Agreement.

Pursuant to, inter alia, Federal Rule of Evidence 502(d), no Privileges shall be waived by the transfer and assignment of the Privileges or the production of any Transferred Privileged Information to the Plan Administrator or any of its respective employees, professionals or representatives, or by disclosure of such Transferred Privileged Information between the Privilege Transfer Parties, on the one hand, and the Plan Administrator, on the other hand, or any of their respective employees, professionals or representatives.

(c)    If a Privilege Transfer Party, the Plan Administrator, any of their respective employees, professionals or representatives or any other person inadvertently produces or discloses Transferred Privileged Information to any third party, such production shall not be deemed to destroy any of the Privileges, or be deemed a waiver of any confidentiality protections afforded to such Transferred Privileged Information. In such circumstances, the disclosing party shall promptly upon discovery of the production notify the Plan Administrator of the production and shall demand of all recipients of the inadvertently disclosed Transferred Privileged Information that they return or confirm the destruction of such materials.

Notwithstanding anything to the contrary contained in Section 10, for the avoidance of doubt, no Privilege or Transferred Privileged Information related to any Claims or Causes of Action that have been released or exculpated under the Plan shall be deemed to have been transferred or assigned to the Plan Administrator, provided, however, that the foregoing shall not prevent the transfer of any Privilege or Transferred Privileged Information to the extent that such Privilege or Transferred Privileged Information also relates to Retained Estate Claims and Causes of Action.

11.    Authority to Prosecute and Settle Retained Estate Claims and Causes of Action.

(a)    Subject to the provisions of this Agreement, the Plan, and the Confirmation Order, the Plan Administrator shall prosecute, pursue, compromise, settle, or abandon any and all Retained Estate Claims and Causes of Action that have not already been resolved as of the Effective Date. The Plan Administrator shall have the absolute right to pursue, not pursue, release, abandon, and/or settle any and all Retained Estate Claims and Causes of Action (including any counterclaims asserted against the Plan Administrator) as it determines in the best interests of the Holders of an Allowed Claims, and consistent with the purposes of the Agreement, and shall have no liability for the outcome of its decision.

To the extent that any action has been taken to prosecute or otherwise resolve any Retained Estate Claims and Causes of Action prior to the Effective Date by the Debtors, on the Effective Date, the Plan Administrator shall be substituted for the Debtors in connection therewith in accordance with Rule 25 of the Federal Rules of Civil Procedure, made applicable to the Plan Administrator by Bankruptcy Rule 7025, and the caption with respect to such pending litigation shall be changed to the following, at the option of the Plan Administrator: "[Name of Plan

Administrator], as Representative for the Wind-Down Debtors v. [Defendant]" or "Wind-Down Debtors v. [Defendant]."  Without limiting the foregoing, the Plan Administrator shall take any and all actions necessary or prudent to intervene as plaintiff, movant or additional party, as appropriate, with respect to any applicable Claim.  For purposes of exercising its powers, the Plan Administrator shall be deemed to be a representative of the Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

(b)     Subject to <u>Section 11(a)</u> hereof, any determinations by the Plan Administrator, with regard to the amount or timing of settlement or other disposition of any Retained Estate Claims and Causes of Action settled in accordance with the terms of this Agreement shall be conclusive and binding on the Holders of an Allowed Claims and all other parties in interest following the entry of an order of a court of competent jurisdiction (including, as relevant, a Final Order issued by the Bankruptcy Court) approving such settlement or other disposition, to the extent any such order is required to be obtained to enforce any such determinations.

12.     <u>Liquidation of Retained Estate Claims and Causes of Action.</u>  The Plan Administrator, in the exercise of its reasonable business judgment, shall, in an expeditious but orderly manner and subject to the other provisions of the Plan, the Confirmation Order, and this Agreement liquidate and convert to Cash the Retained Estate Claims and Causes of Action, make timely distributions in accordance with the terms of the Plan, the Confirmation Order, and this Agreement, and not unduly prolong the existence of the Agreement.  The Plan Administrator shall exercise reasonable business judgment and liquidate the Retained Estate Claims and Causes of Action to maximize net recoveries to the Holders of an Allowed Claims, <u>provided</u>, <u>however</u>, that the Plan Administrator shall be entitled to take into consideration the risks, timing, and costs of potential actions in making determinations as to the methodologies to be employed to maximize such recoveries.  Such liquidations may be accomplished through the prosecution, compromise and settlement, abandonment or dismissal of any or all of the Retained Estate Claims and Causes of Action or otherwise or through the sale or other disposition of the Retained Estate Claims and Causes of Action (in whole or in combination).

13.     <u>Books and Records</u>.  The Plan Administrator shall maintain books and records relating to, among other things, the Retained Estate Claims and Causes of Action (including income realized therefrom and the proceeds of any litigation) and the payment of, costs and expenses of, and liabilities for claims against or which, pursuant to the Plan, are the responsibility of the Plan Administrator in such detail and for such period of time as may be necessary to enable the Plan Administrator to make full and proper accounting in respect thereof and in accordance with applicable law.  Such books and records shall be maintained as reasonably necessary to facilitate compliance with the tax reporting requirements of the Wind-Down Debtors.  Nothing in this Agreement requires the Plan Administrator to file any accounting or seek approval of any court with respect to the administration of the Wind-Down Debtors' Assets or as a condition for

managing any payment or distribution out of the Retained Estate Claims and Causes of Action, except as may otherwise be set forth in the Plan or the Confirmation Order.

14.     <u>Effectiveness</u>.  This Agreement shall be effective upon the Effective Date.

15.     <u>Notice</u>.  All invoices, notices, requests, demands, and other communications permitted or required to be given or delivered under or by reason of the provisions of this Agreement shall be in writing and shall be deemed conclusively to have been given:  (a) when personally delivered; (b) when sent by electronic mail (with hard copy to follow) during a Business Day (or on the next Business Day if sent after the close of normal business hours or on any non-Business Day); (c) one (1) Business Day after being sent by reputable overnight express courier (charges prepaid); or (d) three (3) Business Days following mailing by certified or registered mail, postage prepaid and return receipt requested.  Unless another address is specified in writing, notices, requests, demands, and communications to the Parties hereto shall be sent to the addresses indicated below:

| | |
|---|---|
| To the Wind-Down Debtors: | Surgalign Holdings, Inc.<br>520 Lake Cook Road, Suite 315<br>Deerfield, Illinois 60015<br>Attention:     Christopher Thunander |
| with copy to: | White & Case LLP<br>Gregory F. Pesce<br>Laura E. Baccash<br>111 South Wacker Drive, Suite 5100 Chicago, Illinois 60606<br>Telephone:     (312) 881-5400<br>Email:     gregory.pesce@whitecase.com<br>laura.baccash@whitecase.com |
| | Charles R. Koster<br>609 Main Street, Suite 2900<br>Houston, Texas 77002<br>Telephone:     (713) 496-9700<br>Email:     charles.koster@whitecase.com |
| | Barrett B. Lingle<br>1221 Avenue of the Americas, New York, New York 10020<br>Telephone:     (212) 819-8200<br>Email:     barrett.lingle@whitecase.com |
| To the Plan Administrator: | Steve Balasiano<br>[●] |
| To the Committee: | Pachulski Stang Ziehl & Jones LLP<br>Bradford J. Sandler<br>Robert J. Feinstein |

9

Colin R. Robinson
Cia H. Mackle
919 North Market Street, 17th Floor Wilmington, Delaware
19801
Telephone:   (302) 652-4100
Email:       bsandler@pszjlaw.com
             rfeinstein@pszjlaw.com
             crobinson@pszjlaw.com
             cmackle@pszjlaw.com

16.   <u>Miscellaneous</u>.

(a)     <u>Sections 5</u>, <u>7</u>, and all other provisions necessary to the enforcement of the intent of this Agreement will survive the termination or expiration of this Agreement.

(b)     In the event of an inconsistency between this Agreement and the Plan Documents, the terms of the Plan Documents shall control in all respects.

(c)     If any portion of this Agreement shall be determined to be invalid or unenforceable, the remainder of this Agreement shall be valid and enforceable to the maximum extent provided by applicable law.

(d)     Neither this Agreement nor any of the rights, interests, or obligations under this Agreement shall be assigned by any of the Parties (whether by operation of law or otherwise) without the prior written consent of the other Party.

(e)     This Agreement is governed by and shall be construed in accordance with the laws of the State of New York without regard to choice of law or principles thereof.  In any court proceeding arising out of or related to this Agreement, each of the Parties hereby waive any right to trial by jury.  Each of the Parties hereby submits to the exclusive jurisdiction of the Bankruptcy Court for purposes of any proceeding arising from or related to this Agreement, and each of the Parties agrees not to commence any action, suit, or proceedings relating thereto except in the Bankruptcy Court.

(f)     This Agreement and the Plan Documents encompass all of the terms and conditions between the Debtors and the Plan Administrator concerning the subject matter hereof. This Agreement may not be amended or modified in any respect except in a writing signed by each of the Parties.

(g)     This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same Agreement. A signed copy of this Agreement delivered by facsimile, e-mail, or other means of electronic transmission (.pdf) shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

[SIGNATURE PAGES FOLLOW]

10

THE DEBTORS:

Surgalign Spine Technologies, Inc., on
behalf of itself and its affiliated Debtors


By:_____
Name: [●]
Title: [●]

THE PLAN ADMINISTRATOR:

[●]


By:_____
Name: Steve Balasiano

THE COMMITTEE:

[●], on behalf of the Committee of
Unsecured Creditors


By:_____
Name: [●]
Title: [●]

**Exhibit A-1**

**Redline to the Plan Administrator Agreement Filed on September 20, 2023**

**PLAN ADMINISTRATOR AGREEMENT**

This PLAN ADMINISTRATOR AGREEMENT (this "Agreement"), which shall constitute the "Plan Administrator Agreement" under, as defined in, and for all purposes of the Plan, unless and until it is replaced by an agreement with a successor "Plan Administrator" appointed under the Plan pursuant to Section 9 hereof, dated as of [●], by and among (a) Surgalign Spine Technologies, Inc., on behalf of itself and its debtor subsidiaries (collectively, the "Debtors" or the "Wind-Down Debtors," as applicable), (b) [●]Steve Balasiano, who shall constitute (and is deemed designated) the "Plan Administrator" under, as defined in, and for all purposes of the Plan, unless and until the Plan Administrator ceases to be the "Plan Administrator" hereunder (the "Plan Administrator"), and (c) the Committee (together with the Debtors and the Plan Administrator, the "Parties"), sets forth the Plan Administrator's rights, powers, and obligations in connection with the Plan pursuant to the *Joint Chapter 11 Plan of Surgalign Holdings, Inc. and Its Affiliated Debtors* [Docket No. 431] (as may be amended, modified, or supplemented from time to time, the "Plan"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

1.    Appointment.    Effective as of the Effective Date, the Plan Administrator will be appointed to act as the Plan Administrator under the Plan for the purpose of effectuating the Plan, subject to the terms and conditions set forth in this Agreement, the Plan, and the Confirmation Order, if applicable (collectively, the "Plan Documents"). As set forth in the Plan Documents, the Plan Administrator shall succeed to such powers as would have been applicable to the Debtors, the Debtors' officers, directors, managers, members, shareholders, and the Debtors' Estates from and following the Effective Date. Notwithstanding the foregoing, the sole and limited duties of the Plan Administrator are the responsibilities set out in Section 2.

2.    Scope of Services.    The Plan Administrator shall provide post-Effective Date administration, wind down, dissolution, and liquidation services that are necessary, required, desirable, or advisable to effectuate the Plan Documents and to make certain distributions under the Plan. Without limiting the provisions of the Plan applicable to the Plan Administrator, the Plan Administrator will perform the following services for the Wind-Down Debtors' Estates in its role as Plan Administrator for all purposes of the Plan (as such services may be further described in the Plan Documents or additional tasks required to be performed by the Plan Administrator as described in the Plan Documents):

(a)    implementing the orderly wind down of the Debtors' Estates and making distributions contemplated by the Plan

(b)    marshalling, marketing for sale, and winding down any of the Debtors' assets constituting Wind-Down Debtor Assets;

(c)    overseeing the accounts of the Debtors and the Wind-Down Debtors and the wind down and dissolution of the Debtors and the Wind-Down Debtors;

(d)    receiving, maintaining, conserving, supervising, prosecuting, collecting, settling, managing, investing, protecting, and where appropriate, causing the Wind-Down

Debtors to abandon the Wind-Down Debtor Assets, including causing the Wind-Down Debtors to invest any moneys held as Wind-Down Debtor Assets;

(e)    opening and maintaining bank accounts on behalf of or in the name of the Debtors or the Wind-Down Debtors, including, in the Plan Administrator's discretion, separating bank accounts for each of the Debtors;

(f)    entering into any agreement or executing any document or instrument required by or consistent with the Plan, the Confirmation Order, or the Plan Administrator Agreement, and to perform all obligations thereunder;

(g)    collecting and liquidating all Wind-Down Debtor Assets, including the sale of any Wind-Down Debtor Assets;

(h)    protecting and enforcing the rights to the Wind-Down Debtor Assets (including any Retained Estate Claims and Causes of Action) vested in the Wind-Down Debtors and Plan Administrator by the Plan Administrator Agreement by any method deemed appropriate, including, without limitation, by judicial proceedings or otherwise;

(i)    investigating any Wind-Down Debtor Assets, and any other potential Retained Estate Claims and Causes of Action;

(j)    reviewing, reconciling, compromising, settling, objecting, or prosecuting Claims or Interests of any kind (other than Professional Fee Claims);

(k)    seeking the examination of any Person pursuant to Federal Rule of Bankruptcy Procedure 2004;

(l)    retaining professionals, disbursing agents, and other agents, independent contractors, and third parties pursuant to the Plan Administrator Agreement and paying the reasonable compensation thereof;

(m)    paying all lawful expenses, debts, charges, taxes, and other liabilities, and making all other payments relating to the Wind-Down Debtor Assets, solely out of Wind-Down Debtor Assets;

(n)    prosecuting and settling the Retained Estate Claims and Causes of Action and any causes of action not included in the Digital Assets Purchase Agreement or the Hardware Assets Purchase Agreement or released under the Plan;

(o)    reviewing, reconciling, pursuing, commencing, prosecuting, compromising, settling, dismissing, releasing, waiving, withdrawing, abandoning, resolving, or electing not to pursue all Retained Estate Claims and Causes of Action;

(p)    acquiring litigation and other claims related to the Debtors, and prosecuting such claims;

(q)  reviewing and compelling turnover of the Debtors' or the Wind-Down Debtors' property;

(r)  calculating and making all Distributions to the Holders of Allowed Claims against each Debtor, as provided for in, or contemplated by, the Plan and the Plan Administrator Agreement;

(s)  establishing, administering, adjusting, and maintaining the Wind-Down Reserve and the Disputed Claims Reserve;

(t)  withholding from the amount distributable to any Person the maximum amount needed to pay any tax or other charge that the Plan Administrator has determined, based upon the advice of his agents or professionals, may be required to be withheld from such Distribution under the income tax or other laws of the United States or of any state or political subdivision thereof;

(u)  in reliance upon the Debtors' Schedules and the official Claims Register maintained in the Chapter 11 Cases, and where appropriate, allowing or objecting to Claims, and supervising and administering the commencement, prosecution, settlement, compromise, withdrawal, or resolution of all objections to Disputed Claims required to be administered by the Wind-Down Debtors;

(v)  making all tax withholdings, filing tax information returns, filing and prosecuting tax refunds claims, making tax elections by and on behalf of the Debtors or the Wind-Down Debtors, and filing tax returns for the Debtors or the Wind-Down Debtors pursuant to and in accordance with the Plan, and paying taxes, if any, payable for and on behalf of the Debtors or the Wind-Down Debtors, as applicable; provided, however, that notwithstanding any other provision of the Plan Administrator Agreement, the Plan Administrator shall not have any responsibility or personal liability in any capacity whatsoever for the signing or accuracy of the Debtors' income tax returns that are due to be filed after the Effective Date or for any tax liability related thereto;

(w)  abandoning or donating to a charitable organization qualifying under IRC section 501(c)(3) any Wind-Down Debtor Assets that the Plan Administrator determines to be too impractical to distribute or of inconsequential value;

(x)  seeking a determination of tax liability or refund under section 505 of the Bankruptcy Code;

(y)  establishing reserves for taxes, assessments, and other expenses of administration of the Debtors or the Wind-Down Debtors as may be necessary and appropriate for the proper operation of matters incident to the Debtors or the Wind-Down Debtors;

(z)  paying Wind-Down Debtor Expenses;

(aa)   purchasing and carrying all insurance policies that the Plan Administrator deems reasonably necessary or advisable and paying all associated insurance premiums and costs;

(bb)   undertaking all administrative functions remaining in the Chapter 11 Cases to the extent necessary to carry out the Debtors', the Wind-Down Debtors', or the Plan Administrator's duties under the Plan, including reporting and making required payments of fees to the U.S. Trustee and overseeing the closing of the Chapter 11 Cases;

(cc)   retaining, terminating, appointing, hiring, or otherwise employees, personnel, management, and directors at any of the Debtors to the extent necessary to carry out the purposes of the Plan Administrator Agreement and the Plan, including, without limitation, to address any disputes between the Debtors;

(dd)   exercising, implementing, enforcing, and discharging all of the terms, conditions, powers, duties, and other provisions of the Plan, the Confirmation Order, and the Plan Administrator Agreement; ~~and~~

(ee)   scheduling a virtual meeting with members of the Committee who existed immediately prior to the Effective Date ("Final Committee Members") no later than 45 days after the Effective Date to provide a general update, and then at least once quarterly thereafter, which meeting shall be "by invitation" only to such Final Committee Members at a time during normal business hours (i.e., between 9:00 a.m., prevailing Eastern Time, and 5:00 p.m., prevailing Eastern Time), during which meeting the Plan Administrator shall provide a general update to the attendees of such meeting; and

(ff)   ~~(ee)~~ taking all other actions consistent with the provisions of the Plan and the Plan Administrator Agreement that the Plan Administrator deems reasonably necessary or desirable to administer the Debtors and the Wind-Down Debtors.

3.   Timing and Fees.

(a)   The Plan Administrator will commence its responsibilities on the Effective Date.

(b)   The Wind-Down Debtors shall pay the Plan Administrator's compensation and reimburse the Plan Administrator's expenses as set forth herein as such amounts come due without the need for Bankruptcy Court approval.

(c)   The Plan Administrator's annual compensation shall be as follows: $[●] per month until the termination of this Agreement, which shall be payable from the Wind-Down Debtor Assets on a monthly basis in advance no later than the first business day of each month.

(d)   In addition to the foregoing, the Plan Administrator shall be entitled to reimbursement of actual, reasonable, out-of-pocket and direct expenses incurred in connection with the services to be provided under this Agreement and/or the Plan Documents, as applicable.

(e)     The Plan Administrator may retain any professionals reasonably necessary to the Plan Administrator, and any professionals retained by the Plan Administrator pursuant to the terms of this Agreement shall be paid as set forth in the applicable professional's engagement letter, which shall be payable from the Wind-Down Debtor Assets in accordance with the terms of this Agreement.

4.      <u>Relationship of the Parties</u>.     The Parties intend that an independent contractor relationship shall be created by this Agreement.  The Plan Administrator shall not be entitled to receive from the Debtors or Wind-Down Debtors or their Estates any vacation pay, sick leave, retirement, pension, or social security benefits, workers' compensation, disability, unemployment insurance benefits, or any other employee benefits.

5.      <u>D&O Liability Insurance</u>.  The Wind-Down Debtors shall purchase director and officer liability insurance that will cover the Plan Administrator with respect to carrying out the Plan Administrator's duties in an amount and on terms reasonably acceptable to the Plan Administrator.

6.      <u>Confidentiality</u>.  The Plan Administrator shall treat confidentially all information not publicly available that is received by the Plan Administrator in connection with this engagement or that is developed during this engagement, and the Plan Administrator shall not disclose such information except as required by a court order or other legal process.

7.      <u>Indemnity</u>.  As set forth and limited by Article VIII.B.10 of the Plan, the Wind-Down Debtors shall indemnify and defend the Plan Administrator and all professionals engaged by the Plan Administrator from and against any and all claims, liability, loss, costs, damage, or expense (including reasonable attorneys' fees) (collectively, "<u>Damages</u>") asserted against it by reason of or arising out of or related to this Agreement or performance under this Agreement or any related transactions that are taken or omitted to be taken as set forth in this Agreement; <u>provided</u> <u>that</u> there shall be no obligation to indemnify or defend the Plan Administrator or its professionals on account of Damages that are determined to have arisen primarily from the Plan Administrator's or such professional's gross negligence or willful misconduct.

8.      <u>Exculpation</u>.  The Plan Administrator and any professional engaged by the Plan Administrator shall not be liable for any act or omission in connection with the discharge by the Plan Administrator or such professional of the powers and duties conferred upon the Plan Administrator by the Plan, this Agreement, any Final Order, or applicable law, except to the extent that such liability is due to an act or omission that is determined, in a Final Order, to be due to the Plan Administrator's or such professional's gross negligence or willful misconduct. Nothing contained in this <u>Section 8</u> shall preclude or impair any Holder of an Allowed Claim from bringing an action in the Bankruptcy Court against the Plan Administrator to compel the Plan Administrator to make the distributions contemplated by the Plan on account of such Allowed Claim.

9.      Termination; Effect of Termination.

(a)     This Agreement shall terminate automatically after all of the Chapter 11 Cases have been closed and all payments have been made under the Plan (including the Plan Administrator's compensation and reimbursement).

(b)     The Plan Administrator may resign its duties at any time upon thirty (30) days' written notice to the Bankruptcy Court and the Notice Parties provided in Section 15 of this Agreement, provided that such resignation shall only become effective upon the appointment of a permanent or interim successor Plan Administrator, who shall be selected by the Plan Administrator.  Upon the appointment of a successor Plan Administrator, such successor shall become fully vested with all of the rights, powers, duties, and obligations of the predecessor Plan Administrator pursuant to this Agreement, the Plan, and the Confirmation Order, and all responsibilities of the predecessor Plan Administrator shall be terminated.

(c)     This Agreement may be terminated for cause shown pursuant to a Final Order entered by the Bankruptcy Court after notice and a hearing; provided that in the event that this Agreement is terminated before its automatic termination as provided in Section 8(a), the Bankruptcy Court shall appoint a successor Plan Administrator to fill the vacancy left by the termination of this Agreement.

(d)     Upon termination of this Agreement or resignation of the Plan Administrator, the Plan Administrator shall be entitled to all fees and expenses accrued to that date pursuant to this Agreement, including any travel or related expenses incurred in returning from the location of the services being provided under this Agreement prior to the termination date or resignation date.

10.     Privileges with Respect Retained Estate Claims and Causes of Action.

(a)     All attorney-client privileges, work product protections and other privileges, immunities or protections from disclosure (the "Privileges") held by any one or more of the Debtors (including any pre-petition committee or subcommittee of the board of directors or equivalent governing body of any of the Debtors and their predecessors), or the Committee, as applicable (together, the "Privilege Transfer Parties") related in any way to the Retained Estate Claims and Causes of Action and the purpose of the Agreement (the "Transferred Privileged Information") are hereby transferred and assigned to the Plan Administrator.  The Transferred Privileged Information shall include documents and information of all manner, whether oral, written, or digital.  For the avoidance of doubt, the Privileges shall include any right to preserve or enforce a privilege that arises from any joint defense, common interest, or similar agreement involving any of the Privilege Transfer Parties.

The foregoing transfer and assignment shall vest the Privileges concerning the Transferred Privileged Information exclusively in the Plan Administrator, consistent with sections 1123(a)(5)(B) and 1123(b)(3)(B) of the Bankruptcy Code, for the sole benefit of the Plan Administrator and Holders of Claims.  The Plan Administrator shall have the exclusive authority and sole discretion to maintain the Privileges and keep the Transferred Privileged

6

Information confidential, or waive any Privileges and/or disclose and/or use in litigation or any proceeding any or all of the Transferred Privileged Information.

(b)     The Privilege Transfer Parties agree to take all necessary actions to effectuate the transfer of such Privileges, and to provide to the Plan Administrator without the necessity of a subpoena all Transferred Privileged Information in their respective possession, custody, or control; provided that the Plan Administrator shall agree that any reasonable and documented costs and expenses (including attorneys' fees) for any person or entity that takes action pursuant to this provision shall be reimbursed from the Wind-Down Debtor Assets.  The Plan Administrator is further expressly authorized to formally or informally request or subpoena documents, testimony or other information that would constitute Transferred Privileged Information from any persons, including attorneys, professionals, consultants and experts that may possess Transferred Privileged Information, and no such person may object to the production to the Plan Administrator of such Transferred Privileged Information on the basis of a Privilege held by a Privilege Transfer Party.  Until and unless the Plan Administrator makes a determination in its sole discretion to waive any Privilege, Transferred Privileged Information shall be produced solely to the Plan Administrator or as required by law.  For the avoidance of doubt, this Subsection is subject in all respects to Section 10(a) of this Agreement.

Pursuant to, inter alia, Federal Rule of Evidence 502(d), no Privileges shall be waived by the transfer and assignment of the Privileges or the production of any Transferred Privileged Information to the Plan Administrator or any of its respective employees, professionals or representatives, or by disclosure of such Transferred Privileged Information between the Privilege Transfer Parties, on the one hand, and the Plan Administrator, on the other hand, or any of their respective employees, professionals or representatives.

(c)     If a Privilege Transfer Party, the Plan Administrator, any of their respective employees, professionals or representatives or any other person inadvertently produces or discloses Transferred Privileged Information to any third party, such production shall not be deemed to destroy any of the Privileges, or be deemed a waiver of any confidentiality protections afforded to such Transferred Privileged Information.  In such circumstances, the disclosing party shall promptly upon discovery of the production notify the Plan Administrator of the production and shall demand of all recipients of the inadvertently disclosed Transferred Privileged Information that they return or confirm the destruction of such materials.

Notwithstanding anything to the contrary contained in Section 10, for the avoidance of doubt, no Privilege or Transferred Privileged Information related to any Claims or Causes of Action that have been released or exculpated under the Plan shall be deemed to have been transferred or assigned to the Plan Administrator, provided, however, that the foregoing shall not prevent the transfer of any Privilege or Transferred Privileged Information to the extent that such Privilege or Transferred Privileged Information also relates to Retained Estate Claims and Causes of Action.

11.   <u>Authority to Prosecute and Settle Retained Estate Claims and Causes of Action.</u>

        (a)   Subject to the provisions of this Agreement, the Plan, and the Confirmation Order, the Plan Administrator shall prosecute, pursue, compromise, settle, or abandon any and all Retained Estate Claims and Causes of Action that have not already been resolved as of the Effective Date.  The Plan Administrator shall have the absolute right to pursue, not pursue, release, abandon, and/or settle any and all Retained Estate Claims and Causes of Action (including any counterclaims asserted against the Plan Administrator) as it determines in the best interests of the Holders of an Allowed Claims, and consistent with the purposes of the Agreement, and shall have no liability for the outcome of its decision.

        To the extent that any action has been taken to prosecute or otherwise resolve any Retained Estate Claims and Causes of Action prior to the Effective Date by the Debtors, on the Effective Date, the Plan Administrator shall be substituted for the Debtors in connection therewith in accordance with Rule 25 of the Federal Rules of Civil Procedure, made applicable to the Plan Administrator by Bankruptcy Rule 7025, and the caption with respect to such pending litigation shall be changed to the following, at the option of the Plan Administrator: "[Name of Plan Administrator], as Representative for the Wind-Down Debtors v. [Defendant]" or "Wind-Down Debtors v. [Defendant]."  Without limiting the foregoing, the Plan Administrator shall take any and all actions necessary or prudent to intervene as plaintiff, movant or additional party, as appropriate, with respect to any applicable Claim.  For purposes of exercising its powers, the Plan Administrator shall be deemed to be a representative of the Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

        (b)   Subject to <u>Section 11(a)</u> hereof, any determinations by the Plan Administrator, with regard to the amount or timing of settlement or other disposition of any Retained Estate Claims and Causes of Action settled in accordance with the terms of this Agreement shall be conclusive and binding on the Holders of an Allowed Claims and all other parties in interest following the entry of an order of a court of competent jurisdiction (including, as relevant, a Final Order issued by the Bankruptcy Court) approving such settlement or other disposition, to the extent any such order is required to be obtained to enforce any such determinations.

12.     <u>Liquidation of Retained Estate Claims and Causes of Action.</u>  The Plan Administrator, in the exercise of its reasonable business judgment, shall, in an expeditious but orderly manner and subject to the other provisions of the Plan, the Confirmation Order, and this Agreement liquidate and convert to Cash the Retained Estate Claims and Causes of Action, make timely distributions in accordance with the terms of the Plan, the Confirmation Order, and this Agreement, and not unduly prolong the existence of the Agreement.  The Plan Administrator shall exercise reasonable business judgment and liquidate the Retained Estate Claims and Causes of Action to maximize net recoveries to the Holders of an Allowed Claims, <u>provided</u>, <u>however</u>, that the Plan Administrator shall be entitled to take into consideration the risks, timing, and costs of potential actions in making determinations as to the methodologies to be employed to maximize such recoveries.  Such liquidations may be accomplished through the prosecution, compromise and settlement, abandonment or dismissal of any or all of the Retained Estate Claims and Causes of Action or otherwise or through the sale or other disposition of the Retained Estate Claims and Causes of Action (in whole or in combination).

13.     <u>Books and Records</u>.  The Plan Administrator shall maintain books and records relating to, among other things, the Retained Estate Claims and Causes of Action (including income realized therefrom and the proceeds of any litigation) and the payment of, costs and expenses of, and liabilities for claims against or which, pursuant to the Plan, are the responsibility of the Plan Administrator in such detail and for such period of time as may be necessary to enable the Plan Administrator to make full and proper accounting in respect thereof and in accordance with applicable law.  Such books and records shall be maintained as reasonably necessary to facilitate compliance with the tax reporting requirements of the Wind-Down Debtors.  Nothing in this Agreement requires the Plan Administrator to file any accounting or seek approval of any court with respect to the administration of the Wind-Down Debtors' Assets or as a condition for managing any payment or distribution out of the Retained Estate Claims and Causes of Action, except as may otherwise be set forth in the Plan or the Confirmation Order.

14.     <u>Effectiveness</u>.  This Agreement shall be effective upon the Effective Date.

15.     <u>Notice</u>.  All invoices, notices, requests, demands, and other communications permitted or required to be given or delivered under or by reason of the provisions of this Agreement shall be in writing and shall be deemed conclusively to have been given:  (a) when personally delivered; (b) when sent by electronic mail (with hard copy to follow) during a Business Day (or on the next Business Day if sent after the close of normal business hours or on any non-Business Day); (c) one (1) Business Day after being sent by reputable overnight express courier (charges prepaid); or (d) three (3) Business Days following mailing by certified or registered mail, postage prepaid and return receipt requested.  Unless another address is specified in writing, notices, requests, demands, and communications to the Parties hereto shall be sent to the addresses indicated below:

        To the Wind-Down Debtors:  Surgalign Holdings, Inc.
                                   520 Lake Cook Road, Suite 315
                                   Deerfield, Illinois 60015
                                   Attention:      Christopher Thunander

                with copy to:      White & Case LLP

<div style="margin-left: 40%">

Gregory F. Pesce
Laura E. Baccash
111 South Wacker Drive, Suite 5100 Chicago, Illinois
60606
Telephone:     (312) 881-5400
Email:            gregory.pesce@whitecase.com
laura.baccash@whitecase.com

Charles R. Koster
609 Main Street, Suite 2900
Houston, Texas 77002
Telephone:     (713) 496-9700
Email:            charles.koster@whitecase.com

Barrett B. Lingle
1221 Avenue of the Americas, New York, New York
10020
Telephone:     (212) 819-8200
Email:            barrett.lingle@whitecase.com

</div>

| To the Plan Administrator: | [●]Steve Balasiano |
|---|---|
| | [●] |

| To the Committee: | Pachulski Stang Ziehl & Jones LLP |
|---|---|
| | Bradford J. Sandler |
| | Robert J. Feinstein |
| | Colin R. Robinson |
| | Cia H. Mackle |
| | 919 North Market Street, 17th Floor Wilmington, Delaware |
| | 19801 |
| | Telephone:     (302) 652-4100 |
| | Email:            bsandler@pszjlaw.com |
| | rfeinstein@pszjlaw.com |
| | crobinson@pszjlaw.com |
| | cmackle@pszjlaw.com |

16.   <u>Miscellaneous</u>.

(a)     <u>Sections 5</u>, <u>6</u>, and all other provisions necessary to the enforcement of the intent of this Agreement will survive the termination or expiration of this Agreement.

(b)     In the event of an inconsistency between this Agreement and the Plan Documents, the terms of the Plan Documents shall control in all respects.

(c)     If any portion of this Agreement shall be determined to be invalid or unenforceable, the remainder of this Agreement shall be valid and enforceable to the maximum extent provided by applicable law.

(d)       Neither this Agreement nor any of the rights, interests, or obligations under this Agreement shall be assigned by any of the Parties (whether by operation of law or otherwise) without the prior written consent of the other Party.

(e)       This Agreement is governed by and shall be construed in accordance with the laws of the State of New York without regard to choice of law or principles thereof.  In any court proceeding arising out of or related to this Agreement, each of the Parties hereby waive any right to trial by jury.  Each of the Parties hereby submits to the exclusive jurisdiction of the Bankruptcy Court for purposes of any proceeding arising from or related to this Agreement, and each of the Parties agrees not to commence any action, suit, or proceedings relating thereto except in the Bankruptcy Court.

(f)       This Agreement and the Plan Documents encompass all of the terms and conditions between the Debtors and the Plan Administrator concerning the subject matter hereof. This Agreement may not be amended or modified in any respect except in a writing signed by each of the Parties.

(g)       This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same Agreement.  A signed copy of this Agreement delivered by facsimile, e-mail, or other means of electronic transmission (.pdf) shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

[SIGNATURE PAGES FOLLOW]

11

THE DEBTORS:

Surgalign Spine Technologies, Inc., on
behalf of itself and its affiliated Debtors


By:_____
Name: [●]
Title: [●]

*Signature Page to Plan Administrator Agreement*

THE PLAN ADMINISTRATOR:

[●]


By:_____
Name: [●]Steve Balasiano

*Signature Page to Plan Administrator Agreement*

THE COMMITTEE:

[●], on behalf of the Committee of
Unsecured Creditors


By:_____
Name: [●]
Title: [●]